# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AD ASTRA RECOVERY SERVICES, INC., | ) )  ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 18-1145-JWB ) |
| JOHN CLIFFORD HEATH, ESQ., *et al.*, | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter comes before the court on Plaintiff's Motion to Compel Compliant Discovery Responses (ECF No. 33). On April 4, 2019, the court held an in-person discovery conference and ruled on most of the discovery disputes at issue in the motion. However, the court held in abeyance the portion of the motion seeking to compel a defendant law firm, John C. Heath, Attorney at Law, PLLC d/b/a Lexington Law Firm ("Lexington Law"), to produce communications with its clients regarding clients' debts that Plaintiff was attempting to collect. At the hearing, the Plaintiff's arguments focused on a narrower category of information encompassed in the requests: communication from clients that resulted in Lexington Law generating credit-dispute letters sent to Ad Astra under the clients' signatures.  For the reasons set forth below, the court grants Plaintiff's motion as to this narrow category of documents, and otherwise denies the motion without prejudice.

**I.    Background**

Plaintiff Ad Astra Recovery Services, Inc. ("Ad Astra"), a debt collector and credit agency, alleges that the "defendants engaged in a fraudulent credit-repair scheme designed to bombard debt collectors with false credit dispute letters with the intention of deceiving debt

collectors . . . and frustrating their efforts to collect legitimate debts." (Compl. ¶ 3, ECF No. 1.) Ad Astra asserts mail fraud, wire fraud, and conspiracy claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1962(c) and (d). Ad Astra also asserts Kansas common law claims for fraud and tortious interference with existing contractual relationships. Defendants are Lexington Law, three attorneys with the law firm, the law firm's printer, and the law firm's mass mailer. Defendants deny Ad Astra's allegations.

Ad Astra served Request for Production ("RFP") Nos. 88 and 89 on Lexington Law that seek a broad category of documents—namely, all documents, communications, and call recordings received from consumers that hired Lexington Law to address debts that Ad Astra was attempting to collect. In response to these RFPs, Lexington Law asserted an attorney-client privilege objection, and it continues to rely on the objection in response to the motion to compel. During the discovery conference on April 4, defense counsel explained that Lexington Law's client communications are facilitated through a "case valet" portal on the firm's website. The portal allows clients to log in, communicate with Lexington Law, and direct Lexington Law as to what debts to dispute.

Lexington Law and/or related entity(ies) ultimately generate credit-dispute letters that are sent to debt collectors. During the April 4 hearing, Ad Astra's counsel explained that RFP Nos. 88 and 89 seek information directly relevant to Ad Astra's allegation that Lexington Law disputed clients' debts without obtaining the clients' consent to do so. The thrust of Ad Astra's claims in this litigation is that Defendants "flood the consumers' creditors, like Ad Astra, with generic, forged, frivolous credit report dispute letters." (Pl.'s Br., ECF No. 34, at 2.) According

to Ad Astra, these letters are sent using "forged" client signatures[1] without any indication that they are actually prepared and transmitted by a law firm. Ad Astra attached examples of these letters to its Complaint. (Compl. Exs. A & C, ECF No. 1.) Given this showing of relevance, the court will focus on a narrower category of information encompassed in the requests: communication from clients that resulted in Lexington Law generating credit-dispute letters sent to Ad Astra under the clients' signatures, such as communications directing Lexington Law to dispute a debt that Ad Astra was attempting to collect.[2]

**II.     Analysis**

FED. R. EVID. 501 directs that federal common law governs claims of privilege, but "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." *See also Sprague v. Thorn Ams.*, 129 F.3d 1355, 1369 (10th Cir. 1997) (considering both federal and state law when plaintiff asserted both federal and state law claims). Here, Ad Astra asserts both federal and state law claims. The court will apply federal law for clarity and because "no real conflict between federal and Kansas law regarding the attorney client privilege [exists]." *In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2010 WL 11431875, at *2 (D. Kan. July 7, 2010). In other words, the court would reach the same conclusion regardless of which body of law it applies.

---

[1] The parties' arguments indicate that Defendants have the consumer sign a power of attorney that allows Defendants to draft and sign letters in the consumer's name. Therefore, the letters are not "forged" in the sense of bearing an unauthorized consumer's signature. Rather, the letters appear to have been sent by the consumer when, in fact, Defendants sent them. Ad Astra claims that such credit dispute letters are fraudulent and try to improperly circumvent the confines of the Fair Credit Reporting Act, 15 U.S.C. § 1681 (the "FCRA").

