# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AD ASTRA RECOVERY SERVICES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 18-1145-JWB ) |
| JOHN CLIFFORD HEATH, ESQ., *et al.*, | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter comes before the court on Plaintiff's Motion to Compel the Production of Documents by Defendants (ECF No. 48). Plaintiff asks the court to compel defendants to produce documents concerning their income and compensation. Defendants oppose the motion. For the reasons stated below, the motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiff Ad Astra Recovery Services, Inc. ("Ad Astra"), a debt collector and credit agency, alleges the "defendants engaged in a fraudulent credit-repair scheme designed to bombard debt collectors with false credit dispute letters with the intention of deceiving debt collectors . . . and frustrating their efforts to collect legitimate debts." (Compl. ¶ 3 (ECF No. 1).) Defendants deny these allegations. Ad Astra asserts mail fraud, wire fraud, and conspiracy claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1962(c) and (d). Ad Astra also asserts Kansas common law claims for fraud and tortious interference with existing contractual relationships. The defendants are John C. Heath, Attorney at Law, PLLC, doing business as Lexington Law Firm; Lexington Consumer Advocacy, LLC; John Clifford Heath, Kevin Jones, Adam C. Fullman; and Progrexion Teleservices, Inc. and Progrexion Holdings, Inc.

The individual defendants are attorneys with Lexington Law, and the Progrexion defendants are the law firm's printer and mass mailer.

The present discovery dispute involves: (1) requests for production of documents ("RFPs") that Ad Astra served on Lexington Law, the individual defendants, and the Progrexion defendants (collectively "the Lexington Law defendants") and (2) Ad Astra's request that the court compel production of documents used to create a "Master License Tracking Chart" ("the chart") produced by the Lexington Law defendants that shows payments made by the Lexington Law firm to various Progrexion entities. The RFPs seek documents concerning these defendants' income, compensation, and finances generally. The Lexington Law defendants objected to these RFPs on the grounds that, among other things, they are not proportional to the needs of the case and are overly broad. On February 28, 2019, Ad Astra filed a motion to compel (ECF No. 33) concerning these and other discovery requests.

On April 4, 2019, the undersigned conducted an in-person discovery conference with the parties, during which the court ruled from the bench on the majority of Ad Astra's motion (ECF No. 42). The court found the Lexington Law defendants' RFP responses largely failed to comply with FED. R. CIV. P. 34(b)(2)(B), which requires a responding party to "state with specificity the grounds for objecting to the request, including the reasons" because the Lexington Law defendants asserted impermissible boilerplate, categorical objections. The court overruled most of the Lexington Law defendants' proportionality objections, finding that they were largely unsupported. The court also noted the Lexington Law defendants' response brief had failed to address the discovery requests concerning compensation information raised in Ad Astra's motion to compel,

thereby waiving their objections to these discovery requests.[1] The court therefore granted this portion of Ad Astra's motion to compel as unopposed and found that Ad Astra had met its burden to show the information was facially relevant. The undersigned encouraged the parties to have an ongoing dialogue about a less invasive way for Ad Astra to obtain this information.

Following the April 4 hearing, the parties further conferred about compensation information, but they were unable to reach an agreement. Ad Astra sent the Lexington Law defendants a proposal to narrow the RFPs to certain categories of information, but the Lexington Law defendants responded by producing an even narrower category of documents. One of the documents produced was the chart, which defense counsel previously represented was created for the purpose of litigation but now represents was created during the normal course of business. After the parties reached an impasse, the undersigned granted Ad Astra leave to file another motion to compel concerning income and compensation documents.

## II. LEGAL STANDARD

FED. R. CIV. P. 26(b)(1) defines the scope of discovery. Under the rule, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." In other words, considerations of both relevance and proportionality now expressly govern the scope of discovery. FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment. Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that

---

[1] At least two RFPs at issue in this motion to compel were not part of the court's prior rulings on discovery requests concerning compensation information. The court's rulings regarding compensation information concern the discovery requests referenced in Section III(H) of Ad Astra's first motion to compel. (ECF No. 34, at 19.) The undersigned's ruling on that issue did not encompass Progrexion Teleservices RFP No. 41 or Heath RFP No. 21.

is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (applying *Oppenheimer* after the 2015 amendment); *see also Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 469 (D.N.M. 2018) (analyzing the 2015 amendment and concluding that it did not change discovery's scope but clarified it, and therefore *Oppenheimer* still applies).

