**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| AD ASTRA RECOVERY SERVICES, INC., Plaintiff, | ) | |
| v. | ) | Case No. 18-1145-JWB-ADM |
| JOHN CLIFFORD HEATH, ESQ., *et al.*, Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the court on Plaintiff's Motion to Compel the Production of Audio Recordings by Defendants and for an Award of Attorneys' Fees (ECF No. 63). Plaintiff Ad Astra Recovery Services, Inc. ("Ad Astra") is a debt collector that alleges defendants ran a fraudulent credit repair scheme that bombarded Ad Astra with false credit dispute letters. Ad Astra asks the court to compel defendant Lexington Law Firm ("Lexington Law") to produce audio recordings between it and one hundred of its consumer clients to determine whether the clients directed Lexington Law to dispute their debts with Ad Astra. Lexington Law opposes the motion on the grounds that production of the recordings is not proportional to the needs of the case.

For the reasons explained below, the court grants Ad Astra's motion to compel in part and orders Lexington Law to produce a sampling of responsive audio recordings from ten consumer clients, to be identified by Ad Astra from among the fifty Ad Astra already identified. The motion to compel is otherwise denied without prejudice to refiling after Ad Astra reviews this sample and can show that the audio recordings are sufficiently important to resolving the issues at stake in the sense that they are not unreasonably cumulative or duplicative of documentary evidence already produced. Ad Astra's request for attorney fees is denied.

## I. BACKGROUND

Ad Astra is a debt collector and credit agency that alleges the "defendants engaged in a fraudulent credit-repair scheme designed to bombard debt collectors with false credit dispute letters with the intention of deceiving debt collectors . . . and frustrating their efforts to collect legitimate debts." (Compl. ¶ 3 (ECF No. 1).) Ad Astra asserts mail fraud, wire fraud, and conspiracy claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1962(c) and (d). Ad Astra also asserts Kansas common law claims for fraud and tortious interference with existing contractual relationships. The defendants are John C. Heath, Attorney at Law, PLLC, doing business as Lexington Law Firm; Lexington Consumer Advocacy, LLC; John Clifford Heath, Kevin Jones, Adam C. Fullman; and Progrexion Teleservices, Inc. and Progrexion Holdings, Inc. The individual defendants are attorneys with Lexington Law. The Progrexion defendants are the law firm's printer and mass mailer.

This discovery dispute involves Request for Production ("RFP") No. 89, which seeks "[c]all recordings between Lexington Law Firm and consumers that hired Lexington Law Firm to address debts Ad Astra was attempting to collect." (ECF No. 34-2, at 30.) Lexington Law responded by asserting multiple objections, including that "the burden of responding was not proportional to the issues in the present action" and because the RFP calls for production of attorney-client privileged information. (*Id.*) On February 28, 2019, Ad Astra filed a motion to compel (ECF No. 33) concerning this and other discovery requests. In response to the motion, Lexington Law largely relied on attorney-client privilege objections. (ECF No. 38, at 10-11.) On April 4, 2019, the undersigned conducted an in-person discovery conference with the parties, during which the court ruled from the bench on most of Ad Astra's motion. (ECF No. 42.) The court took under advisement the motion to compel concerning Lexington Law's attorney-client

privilege objection to RFP Nos. 88 and 89, which both seek communications between Lexington Law and its consumer clients. The court subsequently granted the motion to compel as to the RFPs, finding that Lexington Law had not established the communications were privileged based on the record at that time. (ECF No. 44, at 8.) The court recognized the possibility that some of the communications sought by the RFPs may involve an attorney acting in the capacity as a legal advisor to a client, and therefore the court allowed Lexington Law to temporarily withhold privileged communications by including them on a privilege log. (ECF No. 44, at 8.) Pursuant to the court's orders at the April 4 discovery conference, Lexington Law served amended responses and objections to the RFPs on May 3, 2019. In response to RFP No. 89, Lexington Law continued to assert multiple objections, including the same proportionality objection—that the burden of responding was not proportional to the issues of the present action. (ECF No. 64, at 2.)

Since the April 4 hearing, the court has continued to conduct discovery conferences to try to quickly resolve disputes to aid the parties in completing discovery timely and efficiently. On May 31, the court conducted a discovery conference and further modified the scope of RFP No. 89. (ECF No. 54, at 2.) At that time, Lexington Law informed the court that complying with RFP Nos. 88 and 89 would require producing communications involving more than 14,000 clients. Both sides agreed that a production of this magnitude would be inefficient, so the "parties agreed that Lexington Law could produce responsive documents from 100 clients, with Ad Astra selecting the clients." (*Id.*) At subsequent discovery conferences in July, Lexington Law informed the court that production of the recorded calls was taking longer than anticipated because Lexington Law was required to review each call to determine whether it contained attorney-client privileged communications. When Ad Astra stated that it still wanted the recordings produced, the court granted Ad Astra leave to file this motion to compel. (ECF No. 61.)

## II. LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). In other words, considerations of both relevance and proportionality now expressly govern the scope of discovery. FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment. Relevance is still "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (applying *Oppenheimer* after the 2015 amendment); *see also Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 469 (D.N.M. 2018) (analyzing the 2015 amendment and concluding that it did not change discovery's scope but clarified it, and therefore *Oppenheimer* still applies).

On a motion to compel, the party seeking discovery bears the initial burden to establish relevance, but it does not bear the burden to address all proportionality considerations. *See Landry v. Swire Oilfield Servs.*, L.L.C., 323 F.R.D. 360 (D.N.M. 2018) (discussing the effect of the 2015 amendment on the party seeking discovery); *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003) (stating the moving party bears the initial burden to demonstrate relevance); *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) ("Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case."); FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment (noting that the amendment "does not place on the party seeking discovery the burden of addressing all

proportionality considerations" and that "the parties' responsibilities [on a discovery motion] would remain the same as they have been").

Relevance is often apparent on the face of the request. *See Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 652–53 (D. Kan. 2006). When the discovery sought appears relevant on its face, or the discovering party has established relevance, the party resisting discovery bears the burden to support its objections. *See Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014) (holding the party resisting discovery bears the burden to show why a discovery request is improper); *Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, No. 08-1250-MLB-KGG, 2012 WL 1080801, at *3 (D. Kan. Mar. 29, 2012) ("Once this *low* burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request." (emphasis supplied)). The party resisting discovery does not carry this burden by asserting "conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad." *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004). Rather, an objecting party "must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *Id.* at 670-71.

## III. ANALYSIS

The court previously found that RFP No. 89 seeks information relevant to Ad Astra's allegation that Lexington Law disputed clients' debts without obtaining the clients' consent to do so. (ECF No. 44, at 2.) Although the court granted Ad Astra's motion to compel as to RFP No. 89, it did so with the caveat that Lexington Law could temporarily withhold responsive material that it contended was attorney-client privileged and include this information on a privilege log. During the process of complying with the court's order, Lexington Law became aware of how

time consuming it would be to download the recorded conversations with its consumer clients and then review the recordings to screen for responsiveness and privileged communications. In response to the present motion to compel, Lexington Law argues that the "benefit-burden analysis" does not favor production. Lexington Law contends that RFP No. 89 seeks information duplicative of other documents produced, and it argues that the burden of production on Lexington Law outweighs the benefit to Ad Astra. The court understands Lexington Law's argument to be one of proportionality—that the discovery sought is disproportional to the needs of the case, which the court addresses below. But, first, the court will consider Ad Astra's argument that Lexington Law's proportionality objection is untimely.

### A. Timeliness of Proportionality Objection

Ad Astra contends that Lexington Law has waived its proportionality objection to RFP No. 89 and that prior court orders have mooted this issue. Specifically, Ad Astra contends that at the April 4 hearing and in the court's subsequent April 19 order, the court overruled Lexington Law's objections to RFP No. 89 except for allowing Lexington Law to temporarily withhold communications that it contends are attorney-client privileged. As of September 4, Ad Astra notes that Lexington Law has still failed to produce any responsive recordings or to log these recordings on a privilege log. Ad Astra also points out that, at a subsequent discovery conference, RFP No. 89 was further limited to one hundred consumer clients.

But even though the court overruled Lexington Law's proportionality objection at the April 4 hearing, the court still has an independent obligation to sua sponte consider the issue of proportionality. Rule 26(b)(2)(C) requires that "[o]n motion or **<u>on its own, the court must limit</u>** the frequency or extent of discovery" if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more

convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(C) (emphasis added). This rule incorporates the Rule 26(b)(1) proportionality standard, which the court should always consider in resolving discovery disputes. FED. R. CIV. P. 26 advisory committee's notes to the 2015 amendment (court has a "responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes"); *see, e.g., Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 523 (D. Md. 2010) ("Fed. R. Civ. P. 26(b)(2)(C) cautions that all permissible discovery must be measured against the yardstick of proportionality.").

In addition, the court finds good cause to excuse Lexington Law's renewed proportionality objection, which Lexington Law has now articulated in a more targeted and meaningful fashion than it did at the April 4 hearing. *See White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1256 (D. Kan. 2008) (stating that objections not timely asserted are deemed waived absent a showing of good cause). At the April 4 hearing on Ad Astra's motion to compel, the court observed that it was ruling on both broad discovery requests and broad objections "at a high level" and that as the parties worked together to fulfill their discovery obligations, they may encounter unforeseen issues necessitating additional rulings. This proved to be the case when Lexington Law informed the court and opposing counsel that fully responding to RFP Nos. 88 and 89 implicated more than 14,000 consumer clients' files. Even Ad Astra's counsel agreed that a production of this magnitude would be inefficient for Ad Astra to process and review. The same scenario is true of the present dispute, which arose during Lexington Law's attempt to comply with court orders compelling production but also allowing Lexington Law to

temporarily withhold privileged material. This triggered a need for Lexington Law to review all of the audio recordings to screen for privileged communications.

**B. Proportionality**

When evaluating proportionality, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). The party resisting discovery on proportionality grounds still bears the burden to support its objections. FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment ("Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties . . . ."); *Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, No. 16-CV-1094-JTM-TJJ, 2017 WL 4770702, at *4 (D. Kan. Oct. 19, 2017) ("The party resisting discovery bears the burden to support its objections based upon proportionality[.]"). The practical effect of the rule is that both parties must typically provide information pertinent to the proportionality analysis. *See In re Bard IVC Filters Prod. Liab. Litig.*, 317 F.R.D. 562, 565 (D. Ariz 2016); FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment ("The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes."). This is because

> [a] party claiming undue burden or expense ordinarily has far better information — perhaps the only information — with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery.

FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment. "No single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional, and all proportionality determinations must be made on a case-by-case basis." *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017)

The recordings appear to be of some importance in resolving the issues. Indeed, the court already found that RFP No. 89 seeks relevant information. (ECF No. 44, at 2-3.) Ad Astra argues the subject audio recordings "are highly relevant to, *inter alia*, Plaintiff's allegation that Lexington Law disputed clients' debts without obtaining the clients' consent to do so." (ECF No. 66, at 1-2.) The court credits Ad Astra's explanation of relevance and, once again, reiterates that Ad Astra is certainly entitled to some discovery of consumer clients' communications directing Lexington Law to dispute debts that Ad Astra was attempting to collect. That is precisely why the court already ordered Lexington Law to produce these documents, subject to any privilege claims to be included on a privilege log. (ECF No. 40, at 8.) And Lexington Law states that it has produced fifty consumer client files containing email communications by and among Lexington Law paralegals, with notes reflecting if and when Lexington Law sent letters to Ad Astra regarding consumer clients' debts. (ECF No. 65, at 3.) Lexington Law also states that it has produced engagement letters and other documents evidencing consumer clients' debts, services rendered to the consumer clients, and descriptions of the results Lexington Law obtained. (*Id.*)

The pivotal issue here is therefore not relevance, but proportionality. On the one hand, Lexington Law claims it has already provided enough information for Ad Astra to evaluate whether Lexington Law's consumer clients consented to Lexington Law disputing debts on their behalf. Furthermore, Lexington Law submitted a declaration from Stephanie Muir, the compliance manager for Defendant Progrexion (the entity that recorded the calls), which estimates the 200+

hours it would take to download, listen to, and edit the calls to exclude non-responsive information and attorney-client privileged communications. (ECF No. 65-1.) On the other hand, Ad Astra argues the material already produced is not complete because paralegal notes could be imprecise or inaccurate, and the audio recordings will contain the consumer clients' actual authority or instructions provided to Lexington Law. (ECF No. 64, at 2.) The court credits both parties' arguments. Ad Astra has already obtained much discovery going to the issue of whether Lexington Law's consumer clients directed Lexington Law to dispute certain debts, and the recordings likely involve relevant information that may or may not be encompassed in the discovery already produced.

Ultimately, resolution of the issue (at least at this point) hinges on the parties' relative access to potentially important information. Because it is unknown what information the recordings may provide above and beyond what Lexington Law has already produced, the court cannot determine how important the audio recordings are to resolving the issues in this case. Neither can the parties. The only way to gauge this is via a sampling of the audio recordings. Lexington Law has access to the subject audio recordings. Ad Astra does not. The court therefore grants in part Ad Astra's motion to compel to the extent that it will order Lexington Law to produce audio recordings for ten consumer clients of Ad Astra's choice (from among the fifty or more consumer clients that Ad Astra has already selected). The remainder of Ad Astra's motion is denied without prejudice to refiling upon a showing that the audio recordings are sufficiently important to resolving the issues at stake in the sense that they are not unreasonably cumulative or duplicative of documentary evidence already produced.

By **September 25, 2019**, Ad Astra shall notify Lexington Law of the names of the ten consumer clients it selects. Lexington Law shall produce responsive audio recordings on or before

**October 4, 2019**. Lexington Law must log any withheld communications on a privilege log that shall also be produced on or before **October 4, 2019**.[1] If, after reviewing Lexington Law's production, Ad Astra wishes to file a renewed motion to compel as to further audio recordings, it shall file any such motion on or before **October 15, 2019**, and the memorandum in support shall be limited to 7 pages. Defendants must file any response on or before **October 22, 2019**, and any response brief shall be limited to 7 pages. Ad Astra's reply brief shall be filed on or before **October 27, 2019**, and shall be limited to 3 pages.

Ad Astra's request for attorney fees is denied. *See* Fed. R. Civ. P. 37(a)(5)(B) (stating that an award of expenses is discretionary when a motion to compel is granted in part and denied in part).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel the Production of Audio Recordings by Defendants and for an Award of Attorneys' Fees (ECF No. 63) is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated September 18, 2019, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge

[1] The court recognizes that defendants have had some difficulty complying with court-imposed deadlines in this case. Although the court has granted them some leeway on these deadlines in the past, the above deadlines are firm and will not be extended. If Lexington Law does not complete its production of the compelled audio recordings by this deadline, the court will order Lexington Law to immediately produce the audio recordings for all one hundred consumer clients. In addition, if Lexington Law does not produce a privilege log by this deadline, the court will deem all privilege objections waived. The parties have an ambitious schedule in place to complete discovery, and the court will not tolerate any further delays.