# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AD ASTRA RECOVERY SERVICES, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 18-1145-JWB-ADM ) |
| JOHN CLIFFORD HEATH, ESQ., *et al.*, | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter comes before the court on Plaintiff's Motion to Compel the Production of Additional Audio Recordings by Defendants (ECF No. 75). Plaintiff Ad Astra Recovery Services, Inc. ("Ad Astra") is a debt collector that alleges defendants ran a fraudulent credit repair scheme that bombarded Ad Astra with false credit dispute letters. Ad Astra previously moved to compel Defendant Lexington Law Firm ("Lexington Law") to produce audio recordings between it and 100 of its consumer clients to determine, among other things, whether the clients directed Lexington Law to dispute their debts with Ad Astra. In determining whether the requested discovery was proportional, the court found that it lacked the information necessary to evaluate the relevance of the material because it was largely unknown what would be revealed via the recordings. The court limited the request to a sample of recordings involving ten of Lexington Law's consumer clients of Ad Astra's choosing and, once Ad Astra had a chance to evaluate those, granted leave for Ad Astra to move to seek additional recordings. *See Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB-ADM, 2019 WL 4466903, at *5 (D. Kan. Sept. 18, 2019).

Ad Astra now requests a second production of recordings involving 25 consumer clients. Ad Astra argues that the first production contains highly relevant information and that Ad Astra

requires more. Lexington Law largely disputes Ad Astra's stated reasons for relevance and contends the discovery is disproportional to the needs of the case. For the reasons stated below, Ad Astra has established that the recordings are important to resolving the issues at stake, and Lexington Law has not offered specific or reliable support for its contention that the burden of producing the material would outweigh its likely benefit. The motion is therefore granted.

I.  **BACKGROUND**

Ad Astra is a debt collector and credit agency that alleges the "defendants engaged in a fraudulent credit-repair scheme designed to bombard debt collectors with false credit dispute letters with the intention of deceiving debt collectors . . . and frustrating their efforts to collect legitimate debts." (Compl. ¶ 3 (ECF No. 1).) Ad Astra asserts mail fraud, wire fraud, and conspiracy claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1962(c) and (d). Ad Astra also asserts Kansas common law claims for fraud and tortious interference with existing contractual relationships. The defendants are John C. Heath, Attorney at Law, PLLC, doing business as Lexington Law Firm; Lexington Consumer Advocacy, LLC; John Clifford Heath, Kevin Jones, Adam C. Fullman; and Progrexion Teleservices, Inc. and Progrexion Holdings, Inc. The individual defendants are attorneys with Lexington Law. The Progrexion defendants are the law firm's printer and mass mailer.

The court previously outlined the circumstances giving rise to this discovery dispute in its prior Memorandum and Order and will only briefly summarize them here. *See Ad Astra Recovery Servs*, 2019 WL 4466903, at *1-*2. Ad Astra's Request for Production ("RFP") No. 89 seeks "[c]all recordings between Lexington Law Firm and consumers that hired Lexington Law Firm to address debts Ad Astra was attempting to collect." (ECF No. 34-2, at 30.) Lexington Law responded by asserting multiple objections, including that "the burden of responding was not

proportional to the issues in the present action." (*Id.*) Ad Astra previously moved to compel production of recordings involving 100 of Lexington Law's consumer clients. Lexington Law argued that the audio recordings were duplicative of documentary evidence already produced—specifically, notes in the client files memorializing the substance of the calls. Lexington Law also argued that production of the recordings was not proportional to the needs of the case. The court determined that, because what was on the recordings was entirely unknown, it lacked the information needed to evaluate the proportionality of the requested discovery. So, the court ordered a limited production of recordings from ten consumer clients and granted Ad Astra leave to seek additional recordings if Ad Astra could show that the recordings are sufficiently important to resolving the issues at stake and are not unreasonably cumulative or duplicative of documentary evidence already produced.

According to Ad Astra's motion, Lexington Law produced 580 recordings associated with the ten consumer clients identified by Ad Astra. (ECF No. 76, at 3.) Of those, 243 were duplicate copies, leaving 337 non-duplicate copies of recordings ranging from five minutes to an hour. Ad Astra argues that those recordings contain evidence that is highly relevant to the issues in this case and is not contained in the documentary evidence already produced. Ad Astra requests that Lexington Law produce additional recordings from 25 consumer clients. Lexington Law disputes the relevance of the requested material and still rests on its previous proportionality objection.

## II. LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). In other words, considerations of both relevance and proportionality now expressly govern the scope of discovery. FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment. When

3

evaluating proportionality, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). The party resisting discovery on proportionality grounds still bears the burden to support its objections. FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment ("Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties . . . ."); *Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, No. 16-CV-1094-JTM-TJJ, 2017 WL 4770702, at *4 (D. Kan. Oct. 19, 2017) ("The party resisting discovery bears the burden to support its objections based upon proportionality[.]"). The practical effect of the rule is that both parties must typically provide information pertinent to the proportionality analysis. *See In re Bard IVC Filters Prod. Liab. Litig.*, 317 F.R.D. 562, 565 (D. Ariz 2016); FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment ("The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes."). This is because

> [a] party claiming undue burden or expense ordinarily has far better information — perhaps the only information — with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery.

FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment. "No single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional, and all proportionality determinations must be made on a case-by-case basis." *Oxbow Carbon &*

*Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017). The court retains an independent ongoing obligation to assess proportionality. *See* FED. R. CIV. P. 26(b)(2)(C) (providing that, on a motion or on its own, the court must limit the frequency and extent of disproportional discovery); *see also* FED. R. CIV. P. 26 advisory committee's notes to the 2015 amendment (stating the court has a "responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes").

## III. ANALYSIS

The parties focus on two of the proportionality considerations: (1) the importance of the discovery in resolving the issues and (2) whether its burden or expense outweighs its likely benefit. The court will do the same, starting first with Ad Astra's argument that the recordings contain highly relevant material unavailable in documentary evidence already produced.

### A. Importance of the Proposed Discovery

The court's order on Ad Astra's first motion to compel granted Ad Astra leave to seek additional recordings if Ad Astra was able to demonstrate that the recordings were important to resolving the issues at stake and were not unreasonably cumulative or duplicative of documentary evidence already produced (a position Lexington Law took in response to the first motion to compel but which it appears to abandon on this motion). Ad Astra now establishes both the importance of the proposed discovery and that it is not unreasonably cumulative or duplicative.

Ad Astra points to four example calls to demonstrate both relevance and lack of overlap with documentary evidence. In Example 1, a Lexington Law agent tells a consumer to keep in mind that each time Lexington Law sends out dispute letters, the creditor performs an investigation into the case, which costs time and money. (ECF No. 76, at 5.) This information is not contained in the written summary of the call in the client file. Ad Astra contends it is highly relevant to rebut

5

defendants' assertion that Ad Astra has no cause of action under the Fair Credit Reporting Act because Ad Astra had no obligation to respond to the dispute letters sent to it by Lexington Law. Similarly, in Example 4, an agent tells a consumer client that letters will be written on behalf of the consumer client "so they look like they're coming from you." (*Id.* at 7.) The court agrees these types of statements would be relevant, as one of the key issues in this case is whether Lexington Law disguised its letters to make them appear as if they were coming from consumers directly, thereby triggering certain investigation requirements under federal law.

In Example 2, a Lexington Law agent suggests to a consumer client that Lexington Law will dispute all negative items on the consumer client's credit report unless instructed otherwise. (*Id.* at 6.) Ad Astra contends that this type of statement contradicts Lexington Law's engagement agreements, which state that Lexington Law would not dispute accurate credit information. Example 3 contains similar statements—an agent informing a consumer client that "whether it has a debt [sic] or doesn't have a debt, we're still going to challenge it; we're still going to try to have it removed and see what we can do for you, okay?" (*Id.* at 7.) According to Ad Astra, these statements were not memorialized in the summary of this call.

Lexington Law addresses the four examples above by generally disagreeing with Ad Astra's interpretation of the statements and their relevance. For example, Lexington Law points out that a statement suggesting that a creditor may *choose* to respond to a dispute letter would obviously implicate a potential cost of doing business, which is far from a nefarious proposition; and that a statement suggesting that Lexington Law would dispute all negative credit information unless instructed otherwise does not mean that Lexington Law actually disputed accurate credit information. Lexington Law argues that Example 3 contains information dealing with debt settlement, which is different than negative information that may appear on a credit report—

6

essentially contending that Ad Astra misconstrues the nature of the call. But notably absent from Lexington Law's brief is any suggestion that this type of information is duplicative of documents already produced, including call summaries contained in the client files.

Lexington Law's position is essentially its theory of the case and its view of what the recorded calls mean. Such arguments are more appropriately made on the merits (*e.g.*, on summary judgment or at trial) rather than to foreclose discovery. Here, the court is tasked with determining whether the recordings are important to resolving the issues at stake. To that end, Ad Astra has shown that the calls contain information that is important to resolving the issues in the case and that is unavailable from the other discovery produced.[1]

### B. Burden and/or Expense

Under the proportionality analysis, the court must consider the importance of the discovery in conjunction with whether its burden or expense outweighs its likely benefit. Lexington Law largely relies on its prior position in articulating the nature of the burden. It incorporates by reference a declaration from Stephanie Muir, the compliance manager for Defendant Progrexion (the entity that recorded the calls) in which Ms. Muir estimates that it would take 200+ hours to download, listen to, and edit the calls to exclude non-responsive information and attorney-client privileged communications for the previously requested 100 client consumers. (ECF No. 65-1.) Of course, Ad Astra is no longer requesting production of audio recordings from 100 consumer

---

[1] Lexington Law argues that further production is unwarranted because it would reward Ad Astra for its lack of diligence, as Ad Astra has not even reviewed all the recordings produced so far. But Ad Astra explains that the duplicate copies Lexington Law produced have contributed to the delay, and Ad Astra contends that, irrespective of the unreviewed recordings, it needs additional samples to overcome any argument that the subject recordings are aberrations. The court is unpersuaded that Lexington Law's argument about Ad Astra's partial review bears on the outcome of this motion.

clients, and Lexington Law now has the benefit of having produced audio recordings for 10 consumer clients. Yet, Lexington Law has not provided the court with the actual (rather than predicted) time it took to produce the audio recordings, which would be a more reliable indicator of the burden imposed by the current request.[2] Moreover, Ad Astra's opening brief points out that Lexington Law did not provide a privilege log when it produced the audio recordings, which suggests that Ms. Muir's declaration may have inaccurately predicted the amount of time necessary to review the recordings for privileged communications. (ECF No. 76.) Lexington Law offers no explanation for this lack of a privilege log. It is therefore unclear to the court whether Lexington Law actually reviewed the calls and decided not to withhold any material on privilege grounds. Even if Lexington Law did perform such a review, it has not provided the court with any update regarding the actual resources required (if any) to perform a privilege review. The court is therefore left only with a relatively obsolete declaration to evaluate the nature of the burden imposed on Lexington Law. On this record, the burden to Lexington Law is speculative and insufficient to overcome the ostensible benefits of the proposed discovery.

### C. Conclusion

Ad Astra has demonstrated that the information sought is important to resolving the issues in the case, and Lexington Law has not established that the burden or expense of the proposed discovery outweighs its likely benefit. On this record, the proposed discovery appears relevant and proportional to the needs of the case, and so the court grants Ad Astra's motion. That said, the undersigned recognizes that the referenced examples appear to encompass a relatively small portion of audio recordings produced, and the court retains an independent obligation to ensure

---

[2] Ad Astra notes that the 337 non-duplicate recordings amounted to 1.6 gigabytes of data, which would appear to be a lower amount of data than what Ms. Muir's declaration predicted.

that discovery is proportional to the needs of the case.  To that end, the court emphasizes that Lexington Law has the option to produce the audio recordings and/or make the recordings available for inspection and copying.  Furthermore, nothing in this order shall preclude Lexington Law from seeking to shift costs to Ad Astra, if warranted based on the facts and the law.

Accordingly, by **November 15, 2019**, Ad Astra shall notify Lexington Law of the names of the 25 consumer clients it selects.  Lexington Law shall produce responsive audio recordings or make them available for inspection and copying on or before **November 26, 2019**.  Lexington Law may designate the recordings as "confidential" under the protective order in this case, which includes a clawback provision, should the need arise.  (ECF No. 22.)

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel the Production of Additional Audio Recordings by Defendants (ECF No. 75) is granted.

**IT IS SO ORDERED.**

Dated November 8, 2019, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
