# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AD ASTRA RECOVERY SERVICES, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 18-1145-JWB-ADM<br>) |
| JOHN CLIFFORD HEATH, ESQ., *et al.*, | )<br>) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter comes before the court on Plaintiff's Motion for Leave to Amend the Complaint to Join Parties (ECF No. 104). Plaintiff Ad Astra Recovery Service, Inc. ("Ad Astra") seeks leave to file an amended complaint that adds corporate defendant entities related to some of the existing defendants as well as those entities' chief executive officer. Defendants oppose the motion on the grounds that it is untimely under the scheduling order; that they would suffer undue prejudice if the court allows the amendment; and that the amendment is futile. For the reasons explained below, the court disagrees and grants the motion.

## I. BACKGROUND

Ad Astra is a debt collector and credit agency that alleges the "defendants engaged in a fraudulent credit-repair scheme designed to bombard debt collectors with false credit dispute letters with the intention of deceiving debt collectors . . . and frustrating their efforts to collect legitimate debts." (Compl. ¶ 3 (ECF No. 1).) Ad Astra filed this case on June 17, 2018, asserting mail fraud, wire fraud, and conspiracy claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1962(c) and (d). Ad Astra also asserts Kansas common law claims for fraud and tortious interference with existing contractual relationships. The current

defendants are John C. Heath, Attorney at Law, PLLC, doing business as Lexington Law Firm; Lexington Consumer Advocacy, LLC; Lexington Consumer Advocacy, Inc.; John Clifford Heath; Kevin Jones; Adam C. Fullman; Progrexion Teleservices, Inc.; and Progrexion Holdings, Inc. The individual defendants are attorneys with Lexington Law. The original complaint alleges that the Progrexion defendants are the law firm's printer and mass mailer. Ad Astra's motion to amend explains that it learned through discovery that the Progrexion defendants and their related corporate entities played a more significant role in the alleged fraudulent credit-repair scheme than originally pleaded.

Ad Astra now seeks to amend to add defendants related to the existing Progrexion defendants—namely, PGX Holdings, Inc.; Progrexion ASG, Inc.; Progrexion Marketing, Inc.; Progrexion IP, Inc; and Jeffrey R. Johnson, the CEO of the existing and proposed Progrexion defendants. Ad Astra's proposed amended complaint alleges that Progrexion Teleservices (current defendant) employs telephone service representatives who provide telemarketing, telephone sales, and corresponding services to Lexington Law, including handling Lexington Law's initial client intake and facilitating clients signing engagement agreements. Ad Astra's proposed amended complaint now also alleges that Progrexion Marketing (proposed defendant) is responsible for marketing to potential Lexington Law clients; that Progrexion IP (proposed defendant) owns and licenses the tradename "Lexington Law" and provides Lexington Law with proprietary credit report error correction services software, among other things; and Progrexion ASG (proposed defendant) is responsible for managing funds, administering employee benefits, managing human resources, and handling other routine business operations. Ad Astra further alleges that Progrexion entities' staff is housed in Lexington Law's offices and that some Lexington Law and Progrexion entities have offices in the same buildings. Ad Astra seeks to add Mr. Johnson as a defendant

because he is the CEO of each Progrexion entity and because he allegedly developed, controlled, and ratified the conduct at issue, with fraudulent intent. Ad Astra's proposed amended complaint would also remove Lexington Consumer Advocacy, Inc. as a defendant, add more detailed factual allegations about defendants' letter volume and processes, and clarify each defendant's alleged role in the scheme.

The scheduling order established a deadline of November 20, 2018, for motions to amend the pleadings. (ECF No. 21, at 9.) Ad Astra filed this motion on December 11, 2019. Ad Astra contends that it only recently learned sufficient information through discovery to amend and that it could not have amended sooner because of repeated discovery delays and inaccurate information provided by the current defendants that obscured the Progrexion entities' corporate structure. For example, Ad Astra points out that defendants' corporate disclosure statement filed on July 11, 2018, states that Progrexion Holdings, Inc. and Progrexion Teleservices, Inc. have no parent company. (ECF No. 11.) But Ad Astra learned at the Progrexion defendants' corporate depositions on November 4 and 6, 2019, that the Progrexion entities' corporate structure differed from the corporate disclosure statement. (ECF No. 105, at 2-3.) Furthermore, Ad Astra states that it learned about Mr. Johnson's alleged role in the business operations at Kevin Jones' deposition on October 3, 2019. After these depositions, defendants filed an amended corporate disclosure statement on December 11, 2019, that identifies (1) PGX Holdings, Inc. as the parent company of Progrexion Holdings, Inc. and (2) Progrexion Holdings as the parent company of Progrexion Teleservices. (ECF No. 103.)

In arguing against the proposed amendment, Defendants focus on Progrexion Holdings's response to an interrogatory that asked Progrexion Holdings to "[i]dentify all corporate parents, subsidiaries, divisions, affiliates, and any other entities related to Progrexion." (ECF No. 114-1,

3

at 3.) Progrexion Holdings points out that its response to this interrogatory on November 14, 2018, identified the various Progrexion entities that Ad Astra now seeks to join. Defendants also note that Progrexion's own website lists Mr. Johnson as the CEO, and that Ad Astra's amended initial disclosures (served on August 19, 2019) listed Mr. Johnson and corporate representatives for each of the proposed Progrexion defendants as potential witnesses. (ECF No. 114-2.)

Separately, discovery disputes and delays have marked this case—most of them involving Ad Astra's efforts to obtain discovery. On April 4, 2019, the court granted in large part Ad Astra's motion to compel, overruling numerous boilerplate and improper objections, including a broad and largely unsupported attorney-client privilege objection. (ECF Nos. 41-44.) Similarly, on June 12, 2019, the court granted in large part Ad Astra's motion to compel production of defendants' financial information. (ECF No. 55.) On September 18, 2019, the court granted in part Ad Astra's motion to compel, ordered Lexington Law to produce a sampling of audio recordings between Lexington Law and its clients, and later granted Ad Astra's motion to compel a larger sampling. (ECF No. 70.) All the while, the undersigned held numerous discovery conferences to resolve disputes and to set and reset deadlines after defendants delayed in serving timely discovery responses. (ECF Nos. 45, 53, 59, 62, 75, 84, 96, 109.) At one point, the court even ordered defendants to show cause why they should not be held in contempt for failing to comply with court orders to provide discovery. (ECF No. 57.) Although the undersigned declined to sanction defendants based on their response to the order, defendants never disputed that they failed to provide the discovery by the deadline ordered. (ECF No. 58.)

I. ANALYSIS

When a party moves to amend after the deadline set in the scheduling order, the moving party must (1) demonstrate good cause for modifying the scheduling order under Federal Rule of

Civil Procedure 16(b)(4), and (2) satisfy the standards for amendment under Rule 15(a). *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). A motion to amend to join additional parties also implicates the Federal Rules governing mandatory or permissive joinder. *See* FED. R. CIV. P. 19 & 20.

### A. Good Cause Pursuant Rule 16(b)(4)

A scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). To establish good cause, the moving party must show that it could not have met the motion-to-amend deadline despite "diligent efforts." *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018). Because Rule 16 requires diligence, if a party knows of "the underlying conduct but simply failed to raise [its] claims, . . . the claims are barred." *Gorsuch*, 771 F.3d at 1240. On the other hand, "Rule 16's good cause requirement may be satisfied . . . if a [party] learns new information through discovery or if the underlying law has changed."

Although Ad Astra does not specifically address the good-cause requirement to modify a scheduling order deadline,[1] the court finds good cause based on the arguments set forth in Ad Astra's brief. Ad Astra contends that prolonged meet-and-confer efforts and frequent discovery disputes stymied Ad Astra's efforts to take depositions (which did not begin to occur until the fall of 2019) and essentially delayed Ad Astra discovering the facts that gave rise to the motion to amend. Moreover, defendants filed an inaccurate corporate disclosure statement that did not properly identify the current Progrexion defendants' parent companies, which further confused the matter. Ad Astra argues that it is reasonable that the appropriate parties were not apparent from

---

[1] Rather, Ad Astra addresses the timeliness of its motion as part of the Rule 15 analysis.

5

the outset given the inaccurate corporate disclosure statement.[2]  On the other hand, defendants focus on the fact that they identified the various Progrexion entities in their interrogatory responses served on November 14, 2018; that Mr. Johnson's identify as CEO was publicly available on Progrexion's website; and that Ad Astra identified Mr. Johnson and corporate representatives from the proposed Progrexion defendants in Ad Astra's amended initial disclosures served on August 19, 2019.  In other words, defendants contend that Ad Astra could have amended sooner.

The record demonstrates that Ad Astra knew of the existence of the corporate entities and Mr. Johnson before it moved to amend, but it does not demonstrate that Ad Astra knew of (or could have known of) the scope of their alleged involvement any sooner than it did.  Although defendants point to their November 2018 interrogatory response, they do not address their inaccurate corporate disclosure statement, which they only recently amended.  The crux of Ad Astra's argument is that repeated document-production delays resulted in depositions being delayed, and that depositions beginning in the fall of 2019 provided the bulk of the factual allegations supporting the motion to amend.  The court credits this characterization of discovery.  The proposed amended complaint contains new and detailed factual allegations concerning a complex, sophisticated business operation with interacting and overlapping parts.  Although Ad Astra knew of certain information giving rise to the proposed amendments before it moved to amend, the undersigned cannot say that Ad Astra could have brought the entirety of the motion to amend any sooner than it did given the complexity of business operations involved, discovery

---

[2] Ad Astra also argues that defendants concealed the true structures of participants of the scheme, made "calculated discovery delays" and concerted efforts to prevent Ad Astra from obtaining material evidence.  (ECF No. 104 at 1; ECF No. 105, at 5, 11.)  While the record demonstrates discovery delays, it does not support any inference of improper motive.  The court does not find these arguments persuasive in the context of evaluating good cause.

delays, and defendants' own inaccurate corporate disclosure statement. The court therefore finds good cause to modify the scheduling order to allow the belated motion to amend.

B.     **Amendment Under Rule 15**

Once a party has filed a responsive pleading, the opposing party "may amend its pleading only with the opposing party's written consent or the court's leave," which should be freely given when justice requires. FED. R. CIV. P. 15(a)(2). The rule's purpose "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *SCO Grp., Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062, 1085 (10th Cir. 2018) (internal quotations omitted). The court may refuse leave to amend "only [upon] a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (same).

Practically speaking, the party opposing a motion to amend generally bears the burden to demonstrate why the amendment should not be permitted. *See Wilkerson*, 606 F.3d at 1267 (in the absence of such a showing, amendment should be allowed); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (stating the party opposing amendment bears the burden to show undue prejudice and that there is a presumption in favor of amendment absent such a showing "or a strong showing of the remaining *Forman* factors"). Whether to grant a motion to amend is within the court's sound discretion. *Gorsuch,* 771 F.3d at 1240. In this case, defendants argue that they and the proposed defendants would suffer undue prejudice if the court allows the amendments, and they contend the amendments are futile.

1.     **Undue prejudice**

Undue prejudice is the most important factor in determining whether to allow an amendment to the pleadings. *See Minter*, 451 F.3d at 1207. A party may be unduly prejudiced when an amendment unfairly affects a party preparing its defense—for example, when the amendments "arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id.* However, the fact that a party must defend against new or better-pleaded claims does not equate to undue prejudice. *See Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000) ("The inclusion of a claim based on facts already known or available to both sides does not prejudice the non-moving party."); *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971) (recognizing that there is always practical prejudice resulting from an amendment but that this is not the test); *Hirt v. Unified Sch. Dist. No. 287*, 308 F. Supp. 3d 1157, 1168 (D. Kan. 2018) ("While any amendment invariably causes some practical prejudice, undue prejudice means that the amendment would work an injustice to the defendants." (internal quotations omitted)); 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1487 (3d ed.) (recognizing a plaintiff typically will not be precluded from amending "simply because that amendment may increase defendant's potential liability").

Here, defendants argue that both they and the proposed defendants would be unduly prejudiced by the amendments. Specifically, they argue that Ad Astra seeks to name Mr. Johnson in his individual capacity, thus subjecting him to financial exposure that is potentially not covered by his indemnification agreement. They note that discovery is wrapping up and that Mr. Johnson has not had any opportunity to conduct his own discovery to properly defend against Ad Astra's allegations. They argue that the proposed Progrexion entities would be prejudiced because Ad Astra previously knew of their existence but only seeks to name them now, when discovery is about to close and the parties have already served expert disclosures.

Generally, the analysis of undue prejudice involves potential prejudice to the parties who are already present in the case, not to potential defendants who have not appeared and who are not advancing these arguments themselves. Regardless, to the extent that the new defendants believe they would be prejudiced by the existing case schedule, they may request a hearing to discuss any remaining discovery needs and any narrowly tailored adjustments to the case schedule. Therefore, there is no need for the defendants to be unduly prejudiced by the amended complaint.

Defendants also argue that they would be prejudiced by the amendments because the proposed amended complaint significantly expands the case. For example, defendants note that the proposed amended complaint alters Paragraph 3 to expand the period when defendants were allegedly engaged in a fraudulent credit repair scheme—from January 2014 (as stated in the complaint) to 2010 (as stated in the proposed amended complaint). (ECF No. 107-4, at ¶3.) Defendants note the four-year statute of limitation in a RICO action and that the undersigned previously limited the temporal scope of discovery requests using a cutoff date of May 21, 2013. Defendants also characterize the addition of Paragraph 139 as adding a new cause of action. It alleges that the Progrexion entities "knowingly engaged in monetary transactions that siphoned funds from Lexington Law to pay the Progrexion entities in violation of 18 U.S.C. § 1957." The allegation appears under the heading "Third Cause of Action . . . Under Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) [Alternative RICO Enterprise]" and under the subheading, "Pattern of Racketeering Activity – Mail and Wire Fraud." (ECF No. 107-4, at 20-22.)

Regardless of whether the paragraph is properly characterized as a separate claim or a separate legal theory, the court understands that it appears reasonably likely that defendants may wish to take additional discovery. The court also understands defendants' argument about

temporal scope to be one of prejudice because of potentially expanded discovery at a late stage. But defendants fail to explain with any specificity what additional discovery they would require. Moreover, narrowly tailored adjustments to the current discovery schedule can remedy any potential, unspecified prejudice. During the discovery conference on December 13, 2019, the undersigned asked defendants how much additional time they would require for discovery if the court allowed the motion to amend, and defendants estimated they would require two additional months. Although the court raised the issue of extended discovery before defendants responded to the instant motion, defendants' response brief does not address that possibility or contend that they would continue to be prejudiced even if the court were to extend case management deadlines. Because the court is willing to extend discovery, it is not apparent that defendants would be unduly prejudiced. Therefore, the court will not deny the motion on this basis.

### 2. Futility

"A proposed amendment is futile if the [pleading], as amended, would be subject to dismissal." *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'r's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). In the context of futility, the court often considers whether the amended complaint could withstand a motion to dismiss pursuant to Rule 12(b)(6). *See* 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1487 (3d ed.) (collecting cases). To withstand dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In analyzing whether dismissal is appropriate, the court must "accept the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

Defendants make sweeping arguments that all of plaintiff's claims are subject to dismissal for failure to plead sufficient facts to support the claims and for failure to plead the fraud-based claims with particularity, as FED. R. CIV. P. 9(b) requires. But, even according to defendants, these deficiencies appear in plaintiff's original complaint, too. (ECF No. 114, at 8-9.) For example, defendants argue that Ad Astra's core allegations "of both the amended complaint and the original complaint" do not support a fraud claim. (*Id.* at 8.) According to defendants, because those same facts do not support the conclusion that there was a scheme to defraud, Ad Astra's RICO mail and wire fraud claim also fails. (*Id.* at 9.) Specifically, defendants attack the proposed amended complaint as failing to set forth the time, place, and contents of the false representation, the identify of the party making the statements, and the consequences of those statements. Defendants note that Paragraph 133, which sets out an "alternative enterprise," states that Mr. Johnson "through the Progrexion entities" engaged in various unlawful practices, but it fails to specify what acts were committed by Mr. Johnson individually and each of the Progrexion entities. (ECF No. 107-4, ¶ 133.) Defendants also argue that various factual allegations fail to delineate with specificity any of the requirements of Rule 9(b), but the only other example defendants cite is that Paragraph 59, which also does not distinguish between the Progrexion entities.

Defendants correctly note that Ad Astra's mail and wire fraud allegations are subject to a heightened pleading standard. *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1255 (10th Cir. 2016). Specifically, Ad Astra must plead the alleged predicate acts of mail and wire fraud with particularity, as required by Rule 9(b). *Id.* at 1245 ("[P]laintiffs must set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." (internal quotations omitted)). But defendants point to only two paragraphs in the proposed amended complaint to argue that the predicate acts are not pleaded

11

with particularity. In doing so, defendants fail to address the amended complaint as a whole—overlooking factual allegations that detail the nature of the alleged scheme (including each defendant's role), time period involved, and the communications at issue. Without a significantly more developed argument, the undersigned cannot say that Ad Astra has failed to plead the fraud-based claims with particularity. The court also agrees with Ad Astra that the one case defendants cite on this point is distinguishable. *See Ogles v. Security Benefit Life Ins. Co.*, 401 F. Supp. 3d 1210, 1222-23 (D. Kan. 2019) (finding the plaintiff failed to plead particularized examples of mail or wire fraud and failed to plead that other examples were deliberately hidden). Moreover, Ad Astra's proposed amended complaint pleads these claims in largely the same manner as its original complaint. (*See, e.g.,* ECF No. 107-4, ¶ 114 (stating that "Defendants'" predicate acts are ongoing and will be repeated)).

Defendants argue that Ad Astra's tortious interference claim fails because Ad Astra has not pleaded facts showing that Ad Astra breached any contracts with vendors. This characterization is inaccurate in that Ad Astra pleaded that it was required to use its best efforts to collect debts under its servicing agreements; it was only paid for its services if it collected the debts; and the influx of defendants' letters hampered Ad Astra's ability to carry out its job. (ECF No. 107-4 at ¶¶ 158-160.)

But, again, Ad Astra's tortious interference claim is virtually identical to the claim already pleaded. Defendants did not move to dismiss these claims when Ad Astra filed suit, even though they now seek to bar amendments that they argue contain substantially the same alleged defects. Any pleading deficiencies contained in the operative pleading do not present a compelling reason for the court to deny the motion to amend to add separate allegations. *See Hawkins v. Bd. of Cty. Commissioners of Coffey Cty., Kansas*, No. 17-2687-KHV-ADM, 2019 WL 5622417, at *4 (D.

Kan. Oct. 31, 2019) (reaching the same conclusion). For these reasons, the court finds defendants have not shown that the claims, as amended, are futile.

C. **Joinder Under Rule 20(a)(2)**

When a motion to amend seeks to add parties that are not indispensable, Rules 15 and 20 govern. *See Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 618 (4th Cir. 2001); *AKH Co., Inc. v. Universal Underwriters Ins. Co.*, No. 13-2003-JAR-KGG, 2018 WL 2008860, at *3 (D. Kan. Apr. 30, 2018). Rule 20(a)(2) provides that defendants may be joined if (1) the claims against them "arise out of the same transaction or occurrence, or series of transactions or occurrences;" and (2) there are questions of law and fact common to all defendants. There is not a generalized test for determining whether alleged facts constitute the same transaction or occurrence for the purpose of Rule 20. 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1653 (3d ed.). Rather, courts have found that the phrase is flexible, depending on the connection of the transactions or their logical relationship. *AKH Co.*, 2018 WL 2008860, at *5. "Language in a number of decisions suggests that the courts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court." *Sprint Commc'ns. Co. v. Theglobe. com, Inc.*, 233 F.R.D. 615, 617 (D. Kan. 2006) (quoting 7 WRIGHT & MILLER § 1653, *supra*). As with Rule 15, the court liberally construes Rule 20 "to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *AKH Co.*, 2018 WL 2008860, at *5; *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 724, (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.").

13

Ad Astra's motion to amend meets the criteria for permissive joinder, and defendants do not argue otherwise. Although Ad Astra alleges that each defendant had a different role in the operation, the core allegation is the same: Ad Astra alleges that all of the defendants—both current and proposed—are part of the same fraudulent credit repair scheme that damaged Ad Astra. Furthermore, the proposed amended complaint includes factual allegations sufficient to give the defendants notice as to each of the Progrexion entities' role in allegedly carrying out that integrated scheme. Therefore, the claims against the proposed defendants arise out of the same transactions or occurrences as the claims against the current defendants. In addition, questions of law and fact are common to all defendants in that many of the claims are the same and each defendant's role in the alleged scheme will be at issue. For these reasons, joinder is proper under Rule 20.

D. **Conclusion**

The court finds good cause to modify the scheduling order deadline to allow for Ad Astra's motion to amend. The court also finds that defendants have not established undue prejudice or futility. Moreover, the proposed amended complaint meets the requirements for permissive joinder. The court therefore grants Ad Astra's motion. Ad Astra shall file its First Amended Complaint (ECF No. 107-4) within two (2) business days from the date of this order and shall proceed expeditiously in effecting service on the newly named defendants.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Leave to Amend the Compliant to Join Parties (ECF No. 104) is granted.

**IT IS SO ORDERED.**

Dated December 26, 2019, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge