# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

AD ASTRA RECOVERY      )
SERVICES, INC.,      )
     )
     Plaintiff,      )
     )
     v.      )      Case No. 18-1145-JWB-ADM
     )
JOHN CLIFFORD HEATH, ESQ., *et al.*,      )
     )
     Defendants.      )

## MEMORANDUM AND ORDER

This matter comes before the court on Plaintiff's Motion to Compel Compliant Responses to Plaintiff's Second Requests for Production of Documents (ECF No. 117). Plaintiff Ad Astra Recovery Services, Inc. ("Ad Astra") seeks an order compelling certain defendants (collectively "Lexington Law") to serve supplemental responses and produce documents responsive to Ad Astra's Second Requests for Production of Documents ("RFPs"). Lexington Law opposes the motion on the grounds that Ad Astra's discovery requests seek irrelevant information that is not proportional to the needs of the case, and the requests are overly broad. For the reasons stated below, the motion is granted in part and denied in part.

## I.    BACKGROUND

Ad Astra is a debt collector and credit agency that alleges defendants "engaged in a fraudulent credit-repair scheme designed to bombard debt collectors with false credit dispute letters with the intention of deceiving debt collectors . . . and frustrating their efforts to collect legitimate debts." (Am. Compl. ¶ 3 (ECF No. 120).) Specifically, Ad Astra alleges that defendants used deceptive marketing techniques to solicit financially troubled consumers by offering services from a law firm in hopes that the consumers would sign up for their credit-repair services. (*Id.* at

¶ 5.)  According to Ad Astra, once consumers signed up, the law firm transmitted mass credit-dispute letters to creditors in the consumer-clients' names without ever disclosing that they were prepared and transmitted by the firm.  Ad Astra alleges this practice was designed to circumvent the Fair Credit Reporting Act and trigger Ad Astra to perform certain onerous statutory investigative requirements.  (*Id.* at ¶¶ 6-9.)  Ad Astra asserts mail fraud, wire fraud, and conspiracy claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1962(c) and (d).  Ad Astra also asserts Kansas common law claims for fraud and tortious interference with existing contractual relationships.  Ad Astra has named as defendants: (1) the law firm, John C. Heath, Attorney at Law, PLLC d/b/a Lexington Law; (2) certain attorneys with the firm: John Clifford Heath, Kevin Jones, Adam C. Fullman; (3) other related corporate entities that Ad Astra alleges directed and/or participated in the scheme: Progrexion Holdings, Inc.; Progrexion Teleservices, Inc.; PGX Holdings, Inc.; Progrexion ASG, Inc.; Progrexion Marketing, Inc.; Progrexion IP, Inc.; and (4) Jeffrey R. Johnson, CEO of the Progrexion entities.

On October 15, 2019, Ad Astra issued RFPs to Mr. Heath, Mr. Jones, Lexington Law, Progrexion Holdings, Inc., and Progrexion Teleservices, Inc. (collectively, "Lexington Law" for purposes of this order).  On November 20, 2019, Lexington Law responded and produced no documents.  Instead, it lodged various objections and/or stated that it was not in possession of responsive documents.  According to Ad Astra, after various meet-and-confer attempts, Lexington Law ultimately agreed to produce certain documents concerning five of the items at issue and agreed to research eight additional items.  (ECF No. 118, at 3.)  At the time Ad Astra filed its motion, Lexington Law had produced only two documents in response to the RFPs.  (*Id.*)

## II.    LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  FED. R. CIV. P. 26(b)(1).  In other words, considerations of both relevance and proportionality now expressly govern the scope of discovery.  FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment. Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (applying *Oppenheimer* after the 2015 amendment); *see also Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 469 (D.N.M. 2018) (analyzing the 2015 amendment and concluding that it did not change the scope of discovery but clarified it, and therefore *Oppenheimer* still applies).

When a responding party fails to make a disclosure or permit discovery, the discovering party may file a motion to compel.  FED. R. CIV. P. 37(a).  The party seeking discovery bears the initial burden to establish relevance, but it does not bear the burden to address all proportionality considerations.  *See Landry v. Swire Oilfield Servs.*, L.L.C., 323 F.R.D. 360 (D.N.M. 2018) (discussing the effect of the 2015 amendment on the party seeking discovery); *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003) (stating the moving party bears the initial burden to demonstrate relevance); *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) ("Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case."); FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment (noting that the amendment "does not place on the party seeking discovery the burden of

addressing all proportionality considerations" and that "the parties' responsibilities [on a discovery motion] would remain the same as they have been").

Relevance is often apparent on the face of the request. *See Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 652–53 (D. Kan. 2006). When the discovery sought appears relevant on its face, or the discovering party has established relevance, the party resisting discovery bears the burden to support its objections. *See Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014) (holding the party resisting discovery bears the burden to show why a discovery request is improper); *Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, No. 08-1250-MLB-KGG, 2012 WL 1080801, at *3 (D. Kan. Mar. 29, 2012) ("Once this low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request."). The party resisting discovery does not carry this burden by asserting "conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad." *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004). Rather, an objecting party "must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *Id.* at 670-71.

III.     RELEVANCE OF THE MATERIALS SOUGHT BY THE RFPs

Relevance is a threshold matter when considering whether to compel disclosure or discovery. *See In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 573 (D. Kan. 2009) (outlining the burdens on a motion to compel). Ad Astra acknowledges as much in its opening brief. (ECF No. 118, at 4 ("*When the discovery sought appears relevant*, the party resisting discovery has the burden . . . ." (emphasis supplied)).) But when the discovery sought does not appear relevant on its face, the party seeking discovery bears the burden to demonstrate the relevance of the requested

documents.  *See Cardenas v. Dorel Juvenile Grp., Inc.*, 230 F.R.D. 611, 616 (D. Kan. 2005).

Despite this, Ad Astra's memorandum in support of its motion to compel only briefly addresses

the relevance of the categories of documents it seeks in a two-page, bullet-point list.  (ECF No.

118, at 6-7.)  Some of the bullet points describe only the category of documents without explaining

how the documents are relevant—*e.g.*, "[c]ommunications among Defendants before and after the

lawsuit was commenced."  (*Id.*)

Lexington Law's response focuses on these deficiencies and argues the court should deny

Ad Astra's motion because Ad Astra has not met its burden to make the initial threshold showing

of relevance.  (ECF No. 135, at 3.)  Ad Astra did not file a reply brief.  By electing not to file a

reply brief responding to Lexington Law's argument on this point, Ad Astra has effectively ignored

these deficiencies and left the court with only the limited and/or non-existent explanation of

relevance articulated in Ad Astra's bullet-point list.  The court will not conduct an independent

review of five sets of RFPs[1] to attempt to extrapolate an explanation of relevance when Ad Astra

declined to do so on its own behalf.  The court will consider only those RFPs for which Ad Astra's

bullet-point list articulates some explanation of relevance.  Those include the following categories:

1.) Mr. Jones' employment file and communications with defendants concerning the same (Jones, Heath, PGXH, and PGXTS RFP Nos. 1, 2, and 6; PGXTS RFP No. 16, 31; Jones RFP No. 12; LL RFP No. 2, 3, and 7)[2]

2.) Mr. Heath's time records at Lexington Law (PGXTS and PGXH RFP No. 12; PGXTS RFP No. 31; LL RFP No. 11, 12; Heath RFP No. 10)

---

[1] The RFPs collectively span over 100 pages.

[2] For clarity, the court uses the same abbreviations Ad Astra uses in its opening brief, referring to the individual attorneys by their last name, referring to John C. Heath d/b/a Lexington Law as "LL," referring to Progrexion Holdings as "PGXH," and referring to Progrexion Teleservices as "PGXT."

3.) Documents reflecting changes to Lexington Law's members/owners (Jones RFP No. 7; LL RFP Nos. 8-10; PGXTS and PGXH RFP Nos. 7-9; Heath RFP Nos. 7-9)

4.) Documents reflecting how Mr. Heath acquired the Victor Lawrence firm (LL RFP No. 13; PGXTS and PGXH RFP No. 14; Heath RFP No. 12)

5.) Billing records of non-credit repair matters that Lexington Law handled (LL RFP Nos. 1, 17, 19, 32; Heath No. 14)

6.) Copies of electronic dispute correspondence sent to credit reporting bureaus (PGXTS RFP No. 19; LL RFP No. 20)

7.) Complaints, consent orders, and documents filed in state regulatory actions against Lexington Law (PGXTS RFP Nos. 20, 22; LL RFP Nos. 22, 23; PGHX Nos. 20, 22; Heath RFP No. 16)

8.) Documents reflecting which creditors Lexington Law did not send dispute letters to (PGXTS RFP No. 28; LL RFP No. 29; PGXH RFP No. 28)

For Categories 1-6, Ad Astra's statements are enough to meet its minimal burden to demonstrate some measure of relevance.

Category 7 seeks complaints, consent orders and documents filed in state regulatory actions against Lexington Law, including North Carolina and Oregon. Ad Astra states that it seeks these documents because it appears that Lexington Law represented to North Carolina disciplinary administrators that it was not engaged in the practice of law but ceased doing business in North Carolina after "negative findings" made against it. Lexington Law argues that state findings are unrelated to any issues in this case. The court cannot find this information is relevant without Ad Astra providing a more detailed explanation to connect this information to a claim or defense in this case. Ad Astra has not provided any such explanation.

Category 8 seeks documents identifying creditors to which Lexington Law does not send dispute letters. Ad Astra explains that Lexington Law attorneys testified that they do not send dispute letters to all creditors, but the attorneys could not identify the creditors or elaborate about why Lexington Law did not send letters to these entities. Lexington Law argues this explanation

is insufficient to establish relevance. Again, the court cannot find this information is relevant without Ad Astra providing a more detailed explanation connecting this information to a claim or defense in this case. Ad Astra has not provided any such explanation.

Accordingly, the court denies Ad Astra's motion as to Categories 7 and 8, and further denies the motion as to the other RFPs at issue for which Ad Astra has not set forth any explanation of relevance. That is not to say that the documents encompassed within these categories are not relevant. The court finds only that, based on the record before the court, it cannot determine relevance based on Ad Astra's limited or non-existent explanation of relevance.[3]

## IV. LEXINGTON LAW'S OBJECTIONS

### A. Boilerplate Initial Objections

Before turning to the merits of Lexington Law's objections, the court first addresses Ad Astra's request that the court strike certain boilerplate burden and proportionality objections included in Lexington Law's initial responses to the RFPs.[4] A party objecting to an RFP must "state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). Lexington Law asserts the same verbatim response to multiple RFPs: "Defendant objects to the request in so much as it is overly broad, unduly burdensome and harassing in light of [the] same and not reasonably related to any claim or defense in the action and not reasonably calculated to lead to the discovery of admissible evidence and not limited in time and goes beyond the temporal scope set forth by the Court." (*See, e.g.,* ECF No. 118-8, at 5.)

---

[3] This ruling does not apply to the categories of documents Lexington Law previously agreed to produce, addressed further in the Conclusion section.

[4] Specifically, Ad Astra cites Lexington Law Response Nos. 2-23, 25-31; Progrexion Holdings Response Nos. 20, 22, 26, 27, 29-34; Progrexion Teleservices Response Nos. 10, 11, 17, 22, 26, 27, 29, 30; Heath Response Nos. 1-19.

A number of judges have concluded that initial general, boilerplate objections are tantamount to not making an objection at all and constitute a waiver of the objections. *See, e.g, Siser N. Am., Inc. v. Herika G. Inc.*, 325 F.R.D. 200, 209–10 (E.D. Mich. 2018) ("Boilerplate objections are legally meaningless and amount to a waiver of an objection.")*; Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 185–86 (N.D. Iowa 2017) (addressing Rule 34's specificity requirement and reaching the same conclusion as the *Siser* court).

But Ad Astra does not cite Rule 34's specificity requirement or any of the case law finding waiver based on boilerplate objections. Rather, Ad Astra cites a case from this district for its proposition than "objections that discovery is unduly burdensome must contain a factual basis for the claim, and the objecting party must usually provide an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request." *Shoemake v. McCormick, Summers & Talarico II, LLC*, No. 10-2514-RDR, 2011 WL 5553652, at *3 (D. Kan. Nov. 15, 2011). That statement does not refer to objections initially asserted in response to an RFP. Rather, in that case, the court is referring to an objecting party's burden to support its objections in response to a motion to compel.

The undersigned generally finds Lexington Law's objections improper and not compliant with Rule 34. However, Ad Astra's citation to inapposite legal authority confuses the issue and was insufficient to put Lexington Law on notice of the relief requested. For these reasons, the court will not deem Lexington Law's objections waived on this record.

## B.    Objections Relied on in Response to the Motion to Compel

Lexington Law bears the burden to support its objections as to the six categories of RFPs (set forth in Section II) that appear relevant. It asserts that the RFPs seek information that is not relevant or proportional to the needs of the case and that the RFPs are overly broad because they

lack a temporal scope. In certain instances, Lexington Law refers to "disproportionately burdensome discovery," which the court understands to be some component of a generalized proportionality objection.

Although Lexington Law generally addresses the categories of documents set forth by Ad Astra, Lexington Law otherwise fails to rely on any specific discovery objection as to any specific RFP. Instead, Lexington Law generally references only a handful of RFPs by way of example—even then, referring to the RFP not by number but as the "document request" or "[a]nother request in this category." (*See, e.g.,* ECF No. 135, at 2 n.2; 5 n.5.) The omission is significant because, when ruling on a motion to compel, the court considers only those objections initially asserted in response to the discovery request and relied upon in response to the motion. *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1256 (D. Kan. 2008). Objections not initially raised in response to a discovery request are generally deemed waived absent a showing of good cause. *Id.*; *see also Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473, 22 Fed. R. Serv. 3d 703 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection.").

Because Lexington Law did not correlate its objections to particular RFPs, the court has no way to determine the extent to which Lexington Law even preserved these objections as to specific discovery requests. *See also Sonnino*, 221 F.R.D. at 670 (stating that the objecting party must show "how *each* request for production . . . is objectionable (emphasis added)). The court is not eager to rely on technical waiver arguments. However, the way Lexington Law briefed this motion has left the court without any meaningful way to address the bulk of its objections. The court therefore summarily overrules Lexington Law's objections as unsupported with three limited exceptions: (1) where Lexington Law has relied on an objection as to the six categories of

documents set forth in Section II, the court will address the objection because it can determine

from Ad Astra's brief what RFPs are at issue, (2) apparent proportionality considerations,[5] and (3)

Lexington Law's overbreadth objection concerning the temporal scope, which is clear and so the

court will also address this issue.

### 1. Categories of Documents

Category 1 seeks Mr. Jones' employment file and communications with defendants

concerning the same.  Ad Astra explains that Mr. Jones was terminated because of unexcused

absences and poor performance, while Mr. Jones maintains that he acted as a whistle blower and

generally denies work-performance issues and absences.  Lexington Law contends that absent a

negotiated ESI protocol, RFPs seeking "communications" are "disproportionately burdensome,"

particularly when the materials sought are irrelevant or of marginal benefit.  (ECF No. 135, at 6.)

Lexington Law does not elaborate any further about why these materials are irrelevant or why

production would be unduly burdensome absent an ESI protocol.  The court therefore overrules

defendants' objections to this category of documents as unsupported.

Category 2 seeks Mr. Heath's time records at Lexington Law.  Lexington Law states that

the defendants "are not aware of any time records that would purport to show the amount of time

Health spends in the office versus working remotely, nor would any such records be relevant to

---

[5] Aside from addressing proportionality as a discovery objection, the court has an independent obligation to *sua sponte* consider the issue of proportionality.  *See* Fed. R. Civ. P. 26(b)(2)(C) (requiring that "[o]n motion or *on its own, the court must limit* the frequency or extent of discovery" if the court determines that "the proposed discovery is outside the scope permitted by Rule 26(b)(1)" (emphasis added)); FED. R. CIV. P. 26 advisory committee's notes to the 2015 amendment (stating that the court has a "responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes"); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 523 (D. Md. 2010) ("Fed. R. Civ. P. 26(b)(2)(C) cautions that all permissible discovery must be measured against the yardstick of proportionality.").

Plaintiff's claims in this case, which relate to correspondence sent by Lexington Law to Ad Astra and the relationship between the Progrexion entities and Lexington Law." (ECF No. 135, at 4.) To the extent Lexington Law is attempting to rely on a relevance objection, it is overruled. Lexington Law's blanket statement that the material is not relevant is insufficient to support a relevance objection. Therefore, the court overrules Lexington Law's objections to the RFPs encompassed in Category 2.

Category 3 seeks documents reflecting changes to Lexington Law's members/owners, and Category 4 seeks documents reflecting how Mr. Heath acquired the Victor Lawrence law firm. Because this case involves a RICO conspiracy claim and factual allegations concerning complex business structures, the information appears relevant. But, again, Lexington Law makes only blanket statement that these documents are not relevant to Ad Astra's claims without elaborating. This is insufficient to support its relevance objection. The court therefore overrules Lexington Law's objections to the RFPs encompassed in Categories 3 and 4.

Category 5 seeks billing records of non-credit repair matters handled by Lexington Law so that Ad Astra may ascertain what percentage of its income is derived from those matters compared with credit-repair matters. Lexington Law argues this fact is not relevant to the question of liability or damages, and it argues that billing records would contain "highly privileged and confidential information." (*Id.*) The court overrules Lexington Law's relevance objection. An ongoing theme of both the case and prior discovery disputes concerns whether Lexington Law operates as law firm or a merely a component of the credit-repair business. *See, e.g., Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB, 2019 WL 1753958, at *2 (D. Kan. Apr. 19, 2019) (addressing a dispute about whether Lexington Law's clients' communications were made to obtain legal

advice). To that end, the court finds the material is relevant, and Lexington Law's objections to the RFPs encompassed in Category 5 are overruled.

Category 6 seeks copies of electronic dispute correspondence sent to credit reporting bureaus ("CRBs"). Ad Astra explains that the parties dispute whether Lexington Law disclosed to the CRBs that Lexington Law was the entity generating the material. Lexington Law states that the electronic correspondence is not a letter but rather is computer code sent to the CRB's computers, so it has no "copies" of the correspondence. Because Lexington Law is not relying on any objection in response to the motion to compel, the court overrules any objections to the RFPs encompassed in Category 6. It is not entirely clear whether Lexington Law maintains that "computer code" and "computer language" is not responsive to the RFPs or whether Lexington Law is relying on an overly rigid and incorrect definition of "document" (or "copies"). Regardless, the court reminds Lexington Law that Rule 34 broadly defines "documents" and "electronically stored information" to include all forms of recorded information. *See* FED. R. CIV. P. 34(a)(1)(A) (describing categories of documents, including "any other data or data compilations—stored in any medium from which information can be obtained either directly or . . . after translation"); *see also Anderson Living Tr. v. WPX Energy Prod., LLC*, 298 F.R.D. 514, 521 (D.N.M. 2014) (outlining the history of Rule 34 and noting that "documents" is "the catchall term for virtually all discoverable material"). To the extent Lexington Law has possession, custody, or control of responsive documents, it must produce them.

### 2. Temporal Scope

Lexington Law asserts an overbreadth objection to multiple RFPs, arguing that they are overly broad because they lack any temporal limitation. Lexington Law correctly notes that other judges in this district have often found that RFPs lacking a temporal limitation are objectionable

on their face. *See, e.g., Walters v. Dollar Gen. Corp.*, No. 19-CV-1010-EFM, 2019 WL 3934804, at \*2 (D. Kan. Aug. 20, 2019); *N.U. v. Wal-Mart Stores, Inc.*, No. 15-4885-KHV, 2016 WL 3654759, at \*4 (D. Kan. July 8, 2016). But rather than producing documents from what Lexington Law believed was an appropriate time period, Lexington Law appears to have relied on the objection to simply decline any production. Lexington Law has a duty to respond to respond to the portion of the RFP that is not objectionable, and Ad Astra has a duty to serve proportional discovery requests. *See* FED. R. CIV. P. 34(b)(2)(C) (stating that an objection to part of an RFP must specify the part that is objectionable and respond to the remainder of the RFP); Fed. R. Civ. P. 26(g)(1)(B)(iii) (stating that by signing a discovery request, the signer certifies that that the request "is neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action"). Neither side met its discovery obligations under the Federal Rules.

And neither side addresses temporal scope as it pertains to any specific RFPs. The court previously modified Ad Astra's First RFPs to encompass a period of May 21, 2013, to the present. The court did so based largely on RICO's four-year statute of limitations, and allowed discovery into the five-year time period before Ad Astra filed this case. Ad Astra correctly notes that the undersigned stated the court would modify the temporal scope if presented with reason to do so. But Ad Astra's motion does not provide an adequate reason to modify that temporal scope.

Ad Astra argues that, at the time the court limited the temporal scope, Ad Astra was unaware that Lexington Law had been sending letters in consumers' names beginning in 2010, which was the same year defendants received substantial investment funds from a related corporation, H.I.G. Capital. Ad Astra also states that it was unaware that Mr. Heath became the lead attorney working with the Progrexion defendants in 2004. According to Ad Astra, "[t]hese

facts justify production." (ECF No. 118.) The problem is that many of these facts appear to have little to do with certain RFPs. Moreover, Ad Astra has not suggested an appropriate temporal scope, instead making the conclusory assertion that May 21, 2013, is not an appropriate starting point. In the absence of more specific arguments, the court sustains in part Lexington Law's overbreadth objection and limits the temporal scope to encompass the period of May 21, 2013, to the present. Although the court might have been willing to modify the temporal scope as to targeted discovery, Ad Astra's general explanation does not provide the court with enough information to ensure this discovery is proportional.

## V. OTHER DEFICIENCIES WITH LEXINGTON LAW'S INITIAL RESPONSES

Ad Astra raise the "general issue" that many of Lexington Law's RFP responses do not "state whether responsive materials are being withheld on the basis of the objection," as FED. R. CIV. P. 34(b)(2)(C) requires. The purpose of this provision of Rule 34 is to "end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections." FED. R. CIV. P. 34(b), advisory committee's note to the 2015 amendment. Lexington Law's response to the motion to compel does not address this deficiency or in any way attempt to explain why its responses comply with the Federal Rules. They do not. Accordingly, the court directs Lexington Law to serve supplemental RFPs that comply with Rule 34(b)(2)(C) by specifying whether Lexington Law is withholding responsive materials based on an objection.

Other responses are evasive and deficient. A response that "[t]his Defendant is not in possession of responsive documents" overlooks a responding party's obligation to produce all documents within the responding party's "possession, custody, or control" and leaves Ad Astra to

guess as to whether responsive documents even exist. (ECF No. 118-8, at 8.) FED. R. CIV. P. 34(a)(1) (setting forth the standard for responding to an RFP). The concept of "control" goes beyond actual physical possession and extends to documents the party has the legal right to obtain; in some circumstances, it can even extend to documents the party has the practical ability to obtain. 8B Charles Alan Wright, et al., *Federal Practice and Procedure* § 2177 (3d ed). The undersigned reminds counsel of their professional obligations to know the applicable legal standards, particularly as they sign discovery papers that stake out their positions.

To the extent Lexington Law has withheld responsive documents based on a misapplication of Rule 34(a)(1), the court orders Lexington Law to make a supplemental production to the full extent required by the Federal Rules. Lexington Law must also amend responses to the RFPs to make clear whether the responding party has possession, custody, or control of responsive documents and/or whether responsive documents exist. If a responding party does not have possession, custody, or control of responsive documents but knows which co-defendant maintains these documents, the response shall identify that party. These discovery responses must be verified with a signature by the responding defendant and by defense counsel. Counsel's signature will certify that the attorney has made a reasonable effort to assure that the clients have provided all responsive information and documents that are available to them. *See Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1305 (11th Cir. 2003) (citing Fed. R. Civ. P. 26(g), advisory committee's note to the 1983 amendment).

## VI.    CONCLUSION

Ad Astra's motion to compel is granted as to the RFPs encompassed in Categories 1-6, as set forth in Section II. By **February 6, 2020**, Lexington Law shall fully respond to the RFPs. This production must also include any documents Lexington Law may have withheld based on a

misapplication of Rule 34(a)(1), as outlined above, and Lexington Law shall also produce all other categories of documents it previously agreed to produce during its meet-and-confer sessions with Ad Astra. If Lexington Law believes that responsive documents are privileged or constitute attorney work product, it may temporarily withhold them via a privilege log that must be served contemporaneous with its supplemental production. Also by **February 6**, Lexington Law must serve supplemental responses that comply with the directives set forth in Section V.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Compliant Responses to Plaintiff's Second Requests for Production of Documents (ECF No. 117) is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated January 23, 2020, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
