**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| AD ASTRA RECOVERY SERVICES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 18-1145-JWB-ADM |
| JOHN CLIFFORD HEATH, ESQ., *et al.*, | ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

This matter comes before the court on Plaintiff's Motion for Spoliation Sanctions (ECF No. 90). Plaintiff Ad Astra Recovery Services, Inc. ("Ad Astra") seeks an adverse-inference jury instruction, monetary sanctions, and attorneys' fees because it contends that Defendant Lexington Law Firm failed to preserve credit dispute letters that the defendant law firm sent to the plaintiff debt collector on behalf of the law firm's clients. According to Ad Astra, these "fraudulent consumer dispute letters . . . form [] the basis of this case" because Lexington Law's "entire enterprise is based on inundating credit furnishers, like [Ad Astra], with these fraudulent letters in the name of the consumer" rather than Lexington Law itself. (ECF No. 91, at 2, 5-6.) Ad Astra contends that the law firm's scheme of sending letters ostensibly from consumers, rather than the law firm itself, burdened Ad Astra with more onerous duties under the Fair Credit Reporting Act than if Ad Astra had been able to tell that the letters came from a Credit Repair Organization. (*Id.*) Ad Astra therefore contends that Lexington Law's destruction of these letters "prevent[s] Plaintiffs from establishing that Defendants prepared and sent the letters." (ECF No. 91, at 2.)

Defendants oppose the motion on essentially two grounds. First, they argue that Ad Astra is seeking documents that do not exist because Lexington Law's normal business practice is to *not*

retain copies of the credit dispute letters it sends. Second, Lexington Law argues that Ad Astra was not prejudiced by its non-production of these letters because Ad Astra should have copies of those letters in its own files and should be able to identify and find them based on other information Lexington Law produced in discovery.

As explained below, Ad Astra's motion is granted in part and denied in part. The court finds that Ad Astra is entitled to spoliation sanctions because Lexington Law allowed the spoliation of credit dispute letters after this litigation began, and Ad Astra has suffered prejudice as a result. However, the court will not order an adverse-inference jury instruction because Ad Astra has not established that Lexington Law acted in bad faith. The court will therefore impose a sanction that is designed to ameliorate the prejudice to Ad Astra—specifically, the court will deem it established for purposes of this litigation that Lexington Law had a duty to preserve credit dispute letters that it sent to Ad Astra on or after May 21, 2018; that Lexington Law did not comply with that duty; and that certain credit dispute letters in Ad Astra's files thereafter (to be determined, as discussed below) were generated by and sent from Lexington Law. The court denies Ad Astra's request for monetary sanctions because Ad Astra has not articulated any way in which monetary sanctions are tailored to cure the prejudice, but the court denies that aspect of the motion without prejudice. The court also denies Ad Astra's request for attorneys' fees in connection with the current motion because the court is granting Ad Astra only a portion of the relief it seeks.

## I.    BACKGROUND

Ad Astra is a debt collector and credit agency that alleges defendants "engaged in a fraudulent credit-repair scheme designed to bombard debt collectors with false credit dispute letters with the intention of deceiving debt collectors . . . and frustrating their efforts to collect legitimate debts." (Am. Compl. ¶ 3 (ECF No. 120).) Specifically, Ad Astra alleges that defendants

used deceptive marketing techniques to solicit financially troubled consumers by offering services from a law firm in hopes that the consumers would sign up for their credit-repair services. (*Id.* at ¶ 5.) According to Ad Astra, once consumers signed up, the law firm transmitted mass credit-dispute letters to creditors in the consumer-clients' names without ever disclosing that the firm prepared and transmitted them. Ad Astra alleges this practice was designed to circumvent the Fair Credit Reporting Act and cause Ad Astra to perform certain onerous statutory investigative requirements. (*Id.* at ¶¶ 6-9.) Ad Astra asserts mail fraud, wire fraud, and conspiracy claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1962(c) and (d). Ad Astra also asserts Kansas common law claims for fraud and tortious interference with existing contractual relationships. Ad Astra has named as defendants: (1) the law firm John C. Heath, Attorney at Law, PLLC d/b/a Lexington Law ("Lexington Law"); (2) certain attorneys with the firm: John Clifford Heath, Kevin Jones, Adam C. Fullman; (3) other related corporate entities that Ad Astra alleges directed and/or participated in the scheme: Progrexion Holdings, Inc.; Progrexion Teleservices, Inc.; PGX Holdings, Inc.; Progrexion ASG, Inc.; Progrexion Marketing, Inc.; Progrexion IP, Inc.; and (4) Jeffrey R. Johnson, CEO of the Progrexion entities.[1]

---

[1] Ad Astra moved for spoliation sanctions against "defendants" without distinguishing among them. (ECF No. 90, at 1.) Defendants likewise submitted their briefs in response to this motion without distinguishing amongst themselves. (ECF No. 95, at 1 n.1 ("For ease of reference . . . , we refer collectively to 'Defendants,' . . . .").) The parties' briefing on this motion was largely completed in December of 2019, with Ad Astra submitting its final brief on January 2, 2020. (ECF Nos. 95, 97, 112, 129.) Just days before that, the court granted Ad Astra leave to add PGX Holdings, Progrexion ASG, Progrexion Marketing, Progrexion IP, and Mr. Johnson as defendants. (ECF No. 119.) All defendants are allegedly interrelated and are represented by the same attorneys; no party has sought to distinguish among the defendants with respect to the relief sought herein. Because the parties treat the defendants collectively and no party has advanced any meaningful distinction between them for purposes of the relief sought herein, the court's current ruling will apply to all defendants. Any newly added defendant that feels aggrieved by this can file a motion to reconsider.

On October 8, 2018, Ad Astra served its First Requests for Production ("RFPs") on Lexington Law. RFP No. 7 seeks: "All dispute letters sent by, or caused to be sent by, Lexington Law Firm, the Defendants, and/or any other individuals or entities concerning the content of the template dispute letters." (ECF No. 91-2, at 5.) The court subsequently narrowed the scope of the requests to letters sent to Ad Astra from May 21, 2013, to the present. (ECF No. 41.) Lexington Law produced few responsive documents. It maintains that it does not retain copies of the dispute letters once they are mailed. Defendants state that the law firm did not generate "copies" of the letters in the ordinary course of business and that Lexington Law effectively lost possession of the letters once it sent them. (ECF No. 95, at 2.)

Ad Astra argues that deposition testimony casts doubt on this proposition. Ad Astra relies on the fact that Cody Johnson, Lexington Law's corporate representative, testified that Lexington Law had a document-retention policy spanning seven years. (ECF No. 91-4, at 3.) However, Mr. Johnson also testified that the firm did not retain copies of the letters but that it was able to essentially re-create the letters based on the consumer-clients' stored data: "We can produce the form letter, but not the actual letter that has the signature that was mailed. We don't take copies of those." (ECF No. 95-1, at 4-5.) Likewise, a Lexington Law paralegal testified that the firm did not retain copies of the letters once they were mailed. (ECF No. 95-1, at 6.)

Ad Astra also points to the deposition testimony of Lexington Law attorneys who were asked whether Lexington Law kept copies of the letters sent. Defendant Adam Fullman responded, "Yeah, I'm sure copies are kept. Yeah, copies are kept." (ECF No. 91-4, at 4-5.) Defendant John C. Heath responded, "That would need to be answered by a Lexington Law representative. We do keep copies of items—from personal experience, we do keep copies of items that were sent on behalf of the consumer in their case file." (*Id.* at 8-9.) Mr. Heath further testified that, from

experience, clients can access their letters and case file. (*Id.* at 10.) Defendant Kevin Jones testified that he did not know whether the firm's software system stored copies of the letters the firm sent to creditors but that there would be a record of a challenge with a credit bureau. (*Id.* at 12.) Ad Astra also points out that Lexington Law's client engagement letters state that clients can request documents from their files for six months after termination of the relationship.

According to Ad Astra, the dispute letters are important because they would show that defendants, not consumers, drafted and sent the letters and they would substantiate the quantity of letters and their contents. Ad Astra also contends that each letter is a predicate act of mail fraud and the absence of the letters hampers Ad Astra's ability to prove the scope and the breadth of the alleged fraud and establish defendants' fraudulent intent. And although Lexington Law notes that the very documents Ad Astra seeks were sent to Ad Astra, Ad Astra explains that the letters obscured the actual drafter—in other words, Ad Astra would have no way of knowing whether the letters came from Lexington Law because they were not sent on law firm letterhead and under a lawyer's signature.

After the parties completed their briefing on the current motion, Ad Astra produced additional documents that show it retains and can access copies of the dispute letters it received. According to defendants, Ad Astra produced 50 consumer files of Lexington Law clients, and these files contain the very dispute letters that Ad Astra argues would be difficult to identify. Moreover, defendants deposed Ad Astra President Tracy Bengston, who testified as Ad Astra's corporate representative. Ms. Bengston testified that it was customary for Ad Astra to scan and retain electronic copies of customer letters. (ECF No. 110-3, at 3-4.) She further testified that those records went back to at least 2016 and that, with enough identifying information, Ad Astra could retrieve the letters. (*Id.* at 4-5.)

Ad Astra contends that Lexington Law destroyed relevant evidence because the letters existed at one time and now do not. Ad Astra seeks an unspecified amount of monetary sanctions and the following adverse-inference jury instruction as to all defendants:

> Plaintiffs have shown that the Defendants destroyed relevant evidence. This is known as the "spoliation of evidence." Spoliation is the destruction of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. To demonstrate that spoliation occurred, several elements must be proven by a preponderance of the evidence:
>
> *First*, that relevant evidence was destroyed after the duty to preserve arose.
>
> *Second*, that the evidence lost would have been favorable to the Plaintiff.
>
> As to the first element I instruct you, as a matter of law, that Defendants failed to preserve relevant evidence after its duty to preserve arose. This failure resulted from Defendants' failure to preserve more than 594,117 letters sent by the Defendants to Plaintiff. I direct you that I have already found as a matter of law that this lost evidence is relevant to the issues in this case.
>
> As to the second element, you may presume, if you so choose, that such lost evidence would have been favorable to the Plaintiffs. In deciding whether to adopt this presumption, you may take into account the egregiousness of the defendants' conduct in failing to preserve the evidence.
>
> If you decline to presume that the lost evidence would have been favorable to the Plaintiff, then your consideration of the lost evidence is at an end, and you will not draw any inference arising from the lost evidence.
>
> However, if you decide to presume that the lost evidence would have been favorable to the Plaintiff, you must next decide whether Defendants have rebutted that presumption. If you determine that Defendants rebutted the presumption that the lost evidence was favorable to the Plaintiff, you will not draw any inference arising from the lost evidence against Defendants. If, on the other hand, you determine that Defendants have not rebutted the presumption that the lost evidence is favorable to the Plaintiff, you may draw an inference against Defendants and in favor of Plaintiff – namely that the lost evidence would have been favorable to the Plaintiff.

(ECF No. 91, at 7.)

## II. LEGAL STANDARD

"As a general rule, spoliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Equal Employment Opportunity Comm'n v. JetStream Ground Servs., Inc.*, 878 F.3d 960, 964 (10th Cir. 2017) (internal quotations omitted). Generally, if an aggrieved party seeks an adverse-inference jury instruction as a spoliation sanction, the court must also find that the responsible party acted in bad faith. *Id.* at 965 (recognizing "tension in precedents of this court" but finding more recent authority requiring bad faith to be on point and distinguishing an earlier case that did not require a finding of bad faith). "Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997). "An adverse inference is a powerful sanction as it brands one party as a bad actor and necessarily opens the door to a certain degree of speculation by the jury, which is admonished that it may infer the presence of damaging information[.]" *Henning v. Union Pac. RR. Co.*, 530 F.3d 1206, 1219–20 (10th Cir. 2008) (internal quotations omitted)).

## III. LEXINGTON LAW'S DUTY TO PRESERVE

The court may sanction a party for failing to preserve evidence only if the party had a duty to preserve it. *See Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007). A party has a duty to preserve when "it knew, or should have known, that litigation was imminent." *Id.*; *see also Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011) (noting the majority rule is not whether litigation is imminent, but rather whether it is reasonably

foreseeable).[2]  This analysis generally implicates considering both (1) the event triggering the duty to preserve and (2) the scope of that duty.  *See Marten Transp., Ltd. v. Plattform Advert., Inc.*, No. 14-CV-02464-JWL-TJJ, 2016 WL 492743, at *5 (D. Kan. Feb. 8, 2016) (stating the boundaries of the duty to preserve involve identifying when the duty arose and what evidence must be preserved); *see also Al Otro Lado, Inc. v. Nielsen*, 328 F.R.D. 408, 416–17 (S.D. Cal. 2018) (defining the scope of a duty to preserve as the same as the scope of discovery under Fed. R. Civ. P. 26(b)(1) and noting that preservation is evaluated based on a standard of reasonableness).

Ad Astra identifies three separate pre-litigation triggering events that it contends made Lexington Law "aware of the duty to preserve."  (ECF No. 91, at 4.)  First, it contends that Lexington Law's duty to preserve arose on July 14, 2017, when it was sued in the Northern District of Texas for similar conduct as alleged in this action.  (ECF No. 91-5.)  But Ad Astra is not a party to that case.  Instead, another debt collector, the CBE Group, on behalf of a representative class, alleges that Lexington Law drafted dispute letters without the consumers' specific knowledge or consent.  (*Id.* at 3.)  Ad Astra has not set forth any argument why Lexington Law's duty to preserve from the Texas lawsuit would extend to the letters Lexington Law sent to Ad Astra.  In fact, Ad Astra previously took a contrary position by arguing that the Texas lawsuit and this lawsuit "have substantially different claims and parties," that this lawsuit is broader and more complex, and that any overlap is insubstantial.  (ECF No. 28, at 8.)  Clearly, the Texas lawsuit triggered Lexington Law's duty to preserve documents relevant to the Texas litigation.  However, Ad Astra has not correlated the scope of Lexington Law's preservation duties in the Texas lawsuit to include the dispute letters Lexington Law sent to Ad Astra.  *See Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269

---

[2] The court would reach the same conclusion regardless of which standard applies.

F.R.D. 497, 526 (D. Md. 2010) (noting that the duty to preserve relevant documents is owed to the court in its role in the "truth-finding process," not to the party's adversary). Therefore, Ad Astra has not shown that any preservation duties in the Texas lawsuit could form the basis for spoliation sanctions here.

Ad Astra also argues that defendants were put on notice "of a pending dispute" on September 6, 2017, when Ad Astra's then-CEO met with Mr. Heath of Lexington Law. (ECF No. 91, at 4.) According to Ad Astra, its CEO discussed receiving the letters and "attempted to open a dialogue about ways to mitigate Ad Astra's damages." (*Id.*) A party's duty to preserve is triggered when it has notice the documents are relevant to litigation or when a party knows or should have known that the evidence may be relevant to future litigation. *See, e.g., Micron Tech*, 645 F.3d at 1320 (discussing when litigation is reasonably foreseeable and describing it as a "flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry"). Here, Ad Astra's vague description of its CEO's talks with Mr. Heath do not state that its CEO sufficiently raised the prospect of future litigation, and the court will not infer that his comments were sufficient to put Ad Astra on notice of impending litigation.

Ad Astra also briefly argues that Messrs. Jones and Heath had ethical duties to their clients to preserve documents according to Utah's rules of professional conduct. Regardless of whether that is true, Ad Astra presents no authority to support its suggestion that the lawyers' ethical obligations can serve as the basis for spoliation sanctions levied against the law firm in separate litigation—particularly given the clarity of case law that the duty to preserve is triggered by litigation or reasonably foreseeable or imminent litigation, not state professional conduct rules.

That leaves the triggering date for the duty to preserve as May 21, 2018, which is the date Ad Astra filed this lawsuit.[3]  On this record, this is the earliest date on which the court could find that Lexington Law had a duty to preserve potentially relevant documents, including the letters. The court must next determine whether Lexington Law upheld that duty since May 21, 2018.

Ad Astra urges the court to find that Lexington Law destroyed all responsive documents (including both those that pre-date and those that post-date the preservation date of May 21, 2018) because, according to Ad Astra, Lexington Law keeps copies of all of those credit dispute letters. In support of this argument, Ad Astra relies on selected testimony from defendants' witnesses. The court has carefully reviewed the relevant deposition testimony and finds that the record does not fully support Ad Astra's argument.  Mr. Fullman testified that copies are kept; Mr. Jones testified that the firm's software system would keep records of any challenges with credit bureaus; and Mr. Heath testified that copies were kept in consumers' case files and that clients can access their case file.  But Mr. Heath further said that this question "would need to be answered by a Lexington Law representative."  Lexington Law's corporate representative testified that the firm did not retain copies of the letters but could recreate them based on information in the client file— i.e., using templates and data showing what debts Lexington Law disputed.

Among all of the deposition testimony submitted, the court finds the testimony of Lexington Law's corporate representative to be the most persuasive.  For one, Ad Astra relies on cursory soundbites of deposition testimony from the defendants' other witnesses who did not seem to have a deep knowledge of the firm's practice in maintaining these documents.  In contrast, the corporate representative seemed to be knowledgeable, and his testimony was fulsome and

_____

[3] Ad Astra states this case was commenced on May 17, 2018.  This is a misstatement.

unequivocal. Indeed, Lexington Law was obliged to designate this individual to testify about information known or readily available to the organization, including preparing him to testify on this subject matter. *See* 8A CHARLES ALAN WRIGHT, ET AL., § 2103 (3d ed.). Therefore, the corporate representative was responsible for being familiar with the firm's practices and his testimony explains Lexington Law's practice in such a way that it synthesizes any arguable incongruity amongst the other witnesses' testimony—that is, the firm did not retain copies of the letters *per se* but could recreate them using templates based on data in the client file. This explanation is also consistent with positions advanced on prior discovery disputes. *See, e.g., Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB, 2019 WL 1753958, at *3 (D. Kan. Apr. 19, 2019) (finding the record suggested an automated process by which Lexington Law generated dispute letters).

Accordingly, the record shows that Lexington Law's routine business practice was to create and mail credit dispute letters but not keep copies of them. Lexington Law therefore did not run afoul of its preservation duties by not keeping copies of credit dispute letters that it sent to Ad Astra before Ad Astra filed this lawsuit on May 21, 2018. However, beginning that date, Lexington Law had a duty to suspend its routine document retention/destruction policies and implement a litigation hold to preserve relevant documents. *See F.D.I.C. v. McCaffree*, 289 F.R.D. 331, 336–37 (D. Kan. 2012) (discussing the duty to preserve). That apparently did not happen here because Lexington Law admits that it did not keep copies of those letters. Lexington Law's argument that Ad Astra "seeks letters that never existed" because Lexington Law mailed the original letters and did not retain copies is perplexing. (ECF No. 95, at 4.) That is the crux of spoliation. Lexington Law essentially admits that it had some form of possession, custody, or control over the letters. It created them and caused them to be mailed. And it did not preserve

copies of them. These letters were highly relevant to this litigation. Indeed, they form the very basis for Ad Astra's claims.

In sum, the record establishes that Lexington Law had a duty to preserve copies of credit dispute letters that it sent to Ad Astra on or after May 21, 2018, and that Lexington Law did not comply with that duty.

## IV. PREJUDICE TO AD ASTRA

Ascertaining the prejudice to Ad Astra presents a more nuanced issue. Lexington Law argues that Ad Astra was not prejudiced because defendants produced the templates they use to generate the dispute letters, as well as the relevant consumer case files that indicate which template letters were sent and when. (ECF No. 95, at 2-3, 5.) Defendants also provided Ad Astra with the total number of dispute letters sent. (*Id.* at 3.) Furthermore, Ad Astra's own files include a searchable database that contain the very letters that Ad Astra claims are missing. (ECF No. 110, at 1-4.) And defendants provided Ad Astra with an alphabetical list of each Lexington Law client who sent a letter to Ad Astra, so Ad Astra has everything it needs to review any and all letters in its own system. (*Id.*) Defendants therefore contend that the credit dispute letters that they spoliated are merely cumulative of other evidence that is available to Ad Astra and, therefore, not prejudicial. (ECF No. 95, at 5.) In support, Defendants rely on *Turner v. Public Service Co.*, 563 F.3d 1136, 1150 (10th Cir. 2009) (no actual prejudice when plaintiff had access to significant discovery covering the same information likely contained in lost interview notes), and *Grant*, 505 F.3d at 1032 (no prejudice where lost information was produced in another form).

Lexington Law's lack-of-prejudice argument is misplaced, and the case law it relies on is inapposite. This is not the typical spoliation scenario in which documents are missing and/or their content is in question. Instead, this is a case in which the spoliated documents apparently still exist

in the hands of Ad Astra, and their content is undisputed—*i.e.*, credit dispute letters ostensibly sent by consumers. All of these letters "appear to be drafted, signed, and delivered by consumers" with forged signatures and, in fact, the letters were even mailed so as to appear as if sent by the consumers. (ECF No. 97, at 3 n.7.) To that extent, Ad Astra's possession of copies of the letters would appear to correct or at least strongly mitigate prejudice to Ad Astra, with the following key exception.

The critical missing evidence is the fact that defendants generated and sent those credit dispute letters because the letters themselves bear no indicia that Lexington Law generated and sent them. That is why Lexington Law's failure to preserve and produce the letters from its own files is so problematic. As Ad Astra points out, "Defendants['] entire scheme is structured to ensure that Plaintiff cannot identify the actual party drafting, signing, and sending the letters at issue." (ECF No. 97, at 3.) Now, because the letters are no longer in Lexington Law's possession, Ad Astra must prove that the letters came from Lexington Law rather than the individual consumers—an integral part of Ad Astra's case. (ECF No. 129, at 4.) Furthermore, copies of those key letters, from Lexington Law's own records, are central to prove the intent and mail elements of a mail fraud violation. (*Id.*) Ad Astra argues that it is therefore left to rely on other pieces of circumstantial evidence to show the true origin of the letters because Lexington Law destroyed incriminating material evidence designed to prove the source and origin of the fraudulent letters. (*Id.* at 3-4.)

Lexington Law has not set forth any persuasive argument as to how Ad Astra's possession of copies of the letters mitigates the prejudice Ad Astra will suffer by being forced to rely on circumstantial evidence to prove that Lexington Law generated and sent the letters. Lexington Law's own arguments on the current motion effectively admit that defendants generated and sent

the letters. And yet defendants have not offered any such stipulation to ameliorate the prejudice. The court therefore finds that Ad Astra has suffered prejudice by Lexington Law's spoliation of letters generated and sent after Ad Astra filed this lawsuit.

## V.     FASHIONING THE APPROPRIATE SANCTION

Because Ad Astra has shown that it was prejudiced by Lexington Law's spoliation of evidence, it is entitled to spoliation sanctions. *See Turner*, 563 F.3d at 1149 (stating that if these criteria are met, the court may impose sanctions). The district court has broad discretion to fashion the appropriate sanction, considering both the culpability of the responsible party and the degree of resulting prejudice to the opposing party. *Estate of Trentadue v. United States,* 397 F.3d 840, 862 (10th Cir. 2005). However, the sanction "should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1225–26 (10th Cir. 2017) (quotation omitted); *see also 103 Inv'rs I, L.P. v. Square D Co.*, 470 F.3d 985, 989 (10th Cir. 2006) (finding no abuse of discretion where the court "imposed the least severe [spoliation] sanction that would be appropriate to balance out the prejudice to the defendant"); *United States v. Currie*, No. 16-20089-01-JAR, 2017 WL 3190401, at *6 (D. Kan. July 26, 2017) ("[I]n fashioning a remedy for spoliation, courts should choose the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." (internal quotations omitted)).

### A.     Ad Astra's Proposed Sanctions

Ad Astra primarily seeks an adverse-inference jury instruction. Where a moving party seeks an adverse-inference jury instruction, it must also prove that the responsible party acted in bad faith. *JetStream Ground Servs.*, 878 F.3d at 946. Negligence is not enough to show bad faith; bad faith requires intent. *See Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840,

863 (10th Cir. 2005) (differentiating between ignorance or incompetence "as opposed to intentional acts"). Other circuits have characterized bad faith as "destruction for the purpose of hiding evidence." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015); *see also Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013) (same); *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 79 (3d Cir. 2012) (describing bad faith as requiring intent and noting that it "does not arise where the destruction was a matter of routine with no fraudulent intent"); *Micron Tech*, 645 F.3d at 1327 (rejecting a knew-or-should-have-known standard and stating that the district court must limit the analysis to whether the party intended to impair the opposing party's ability to defend itself). In other words, bad faith "involves dishonest conduct and implies wrongdoing or some motive of self-interest." *United States v. Carter*, --- F. Supp. 3d ---, 2019 WL 3798142, at *59 (D. Kan. Aug. 13, 2019).

Ad Astra argues that, because the letters no longer exist, "the only reasonable inference is that these acts or failure were done in bad faith." (ECF No. 91, at 6-7.) This approach would essentially render the bad faith requirement superfluous because spoliation would always also result in a finding of bad faith—presuming an evil motive simply because documents no longer exist and making no distinction between negligent acts versus intentional ones. Ultimately, it is Ad Astra's burden to show that Lexington Law acted in bad faith, and Ad Astra has not met that burden based on the current record. Ad Astra has not presented any record from which the court could find that Lexington Law failed to preserve the credit dispute letters in order to deprive Ad Astra of evidence rather than because Lexington Law was simply sloppy or negligent in failing to suspend its routine document destruction and retention policies. *See, e.g., Lincoln v. State Farm Fire & Cas. Ins. Co.*, No. CV 18-652 MV/LF, 2020 WL 495373, at *2 (D.N.M. Jan. 30, 2020) (declining to find bad faith where the movant contended the destruction "appears intentional" but

failed to present any evidence of willful destruction); *cf. In re Krause*, 367 B.R. 740, 767 (Bankr. D. Kan. 2007) (relying on a developed record to find bad faith, including evidence that a party installed a software-wiping program after litigation began), *aff'd*, No. 08-1132, 2009 WL 5064348 (D. Kan. Dec. 16, 2009), *aff'd*, 637 F.3d 1160 (10th Cir. 2011). To be clear, the court is not finding that Lexington Law necessarily acted in good faith or that its spoliation was merely negligent. After all, Lexington Law is a law firm that should have known of its obligation to preserve relevant documents, and the court is troubled that Lexington Law did not uphold that duty. Nonetheless, the record presently before the court is insufficient for the court to find that Lexington Law acted in bad faith. For that reason, the court declines to order an adverse-inference jury instruction.

The court also denies Ad Astra's request for monetary sanctions because Ad Astra has not articulated any way in which the monetary sanctions it seeks is tailored to cure the prejudice. This is therefore not an appropriate sanction based on the current record. However, the court appreciates the possibility that Ad Astra's task of identifying and assembling the pertinent documents from its own files could prove onerous. And it may be unfair to burden Ad Astra with that task if defendants could more easily recreate those letters from their own files and thus ameliorate the prejudice to Ad Astra from the spoliation. The court will therefore deny this aspect of Ad Astra's motion without prejudice to be renewed once the parties have completed their task of pulling and identifying the relevant, spoliated documents (as discussed below).

The court also denies Ad Astra's request for attorneys' fees for briefing the current motion. Ad Astra's opening brief did not disclose that it possessed copies of the dispute letters, which resulted in the need for supplemental briefing when that fact came to light through discovery. Ad Astra also overshot the mark both in terms the scope of documents it contends were spoliated and the scope of resulting prejudice. So, although the court is granting some form of sanctions, it

would be unfair to award Ad Astra attorneys' fees on a motion where the court does not agree with many of Ad Astra's key arguments and is granting Ad Astra only a portion of the relief it seeks.

### B. Narrowly Tailored Sanctions

Although the undersigned declines to impose Ad Astra's proposed sanctions, spoliation sanctions are warranted because Ad Astra has shown that Lexington Law failed to preserve relevant evidence after litigation commenced and that Ad Astra was prejudiced by the spoliation. The court cannot find that Lexington Law's actions amounted to bad faith based on the current record. However, the law firm's apparent failure to implement an effective litigation hold and its failure to accept responsibility for the spoliation[4] threatens the integrity of the factfinding process and warrants sanctions sufficient to mitigate the prejudice to Ad Astra.

Where a party fails to comply with an order compelling discovery, the court may direct that the matters embraced in the order or other designated facts be taken as established for purposes of the action. FED. R. CIV. P. 37(b)(2)(A)(i). The court finds that to be the most appropriate sanction here. The following will be deemed established for all purposes in this litigation:

(1) Lexington Law had a duty to preserve credit dispute letters that it sent to Ad Astra on or after May 21, 2018;

(2) Lexington Law did not comply with that duty; and

(3) certain credit dispute letters in Ad Astra's files thereafter (to be determined, as discussed below) were generated by and sent from Lexington Law.

The justifications for findings (1) and (2) are discussed in Section III above. Finding (3) is warranted because that is the gist of Lexington Law's argument regarding a lack of prejudice—that is, that there is no harm to Ad Astra because Ad Astra has copies of the letters in its own files.

---

[4] The court finds it troubling that defendants' briefing does not acknowledge that the letters were relevant documents that Lexington Law possessed and had a duty to preserve.

Defendants' lack-of-prejudice argument effectively admits that such a finding is tailored to remedy the prejudice to Ad Astra, as discussed in Section IV above.

Based on information available to both sides, it appears that the parties should be able to identify the letters involved and reach a stipulation as to which letters Lexington Law sent to Ad Astra after May 21, 2018. If the parties disagree about particular letters, the undersigned will hold an evidentiary hearing and make findings as to which letters the court deems sent by Lexington Law. If this case proceeds to trial, the parties must work together to draft an appropriate jury instruction on the matter. This jury instruction is distinguishable from an adverse-inference jury instruction in that it need not inform the jury about the spoliation of evidence and need not instruct the jury to infer anything.[5] *See Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288, 1300 (D.N.M. 2016) (declining to give an adverse-inference jury instruction because there was no showing of bad faith but determining it was appropriate to "give an instruction that allows the jury to make any inference they believe appropriate in light of the spoliation"). If the parties are unable to reach an agreement, the court will craft the instruction.

## VI. CONCLUSION

In sum, Ad Astra's motion for spoliation sanctions is granted insofar as the court deems it established for all purposes in this litigation that Lexington Law had a duty to preserve credit dispute letters that it sent to Ad Astra on or after May 21, 2018; that Lexington Law did not comply with that duty; and that certain credit dispute letters in Ad Astra's files thereafter (to be determined, as discussed above) were generated by and sent from Lexington Law. The motion is denied in all

---

[5] Unlike the typical spoliation scenario, the parties here know what was in the documents that were spoliated because Ad Astra has the documents, and so there is no need for the jury to infer that the letters would have been favorable to Ad Astra.

other respects.  As to Ad Astra's request for monetary sanctions, the motion is denied without prejudice.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Spoliation Sanctions (ECF No. 90) is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated February 28, 2020, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