[2] To the extent that these RFPs seek a broader swath of communications, it is not apparent to the Court how that information would be relevant. To that extent, Plaintiff's motion is denied without prejudice.

The Tenth Circuit defines the scope of the attorney-client privilege as follows:

> The attorney-client privilege protects confidential communications by a client to an attorney made in order to obtain legal assistance from the **attorney in his capacity as a legal advisor**. The mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege; rather, the communication between a lawyer and client must relate to **legal advice or strategy sought by the client**.

*In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (internal quotations omitted) (emphasis added). The privilege also protects attorney-to-client communications that constitute legal advice or that tend to reveal the confidences of the client. *Id.* "A party claiming the attorney-client privilege must prove its applicability, which is narrowly construed." *United States v. Merida*, 828 F.3d 1203, 1209 (10th Cir. 2016). "The party must bear the burden as to specific questions or documents, not by making a blanket claim." *Foster v. Hill*, 188 F.3d 1259, 1265 (10th Cir. 1999).

The parties dispute whether Lexington Law clients' communications were made to obtain legal assistance from attorneys acting in their capacities as legal advisors. On the one hand, Ad Astra argues that Lexington Law operates largely as a credit-repair business, which is no different from other credit-repair businesses run by non-attorneys. On the other hand, Lexington Law pointed out that the firm's attorneys also represent clients in cases involving claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and that the firm's practice is not limited to sending dispute letters to debt collectors.

The Tenth Circuit has not decided the issue of whether a law firm is acting in a capacity as a legal advisor when communicating with a client about whether to generate a credit-dispute letter to be sent to a debt collector under the client's signature. To be clear, the present record

contains no evidence that any attorney was involved in the communication at issue. Rather, defense counsel represented at the April 4 hearing that these communications are facilitated through a "case valet" portal on the firm's website, which allows clients to log in and direct Lexington Law as to what debts to dispute. And Lexington Law and/or its affiliates then generate credit dispute letters under the client's signature.

By analogy, the issue of whether an attorney is providing legal assistance has arisen in several contexts. For example, the Tenth Circuit considered whether the attorney-client privilege applies to documents given to an attorney (who was also a certified public accountant) to aid the attorney in preparing a tax return. *See In re Grand Jury Subpoena Duces Tecum Issued on June 9, 1982*, 697 F.2d 277, 279 (10th Cir. 1983). The court declined to decide whether preparing tax returns constitutes a legal service, and instead concluded that the attorney-client privilege could not apply to documents ultimately included in the tax return because such information is not confidential. *Id.* However, the Tenth Circuit held open the possibility that the attorney-client privilege could apply to this information "when a client provides information to an attorney and leaves the decision whether to include that information in the return to the attorney's discretion." *Id*. at 280. In other words, the attorney-client privilege could apply if the attorney exercised legal judgment.

Some courts have been influenced by whether the work performed required the services of an attorney or could have been performed equally well by a non-attorney. *See In re Universal Serv. Fund Billing Practices Litig.*, 232 F.R.D. 669, 675, (D. Kan. 2005) (collecting cases). "The fact that the client chose to channel the work through an attorney rather than perform the work with non-legal personnel does not provide the basis for a claim of privilege." *Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481, 485 (D. Kan. 1997); *see also In re Grand Jury*

*Subpoena (Mr. S.)*, 662 F.3d 65, 72 (1st Cir. 2011) ("Where, for example, an attorney acts merely as a scrivener—facilitating the consummation of a real estate transaction, passing title, and disbursing funds—the documents generated by those actions are typically not privileged."). Some courts have determined that when an attorney or law firm acts as a collection agent, the privilege does not apply. *See, e.g., Avoletta v. Danforth,* No. 3:11CV1126 (WWE), 2012 WL 3113151, at *1-*2 (D. Conn. July 31, 2012) (finding documents relating to the "underlying collection matter" were not privileged where defendants did not contend that at all relevant times the attorneys acted "as legal counsel"); *Torres v. Toback, Bernstein & Reiss LLP,* 278 F.R.D. 321, 323 (E.D.N.Y. 2012) (finding letters from a debt collection firm to its client seeking information about the debts they were attempting to collect did not constitute legal advice).

Considering Tenth Circuit decisions addressing the scope of the attorney-client privilege and other courts' determinations about similar issues, it is clear that the inquiry is a factually specific one, made on a case-by-case basis. Implicit in these decisions is the consideration of whether the work performed is customarily performed by attorneys and whether an attorney's professional skills would have value in the matter. *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 72 cmt. b (Am. Law Inst. 2000) (discussing the scope of legal assistance); *see also United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) (determining that there is a rebuttable presumption that if a person hires an attorney for advice, the attorney is hired to provide legal advice but that "the presumption is rebutted when the facts show that the lawyer was 'employed without reference to his knowledge and discretion in the law'"), *cert. denied*, 520 U.S. 1167 (1997).

The attorney-client privilege is more nuanced than either side's arguments reflect. The fact that Lexington Law offered services also offered by non-attorneys does not necessarily mean

that clients never consulted with attorneys for legal services. *See United States v. Frederick*, 182 F.3d 496, 501 (7th Cir. 1999) (stating that it could not be assumed that all information transmitted to an attorney who also prepared taxes was intended to assist the attorney in his tax-preparation function rather than his legal-representation function). But the fact that attorneys were involved in providing services also does not mean that they were legal services. *See id.* at 500 ("Communications from a client that neither reflect the lawyer's thinking nor are made for the purpose of eliciting the lawyer's professional advice or other legal assistance are not privileged.").

Ultimately though, it is Lexington Law's burden to establish that the attorney-client privilege applies, and Lexington Law falls short of meeting this burden. Lexington Law and its codefendants' response brief makes a blanket assertion of attorney-client privilege without addressing how any of the elements of the attorney-client privilege apply to the communications sought by RFP Nos. 88 and 89. Defense counsel also failed to support this objection at the April 4 hearing. Defense counsel did not state that any attorney was even involved in the decision to dispute a particular debt and, if so, what legal judgment was exercised in doing so. Rather, the present record suggests an essentially automated process by which information the consumer provided in the web portal somehow auto-generated a credit dispute letter. Instead of refuting this, defense counsel instead argued that Lexington Law's practice extends beyond issuing dispute letters and also includes representing clients in FDCPA and FCRA cases. But the fact that some of the firm's communications might be privileged is insufficient to establish that all communications are privileged. Courts have uniformly rejected these types of blanket privilege assertions. *See, e.g., Foster* 188 F.3d at 1265.

Consequently, on this record, Lexington Law has not established that the subject communications are privileged. The court therefore grants Ad Astra's motion to compel as to the narrowed scope of RFP Nos. 88 and 89. Lexington Law is directed to produce communication from clients that resulted in Lexington Law generating credit-dispute letters sent to Ad Astra under the clients' signatures, including but not limited to communications directing Lexington Law to dispute a debt that Ad Astra was attempting to collect.

However, the court allows for the possibility that some of these communications may have involved an attorney acting in his capacity as a legal advisor. Accordingly, if Lexington Law has a good-faith basis to believe that particular communications are attorney-client privileged, it may temporarily withhold those documents and include them on a privilege log. In doing so, Lexington Law shall apply the undersigned's guidance in this order about what constitutes legal assistance—namely, confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his or her capacity as a legal advisor. Any privilege log entry should therefore specify, at a minimum, (1) the identity of the attorney who exercised legal judgment with respect to the debt at issue, and (2) the nature of the legal services that were sought or rendered.

The undersigned expects that any further briefing on attorney-client privilege objections would reach these issues.

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Compliant Discovery Responses (ECF No. 33) is granted in part, as detailed above, as to RFP Nos. 88 and 89 served on Lexington Law. The motion is denied without prejudice in all other respects as to RFP Nos. 88 and 89.

**IT IS FURTHER ORDERED** that by May 10, 2019, Lexington Law shall produce all communication from clients that resulted in Lexington Law generating dispute letters sent to Ad Astra under the clients' signatures, including but not limited to communications directing Lexington Law to dispute a debt collected by Ad Astra. If Lexington Law has a good-faith basis to believe that particular communications are attorney-client privileged, it may temporarily withhold those documents and include them on a privilege log, which shall be served on or before May 17, 2019.

**IT IS SO ORDERED.**

Dated April 19, 2019, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