When a responding party fails to make a disclosure or permit discovery, FED. R. CIV. P. 37(a) permits the discovering party to file a motion to compel. The party seeking discovery bears the initial burden to establish relevance, but it does not bear the burden to address all proportionality considerations. *See Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360 (D.N.M. 2018) (discussing the effect of the 2015 amendment on the party seeking discovery); *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003) (stating the moving party bears the initial burden to demonstrate relevance); *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) ("Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case."); FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment (noting that the amendment "does not place on the party seeking discovery the burden of addressing all proportionality considerations" and that "the parties' responsibilities [on a discovery motion] would remain the same as they have been").

Relevance, however, is often apparent on the face of the request. *See Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 652–53 (D. Kan. 2006). When the discovery sought appears relevant on its face, or the discovering party has established relevance, the party resisting discovery bears the burden to support its objections. *See Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014) (holding the party resisting discovery bears the burden to show why a

4

discovery request is improper); *Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, No. 08-1250-MLB-KGG, 2012 WL 1080801, at *3 (D. Kan. Mar. 29, 2012) ("Once this *low* burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request." (emphasis supplied)). The party resisting discovery does not carry this burden by asserting "conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad." *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004). Rather, an objecting party "must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *Id.* at 670-71.

## III. RFPs SEEKING FINANCIAL INFORMATION

The court turns first to Ad Astra's motion to compel the Lexington Law defendants to respond in full to RFPs seeking financial information. Specifically, these include RFP Nos. 75, 77, 78, and 83, issued to Lexington Law; RFP Nos. 34-39, and 41, issued to Progrexion Holdings; RFP Nos. 34-39, and 41 issued to Progrexion Teleservices; RFP Nos. 19, 20, and 25, issued to Mr. Jones; RFP Nos. 20, 21, and 26, issued to Mr. Heath; and RFP Nos. 21, 22, and 27, issued to Mr. Fullman. The parties address these RFPs categorically, and so the court will do the same.

Ad Astra argues the information sought is relevant to its RICO claims. The Lexington Law defendants initially objected that these RFPs were not proportional to the needs of the case because they are overly broad. In response to this motion to compel, the Lexington Law defendants continue to rely on these objections, and they also assert that the RFPs are harassing. The court has already heard the parties' arguments as to these discovery disputes—both through the briefings on Ad Astra's first motion to compel and in person at the April 4 discovery conference, where the

undersigned overruled most of the Lexington Law defendants' objections. Out of an abundance of caution, the court allowed the Lexington Law defendants a second bite at the apple to try to tailor this dispute to a more workable solution and/or to substantiate their objections in subsequent briefing. However, as set forth below, after carefully reviewing the present record, the undersigned reaches the same conclusion previously reached on April 4—that is, the information sought appears relevant, and the Lexington Law defendants still have not supported their objections.

### A. The RFPs seek relevant information.

Ad Astra explains that income and compensation documents are relevant to its RICO claims because responsive documents will allow Ad Astra to assess the relationships among the defendants, among other things. Ad Astra cites cases in which other district courts have found the defendants' financial information is relevant in a RICO case. *See Brown v. Tax Ease Lien Servicing, LLC*, No. 3:15-CV-208-CRS, 2016 WL 10788070, at *10 (W.D. Ky. Oct. 11, 2016) ("The discovery of tax returns, general ledgers and bank records has been repeatedly permitted in RICO actions to assess the financial relationship among the defendants, the structure of the enterprise, measure the scope and extent of defendant's fraud, prove motive, identity of other persons who may have participated in the alleged scheme and to establish damages."); *Puerto Rico Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriquena, Inc.*, 318 F.R.D. 224, 231 (D.P.R. 2016) (compelling production of documents regarding intercompany transactions in a RICO case, although without any relevance discussion); *Constitution Bank v. Levine*, 151 F.R.D. 278, 280 (E.D. Pa. 1993) (finding financial records pertaining to transactions involving defendants were relevant in a RICO action); *Halperin v. Berlandi*, 114 F.R.D. 8, 11 (D. Mass. 1986) (finding tax returns relevant in a RICO case).

Here, Ad Astra has established the relevance of the discovery it seeks.[2] Ad Astra contends that this information is relevant to the "pattern" element of a RICO claim. These types of financial records could also help establish the relationship among the defendants, making this information relevant to the "enterprise" element of a RICO claim. *See George v. Urban Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016) (quoting 18 U.S.C. § 1961(4) and stating that "RICO broadly defines 'enterprise' as any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity" (internal quotations omitted)); *see also Boyle v. United States*, 556 U.S. 938, 944 (2009) (stating that an association-in-fact enterprise requires, among other things, "relationships among those associated with the enterprise and longevity sufficient to permit these associates to pursue the enterprise's purpose").

### B. The RFPs appear proportional based on the present record.

The 2015 amendments to the Federal Rules of Civil Procedure restored the proportionality calculation to Rule 26(b)(1). When evaluating proportionality, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R.

---

[2] Ad Astra argues—without elaboration—that this information specifically "will allow Plaintiff to assess the financial relationship among the Defendants, the structure of their association-in-fact enterprise, measure the scope and extent of Defendants' fraud, prove motive, identify of and relationship among Defendants and other person who may have participated in the conspiracy, and establish damages." (ECF No. 49, at 8.) This language largely mirrors the language used in *Brown,* 2016 WL 10788070, at *10. In response, the Lexington Law defendants argue motive is not an element of a RICO claim under § 1962(c). In the absence of more focused briefing, the court declines to address each of these specific categories because the court has already found the discovery is relevant to other aspects of the RICO claims.

CIV. P. 26(b)(1). The party resisting discovery on proportionality grounds still bears the burden to support its objections. FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment ("Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties . . . ."); *Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, No. 16-CV-1094-JTM-TJJ, 2017 WL 4770702, at *4 (D. Kan. Oct. 19, 2017) ("The party resisting discovery bears the burden to support its objections based upon proportionality[.]"). However, the practical effect of the rule is that both parties must typically provide information pertinent to the proportionality analysis. *See In re Bard IVC Filters Prod. Liab. Litig.*, 317 F.R.D. 562, 565 (D. Ariz 2016); FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment ("The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes."). This is because:

> A party claiming undue burden or expense ordinarily has far better information — perhaps the only information — with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery.

FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment. "No single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional, and all proportionality determinations must be made on a case-by-case basis." *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017)

The parties have not specifically briefed these factors, but the court has considered them to the extent the court can extrapolate salient arguments. The issues at stake in the action are

important, but, in the absence of more specific argument on this factor, the court declines to find that they are any more or less important than issues at stake in other cases pending in federal court. The amount in controversy is high. Ad Astra notes that this is a multi-million-dollar RICO and fraud action, and the Lexington Law defendants do not dispute this. Ad Astra has no access to the information sought, and the Lexington Law defendants have sole access. Both sides appear to be sophisticated entities (or individuals associated with those entities). Neither party has presented evidence to substantiate having limited resources. Furthermore, it appears to the court that Ad Astra seeks relevant documents that are of at least some importance in resolving the issues.

That leaves the last factor—whether the burden or expense of the proposed discovery outweighs its likely benefit. The crux of the Lexington Law defendants' argument is that the requests are overly broad and therefore burdensome because the Lexington Law defendants have already produced sufficient information for Ad Astra to evaluate the Lexington Law defendants' motive, corporate structure, and relationship. The Lexington Law defendants state that they produced more than 10,000 pages of documents that include "a great deal of information about Defendants' finances, corporate structure, and relationships between the parties." (ECF No. 51, at 1). They state have produced executed of-counsel agreements, engagement agreements, articles of incorporation, agent compensation policies, contracts, vendor agreements, insurance information, organization charts, and payroll documents. The Lexington Law defendants also suggest that Ad Astra may obtain additional information more efficiently through upcoming depositions.

In essence, the Lexington Law defendants have provided the court with a laundry list of documents they say they have produced and ask the undersigned to take their word that this should be good enough to meet Ad Astra's needs. But the Lexington Law defendants have not provided

9

the court with any cogent explanation as to how this laundry list of documents provides Ad Astra with the relevant information needed to understand the interplay among the various entities in the alleged RICO enterprise, nor do the Lexington Law defendants offer any meaningful explanation from which the court can assess the marginal benefits to be gained from the additional documents that are responsive to the subject RFPs. The court therefore has no way to determine the extent to which the information sought would provide further clarity beyond whatever information has already been produced. The Lexington Law defendants also have provided no information suggesting that responding to the RFPs is burdensome or expensive. They provide no estimate of the amount of time it would take to respond to the RFPs or the cost of production. They do not suggest modifications to the RFPs to make them proportional (as previously suggested by the undersigned during the April 4 hearing). Rather, the Lexington Law defendants urge the court to deny the motion largely on the basis that they have already produced *some* responsive information without elaborating as to why that information is sufficient. This is not a legitimate basis for the court to limit discovery.

Application of proportionality principals is best suited when the discussion focuses on specific discovery requests and objections as opposed to sweeping generalities. *See* Hon. Elizabeth D. Laporte, Jonathan M. Redgrave, *A Practical Guide to Achieving Proportionality Under New Federal Rule of Civil Procedure 26*, 9 FED. CTS. L. REV. 19, 52 (2015). This allows the court to consider arguments narrowly tailored to specific discovery requests and puts the court in a position to modify discovery requests to make them proportional. *See id.* Unfortunately, these discussions are not reflected on this record, and the fact that the Lexington Law defendants have produced some responsive documents does not relieve them of their obligation to fully respond, in the absence of a supported objection. Based on the present record, the court is therefore unable to find

that the RFPs are disproportionate to the needs of the case. The Lexington Law defendants' objections are again overruled.

### C. Defendants have waived a "harassment" objection, and they have also failed to support it.

When ruling on a motion to compel, the court considers only those objections initially asserted in response to the discovery request and relied upon in response to the motion. *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1256 (D. Kan. 2008). Objections not initially raised in response to a discovery request are generally deemed waived absent a showing of good cause. *Id.* The Lexington Law defendants failed to initially raise a "harassment" objection in response to the RFPs, and there is no apparent reason why they could not have done so. The Lexington Law defendants argue the RFPs are harassing because they seek information not congruent with Ad Astra's claims—a position that should have been apparent when the Lexington Law defendants first reviewed the RFPs. Because the Lexington Law defendants did not initially raise a "harassment" objection in response to the RFPs, the objection is waived.

But even if the court were to consider the merits of this objection, the court would still overrule it. The RFPs seek relevant information that appears to be proportional to the needs of the case. There is no information suggesting that the RFPs were issued for any improper purpose. The Lexington Law defendants' harassment objection is therefore overruled.

### D. The tax returns appear relevant, and defendants have not established that the information contained therein is available from other sources.

The RFPs at issue seek several categories of financial documents, including the individual defendants' and the corporate defendants' income tax returns. Courts are split as to whether tax returns are entitled to enhanced protection from discovery, with the majority concluding that they

are. *See Terwilliger v. York Int'l Corp.*, 176 F.R.D. 214, 216–17 (W.D. Va. 1997) (collecting cases and describing the majority view as applying a two-pronged burden-shifting test and the minority view as applying the relevance standard). Under the two-pronged test for discovery of tax returns, the court must find that they are both: (1) "relevant to the subject matter of the action," and (2) there is a compelling need for the returns "because the information sought is not obtainable from other sources." *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 539 (D. Kan. 2006). The Tenth Circuit has not decided whether the court is required to apply this two-pronged test. *Compare Maddow v. Procter & Gamble Co.,* 107 F.3d 846, 853 (11th Cir. 1997) (applying a relevance standard), *with E.E.O.C. v. Ceridian Corp.*, 610 F. Supp. 2d 995, 998 (D. Minn. 2008) (noting that *Maddow* represents the minority view and that contemporary cases that devote substantial analysis to this issue have adopted the two-pronged test). However, other circuit courts have urged caution in directing production of tax returns. *See Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993) ("Income tax returns are highly sensitive documents; courts are reluctant to order their routine disclosure as a part of discovery."); *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74–75 (7th Cir. 1992) (citing cases determining that public policy guards against unnecessary disclosure so that tax laws may function properly and to encourage taxpayers to file complete and accurate returns). The undersigned agrees with the circuit courts that have urged caution in compelling production of tax returns and joins with the majority of judges, including those sitting in this district, in applying the two-pronged test.

For the reasons already stated, the court finds that Ad Astra has shown the information sought is relevant, satisfying the first prong. Once that burden is met, the burden shifts to the Lexington Law defendants "to show that other sources exist from which the information is readily obtainable." *Johnson*, 236 F.R.D. 539. Here, they have not established that the information

contained in the tax returns is available from other sources. The Lexington Law defendants do not even address Ad Astra's request for the corporate defendants' tax returns. As to the individual defendants' tax returns, the Lexington Law defendants state that if Ad Astra wishes to evaluate the amount of taxes paid, this information would be included on pay stubs already produced. However, Ad Astra has never suggested it seeks to determine how much taxes the individual defendants pay. Rather, Ad Astra described the RFPs as utilizing a "follow-the-money" approach. It is not apparent that the individual defendants' pay stubs (presumably from Lexington Law) would provide the full range of information Ad Astra seeks, or that the tax returns would not. Because the tax returns appear relevant and the Lexington Law defendants have not offered any explanation from which the court could find that the information contained therein is readily obtainable from other sources, the court finds that the tax returns should be produced.

## IV. DOCUMENTS UNDERLYING THE CHART

Ad Astra also asks the court to compel the Lexington Law defendants to produce documents underlying the chart.[3] However, it does not appear that Ad Astra ever served an RFP seeking documents underlying the chart. This issue is therefore not properly before the court. *See Cont'l Cas. Co. v. Multiservice Corp.*, No. 06-2256-CM, 2008 WL 73345, at *8 (D. Kan. Jan. 7, 2008) (denying a motion to compel when the moving party had failed to serve a formal discovery request). Accordingly, Ad Astra's motion to compel documents underlying the chart is granted to the extent these documents are subsumed in the RFPs discussed previously, but it is otherwise denied because "informal requests for production lie outside the boundaries of the discovery

---

[3] The parties dispute whether the chart was created for the purposes of this litigation or in the ordinary course of business. The court need not reach that issue to resolve this portion of Ad Astra's motion.

rules." *See id.* To the extent that Ad Astra wishes to serve an RFP directed to these specific documents, nothing in this order prevents Ad Astra from doing so or from formally requesting production of these documents in the future.

## V. CONCLUSION

For the reasons stated above, the Lexington Law defendants' objections are overruled, and Ad Astra's motion to compel is granted as to RFP Nos. 75, 77, 78, and 83, issued to Lexington Law; RFP Nos. 34-39, and 41, issued to Progrexion Holdings; RFP Nos. 34-39, and 41 issued to Progrexion Teleservices; RFP Nos. 19, 20, and 25, issued to Mr. Jones; RFP Nos. 20, 21, and 26, issued to Mr. Heath; and RFP Nos. 21, 22, and 27, issued to Mr. Fullman. Defendants shall fully respond to these RFPs by June 26, 2019. The Lexington Law defendants shall apply the modified temporal scope established during the April 4 hearing. To the extent Ad Astra seeks an order compelling the Lexington Law defendants to produce documents underlying the chart, the motion is granted in part and denied in part as set forth above.

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel the Production of Documents by Defendants (ECF No. 48) is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated June 12, 2019, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge