IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AD ASTRA RECOVERY SERVICES, INC.,

    Plaintiff,

    v.

JOHN CLIFFORD HEATH, *ET AL.*,

    Defendants,

Case No. 18-1145-JWB-ADM

**MEMORANDUM AND ORDER**

    This matter comes before the court on Plaintiff's Motion for Reconsideration of the Order filed March 18, 2020, Denying Plaintiff's Motion for Authorization to Issue Subpoenas. (ECF No. 161.) The day before discovery closed on March 13, Plaintiff Ad Astra Recovery Services, Inc. ("Ad Astra") moved for a court order authorizing subpoenas to the three major credit-reporting bureaus so that they could release information in compliance with 15 U.S.C. § 1681b of the Fair Credit Reporting Act ("FCRA").[1] The court denied the motion as untimely because the proposed subpoenas provided a return date after the close of discovery. Ad Astra now asks the court to reconsider that order, but Ad Astra's motion to reconsider seeks different relief based on a different set of subpoenas. To that end, Ad Astra has not advanced grounds for reconsideration because it is making new arguments and seeking new relief that it could have, but did not, raise in the first instance. For that reason, the court denies Ad Astra's motion for reconsideration. The new relief Ad Astra seeks (an order *requiring compliance* with the *November* subpoenas) raises additional

---

[1] The FCRA provides that consumer reporting agencies may only furnish consumer reports under limited circumstances, including "[i]n response to the order of a court having jurisdiction to issue such an order." 15 U.S.C. § 1681b(a)(1).

issues not briefed by Ad Astra—namely, the timeliness of any motion aimed at the November subpoenas; this court's jurisdiction to grant the relief requested; and notice to the subpoenaed entities. So even if the court were inclined to broadly construe Ad Astra's motion as something other than a motion to reconsider, the court would still be unable to grant the relief requested given these significant procedural defects.

## I. BACKGROUND

Ad Astra is a debt collector and credit agency that alleges defendants "engaged in a fraudulent credit-repair scheme designed to bombard debt collectors with false credit dispute letters with the intention of deceiving debt collectors . . . and frustrating their efforts to collect legitimate debts." (Am. Compl. ¶ 3 (ECF No. 120).) Highly summarized, Ad Astra alleges that Defendant John C. Health, Attorney at Law, PLLC d/b/a Lexington Law Firm and related individual defendants and corporate defendants (collectively "Lexington Law") used deceptive marketing techniques to solicit financially troubled consumers by offering services from a law firm in hopes that the consumers would sign up for their credit-repair services. (*Id.* at ¶ 5.) According to Ad Astra, once consumers signed up, the law firm transmitted mass credit-dispute letters to creditors in the consumer-clients' names without ever disclosing that they were prepared and transmitted by the firm. Ad Astra alleges this practice was designed to circumvent the FCRA and trigger Ad Astra to perform certain onerous statutory investigative requirements. (*Id.* at ¶¶ 6-9.) Ad Astra asserts mail fraud, wire fraud, and conspiracy claims under the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §§ 1962(c) and (d). Ad Astra also asserts Kansas common law claims for fraud and tortious interference with existing contractual relationships.

On November 25, 2019, Ad Astra issued subpoenas to the three major credit-reporting bureaus (Equifax, Experian, and TransUnion) commanding production of certain documents by

December 10, 2019, at Ad Astra's counsel's New York City office. (ECF No. 169, 4, 11, 18.) The subpoenas sought documents "reflecting all dispute(s), challenge(s), or other data transmission(s) You received concerning an Ad Astra tradeline from any of" ten identified consumers, listing their dates of birth and the last four digits of their Social Security Numbers. (*Id.* at 19, 6, 23.)

According to Ad Astra, the bureaus never objected to or moved to quash the subpoenas. But Experian responded by letter dated November 27, 2019. (ECF No. 161, at 4.) Experian stated that it could only produce the reports "in response to a court order having jurisdiction to issue such an order," pointed to authority that a subpoena is a court order if signed by a judge, and explained that it could be sued for violating the FCRA if it furnished the requested information without a court order. (*Id.*) Experian stated that it would "**respond immediately to a subpoena signed by a judge or magistrate.**" (*Id.* (bold in original).) Experian also explained that, in order to pull the requested information, it would need each individual's full name (including middle name and generation code), current and previous addresses for the past two years including zip code, complete social security number, and date of birth. (*Id.*) Experian concluded by asking Ad Astra to "**[p]lease provide complete ID information for the above referenced individuals and a valid subpoena and we will promptly process your request.**" (*Id.* at 5 (bold in original).)

The Second Amended Scheduling Order that was in effect at that time provided that "[a]ll discovery must be commenced or served in time to be completed by **December 11, 2019**." (ECF No. 86 ¶ 4 (bold in original).) In order to accommodate resolution of ongoing discovery disputes, on December 10, the court granted the parties' joint motion to extend the discovery deadline to January 24, 2020. (ECF Nos. 101, 102 ¶ 1.) And, after the court granted Ad Astra leave to file a First Amended Complaint adding additional defendant-related entities (ECF No. 119), the court

granted the parties' joint motion to extend the discovery deadline to March 13 (ECF Nos. 139, 140 ¶ 2).

On March 12, the day before the close of discovery, Ad Astra filed a motion asking the court to "authorize Plaintiff to issue subpoenas to the major three credit reporting bureaus: Equifax, Experian, and Transunion." (ECF No. 153.) The first Document Request in this second round of subpoenas was worded differently than the November set of subpoenas. It sought all documents "concerning an Ad Astra . . . tradeline(s) associated with any of the consumers listed below, including any communications between you and Lexington Law." (ECF No. 153-1, at 7, 16, 25.) It then listed the same identified consumers, with their dates of birth and the last four digits of their Social Security numbers. (*Id.*) It did not provide the more specific identifying information that Experian had requested. This set of subpoenas also included a second Document Request that sought the "name of the furnisher, data furnisher, and/or intended recipient of each" responsive document produced. (*Id.*) The subpoenas commanded production in Cincinnati, Ohio, by March 31. (ECF 153-1, at 1, 10, 19.) On March 18, the court denied the motion as untimely because the scheduling order required that all discovery be commenced or served in time to be completed by March 13. (ECF No. 155, at 1.) Because the proposed subpoenas listed a return date of March 31, they were not served "in time to be completed by March 13." (*Id.* at 2.) The court also found that Ad Astra had not established good cause to modify the scheduling order to extend that discovery deadline to allow belated service of the March subpoenas.

The following day, the parties filed a Joint Motion for Extension of Deadlines because of the COVID-19 pandemic. (ECF No. 157.) The parties had apparently agreed to allow two depositions to occur in late March (after the March 13 discovery deadline), but, by March 19, they were unable to complete those depositions because of the COVID-19 pandemic. (*Id.*) They

4

therefore sought an extension of approximately 60 days to take those two belated depositions and a commensurate extension of the pretrial conference and dispositive motion deadline. (ECF No. 157.) The court granted that motion, finding "good cause to grant limited extensions" to complete those two depositions. (ECF No. 160.) The parties did not request, and the court did not grant, any other extension of the discovery completion deadline.

On April 1, Ad Astra filed the current motion to reconsider, which purports to seek reconsideration of the court's March 18 order. (ECF No. 161.) But Ad Astra's motion to reconsider does not ask the court to "authorize" the *March* subpoenas—the relief Ad Astra sought previously. Instead, Ad Astra now seeks "an Order of this Court requiring compliance" with the *November* subpoenas. (*Id.* at 1-2.) By recharacterizing the relief sought as directed to the November subpoenas, Ad Astra now argues that the November subpoenas were issued "well before the cut-off." (*Id.* at 2.)

## II. ANALYSIS

The court has discretion whether to grant a motion to reconsider. *Brumark Corp. v. Samson Res. Corp.,* 57 F.3d 941, 944 (10th Cir. 1995). A motion for reconsideration of a nondispositive order must be based on: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice. D. KAN. RULE 7.3(b). "A motion to reconsider is not a second opportunity for the losing party to make its strongest case, to rehash arguments or to dress up arguments that previously failed." *In re Motor Fuel Temperature Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1166 (D. Kan. 2010). Rather, "a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

### A. Ad Astra Does Not Meet the Standard for Reconsideration

Ad Astra moves for reconsideration based on manifest injustice. It argues that timeliness alone should not be the sole factor in determining whether the court should authorize the bureaus to respond to the subpoenas because they are highly relevant and because Ad Astra timely served the November subpoenas within the discovery deadline. (ECF No. 162, at 6.) Specifically, Ad Astra argues it seeks documents that are central to an important issue in the case—namely, whether Lexington Law prepared and submitted "E-Oscar" disputes (electronic FCRA disputes) to the bureaus. To resolve this issue, Ad Astra says it needs to obtain the subpoenaed information from the bureaus. Ad Astra contends that it diligently attempted to obtain this material by serving the November subpoenas and by seeking similar documents from Lexington Law.

None of Ad Astra's arguments alter—or even directly address—the court's conclusion in its March 18 order that the proposed March subpoenas were untimely under the scheduling order and that Ad Astra did not show good cause to modify the scheduling order to extend the discovery deadline. The fact that the material is relevant or that Ad Astra cannot obtain the material by different means does not alter the court's reasoning or conclusion in the underlying order. To the contrary, it only makes it all the more astounding that Ad Astra waited so long to pursue the very simple procedure that Experian told Ad Astra to follow nearly three and a half months earlier. Experian told Ad Astra on November 27, 2019, that it would "respond immediately to a subpoena issued by a judge or magistrate," Experian described the detailed identification information it would need for each individual, and Experian asked Ad Astra to "please provide . . . a valid subpoena and we will promptly process your request." (ECF No. 161, at 4-5.) Ad Astra therefore knew it would need court-authorized subpoenas in order to obtain these materials, and Ad Astra also knew that it needed to act with diligence because discovery was at that time set to close on December 11, 2019. Yet, Ad Astra did not pursue this very simple avenue months ago.

Ad Astra now tries to circumvent the untimeliness of the March subpoenas by recasting the relief it seeks as aimed at the timely served November subpoenas. Ad Astra now characterizes the underlying motion as one requesting "permission to authorize the Bureaus to respond *to the original subpoenas* that were served." (ECF No. 162, at 5 (emphasis added).) But Ad Astra mischaracterizes the record. Ad Astra does not point to any statements in the original motion or memorandum that requested this relief. None exist. Ad Astra's underlying motion requested that the court issue an order "authorizing Plaintiff *to issue* subpoenas to the three major credit reporting bureaus," noting that an order "*pre-authorizing* subpoenas" was necessary under § 1681b(a)(1) and attaching the proposed subpoenas as exhibits. (ECF No. 153, at 1 (emphasis added).) Ad Astra also submitted a proposed order granting the motion to the undersigned's chambers. The proposed order authorized the bureaus "to release information and documents to the Plaintiff as requested in the subpoenas attached to Plaintiff's Motion"—the *March* subpoenas. Those proposed subpoenas listed a return date of March 31, and it was on this basis that the court denied the motion as untimely under the scheduling order. Now, Ad Astra moves for an order "requiring compliance" with the subpoenas served in November, which were a different set of subpoenas listing different categories of documents. (ECF No. 161.) Ad Astra's initial failure to seek this relief when it was available is not a proper basis for the court to reconsider its prior order. *See, e.g., Faith Techs., Inc. v. Fid. & Deposit Co. of Maryland*, No. CIV.A. 10-2375-KHV, 2011 WL 3793970, at *6 (D. Kan. Aug. 25, 2011) (denying a motion to reconsider where an argument was capable of being raised on the initial briefing). Ad Astra could have previously moved for an order requiring compliance with the November subpoenas, but it did not. On this basis alone, Ad Astra does not meet the standard for reconsideration.

    **B.    Ad Astra Is Not Entitled to the Relief It Seeks Based on the November Subpoenas**

The new relief Ad Astra seeks—an order directing the bureaus to comply with the November subpoenas—has several significant procedural defects not addressed by Ad Astra. While the court denies Ad Astra's motion on the basis that it does not meet the standard for reconsideration, the court will briefly address some of the issues associated with any order directed at the November subpoenas.

### 1.    Ad Astra's Motion is Untimely Under This Court's Local Rules

First, the relief Ad Astra seeks is untimely as to the November subpoenas. Although Ad Astra's memorandum characterizes the relief it seeks as "authorizing" the bureaus to respond, the motion itself seeks far more. (ECF No. 162, at 7.) The motion does not merely ask the court to "*authorize*" the subpoenas (as it did with the March subpoenas). Instead, the motion seeks "*an Order* of this Court *requiring compliance*" with the November subpoenas—*i.e.*, a motion to compel. (ECF No. 161, at 1-2 (emphasis added).)[2] This court's local rules require a motion to compel to be "filed and served within 30 days of the default or service of the response, answer, or objection that is the subject of the motion, unless the court extends the time for filing such motion for good cause." D. KAN. RULE 37.1(b). This includes motions to compel compliance with a subpoena. *See, e.g.*, *Adams v. Symetra Life Ins. Co.*, No. 19-MC-401-EFM-ADM, 2020 WL 489523, at *3 (D. Kan. Jan. 28, 2020); *Gilbert v. Rare Moon Media, LLC*, No. 15-MC-217-CM, 2016 WL 141635, at *1 (D. Kan. Jan. 12, 2016); *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd*, No. 12-2350-SAC, 2014 WL 12595196, at *2 (D. Kan. Sept. 8, 2014).

---

[2] Notably, Ad Astra's counsel referred to the contemplated motion as a "motion to compel" in email correspondence with Lexington Law's counsel prior to filing this motion. (ECF No. 173-3, at 2 (containing a subject line, "Credit Bureau Motion to Compel"); *Id.* at 2 ("Please advise if we can file the motion to compel as unopposed."); ECF No. 173-4, at 3 ("[W]e will proceed with an 'opposed' motion to compel.")).

Here, the November subpoenas sought production by December 10, 2019. Ad Astra's motion to compel was therefore due by (1) January 9, 2020,[3] or (2) another time period for good cause shown. *See Adams*, 2020 WL 489523, at *3. A party may demonstrate good cause by showing it acted diligently to resolve the dispute between the time it occurred and the time it filed the motion. *See id.*

The record does not demonstrate that Ad Astra acted diligently with respect to the November subpoenas. When Ad Astra received the letter from Experian, Ad Astra knew it would need the court's involvement because the bureaus simply could not respond to the subpoenas absent a court order. Although Ad Astra made some attempts to work with Lexington Law in the hopes of filing an unopposed motion, those efforts were sporadic, delayed, and not compatible with a finding of diligence. Ad Astra asked defense counsel on December 5, 2019, whether Ad Astra could file a motion to compel relating to the subpoenas as an unopposed motion. (ECF No. 173-3, at 2.) After some back and forth regarding possible modifications to the subpoenas, Ad Astra told Lexington Law on December 16, that it would proceed with an opposed motion to compel unless Lexington Law reconsidered its position by the close of business. (ECF No. 173-4.) But then Ad Astra did not file a motion to compel and did not raise the issue of the subpoenas again with Lexington Law until nearly two months later, on February 14, 2020. On February 18, Lexington Law relayed its concerns about possible modifications and then did not hear from Ad Astra again until March 12. (*See* ECF No. 173-7 (memorializing the lag time in email correspondence)). Ad Astra filed the underlying motion to authorize the March subpoenas that

---

[3] Experian's response letter to Ad Astra dated November 27, 2019, stated that it could not produce the requested information except in response to a court order. (ECF No. 161, at 4.) The January 9 deadline set forth above is therefore a generous one given that the triggering event began when Ad Astra first discovered this specific information leading to a dispute. *See Black & Veatch Corp.*, 2014 WL 12595196, at *2.

9

day. And, it was only after the court denied that motion as untimely that Ad Astra filed the present motion directed at the earlier-issued November subpoenas, presumably to try to circumvent problems with the March subpoenas seeking compliance beyond the discovery cutoff.

The court is unpersuaded by Ad Astra's arguments that it acted with diligence. Ad Astra tries to cast blame on Lexington Law for not producing these documents. But Ad Astra admits that it did not first seek these documents from Lexington Law until its Second Set of Request for Production served on October 15, 2019—which was fourteen months after discovery opened in August 2018—and Ad Astra was then forced to file a motion to compel compliant responses on December 24, 2019. (ECF No. 162, at 2-3.) If anything, this only confirms Ad Astra's lack of diligence because Ad Astra knew it was going to have difficulty obtaining these documents from Lexington Law. Yet, Ad Astra waited months to follow the simple procedure set forth in Experian's November 27 letter.

Finally, Ad Astra argues that "authorizing" the subpoenas would not delay the case, noting that the court recently entered a Fifth Amended Scheduling Order that extended the dispositive motion deadline to June 12. But the relevant inquiry is Ad Astra's diligence, not lack of prejudice.[4] Ad Astra's "highly relevant" and lack-of-prejudice arguments only amplify Ad Astra's lack of

---

[4] Although lack of prejudice is not the applicable legal standard here, the court does not agree with Ad Astra that the extensions later granted in the Fifth Amended Scheduling Order (after the court denied the underlying motion) would ameliorate any potential prejudice from late-served subpoenas. Under the Fifth Amended Scheduling Order, discovery is now closed other than the two depositions remaining to be completed by agreement of the parties by May 15. The court expects the discovery record to be complete so that the issues are crystallized when the parties submit their proposed pretrial order on May 22. That will not be feasible if the court allows ongoing, third-party discovery involving the credit bureaus. As explained below, the credit bureaus are entitled to notice and an opportunity to be heard with respect to any objections they may have to the subpoenas, it will presumably take them some time to produce the documents, and the parties may wish to conduct some follow-up discovery as a result.

diligence. As far back as May 21, 2018, Ad Astra's complaint alleged that Lexington Law made fraudulent E-Oscar disputes. (ECF No. 1, at ¶¶ 79, 98.) Ad Astra has had ample time to fully discover its case. Discovery opened in August 2018. Since then, the parties have conducted exhaustive discovery, and the court has devoted significant resources to helping the parties move this case forward, including convening numerous discovery conferences to try to resolve discovery disputes, deciding numerous contested discovery-related motions, and granting multiple jointly-agreed extensions of the discovery deadline up to March 13, 2020. (*See* ECF Nos. 47, 86, 102, 140.) If the information Ad Astra now seeks was so important, it is inexplicable that Ad Astra waited until the eleventh hour to seek this discovery and waited even longer to attempt to obtain an order compelling it. The fact that the court granted the parties' joint motion to extend the deadline to take two remaining depositions because of logistical complications associated with the COVID-19 global pandemic is insufficient to establish Ad Astra's diligence in attempting to resolve discovery issues that it allowed to languish since late 2019. Based on this record, the court is unable to find good cause to warrant Ad Astra's significant, months-long delay in seeking to enforce the November subpoenas.

> **2.     Ad Astra's Motion is Procedurally Improper to the Extent that Ad Astra Seeks a Court Order "Requiring Compliance" With the November Subpoenas**

In addition to the untimeliness of the relief Ad Astra seeks, the court also wishes to point out apparent procedural flaws in the November subpoenas. These concerns all arise from the fact that Ad Astra's motion for reconsideration does not ask that the court merely authorize the subpoenas (as Ad Astra's underlying motion did with respect to the March subpoenas) or ask that the court merely sign the subpoenas, as Experian's letter suggested. (ECF No. 161, at 4.) Instead, Ad Astra's motion now seeks an order "requiring compliance" with previously issued subpoenas—

again, a motion to compel. (*Id.* at 3.) This triggers the Federal Rules governing motions to compel compliance with subpoenas, and the motion does not comply in two material respects.

First, the District of Kansas is not the proper court to compel compliance with the subpoenas. FED. R. CIV. P. 45(d) provides that after receiving objections, on notice to the subpoenaed party, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection." FED. R. CIV. P. 45(d)(2)(B)(i). Regardless of whether a subpoenaed entity objects, FED. R. CIV. P. 37(a)(2) still makes clear that a "motion for an order to a nonparty must be made in the court where the discovery is or will be taken." *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2018 WL 2926581, at *3 (D. Kan. June 11, 2018) (noting that the provision applies to motions to compel compliance with a subpoena and that the place where discovery is or will be taken is the place of compliance under Rule 45). The "district where compliance is required" and the district "where the discovery is or will be taken" is determined by the location or place of compliance identified on the subpoena. *See CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702, 709 (N.D. Tex. 2017) ("[F]or purposes of a Rule 45(d)(2) or 45(d)(3) motion, the court or district 'where compliance is required' is determined by the location or 'place' for compliance identified on the subpoena as required by Rule 45(a)(1)(A)(iii)."); *Tomelleri v. Zazzle, Inc.*, No. 13-CV-02576-EFM-TJJ, 2015 WL 400904, at *2 (D. Kan. Jan. 28, 2015) (finding the court lacked authority to determine motions to quash concerning subpoenas to produce documents in Los Angeles and New York City). Here, Ad Astra's November subpoenas seek production at its counsel's New York City office, and so the District of Kansas would not be "the district where compliance is required for an order compelling production or inspection" under Rule 45 or the "court where the discovery is or will be taken" under Rule 37. (ECF No. 169, at 4, 11, 18.)

Therefore, this court lacks jurisdiction to grant Ad Astra the relief it seeks—an order compelling compliance with the November subpoenas in New York.

The court identified this jurisdictional concern and gave Ad Astra the opportunity to submit supplemental briefing to "identify the authority pursuant to which this court has jurisdiction to issue the order plaintiff seeks." (ECF No. 163.) But Ad Astra only cited cases in which other courts have entered orders authorizing the credit bureaus to produce material covered by § 1681b(a)(1), typically by stipulation between the parties. For example, Ad Astra cites a case in which the parties stipulated to a Master Protective Order that included language that allowed the plaintiff to obtain credit reports. *See Nat'l Credit Union Admin. Bd. v. RBS Sec. Inc.*, No. 11-2340-JWL, 2016 WL 1448480, at *2 (D. Kan. Apr. 13, 2016) (ruling on a motion exclude expert testimony and noting the existence of the protective order). But none of these cases persuade the court that Ad Astra can obtain a court order compelling compliance with a subpoena (as it does here) without moving "in the court where the discovery is or will be taken," as required by FED. R. CIV. P. 37(a)(2) and FED. R. CIV. P. 45(d)(2)(B)(i). It is one thing for a court to "authorize" the credit bureaus to release material covered by § 1681b(a)(1) so that they do not violate the FCRA. It is quite another thing for the court to order a non-party (such as a credit bureau) to comply with the subpoena, which triggers the applicable procedural rules governing motions to compel compliance with subpoenas.

Second, there is no indication that Ad Astra complied with the other aspect of Rule 45(d)(2)(B)(i) that requires notice of the motion to the subpoenaed entities. The omission is particularly concerning here as a practical matter because Experian's November 27 letter raised an objection beyond just a procedural inability to comply with the subpoena by virtue of the FCRA. Experian also raised a substantive objective by explaining that it was unable to retrieve the

information requested in the subpoena without additional identifying for the listed consumers. (ECF No. 161, at 4 (stating that in order to process records for individuals, Experian needs their complete identification information and explaining what that meant)).) Ad Astra does not challenge Experian's contention that it requires additional identifying information to be able to respond, and Ad Astra notably did not modify the subpoenas to provide the information Experian said it needed. Experian already told Ad Astra that it would not be able to comply with the subpoena without this information. And yet Ad Astra is still requesting that the court order Experian to do so without providing Experian or the other bureaus with an opportunity to be heard on the matter. Such a procedure is incompatible with Experian's right to notice and an opportunity to be heard, and it is inefficient in that it in no way enables Ad Astra to actually obtain the documents it seeks from Experian.

## III.   CONCLUSION

The court denies Ad Astra's motion to reconsider on the grounds that Ad Astra is presenting a different argument and seeking a different form of relief than what the court considered in the underlying order. To that end, Ad Astra does not meet the legal standard for reconsideration, and so the court denies the motion on this basis.

Furthermore, the new relief Ad Astra requests raises additional issues not addressed by Ad Astra. Specifically, any motion directed to the November subpoenas is untimely under this court's Local Rules. The motion is also procedurally improper to the extent that it seeks a court order "requiring compliance" with the subpoenas because Ad Astra filed the instant motion in the wrong district and, by doing so, Ad Astra did not give the credit bureaus any apparent notice and opportunity to be heard on this motion, which is particularly troubling as a practical matter because

Experian already said it could not comply with the subpoenas without further identifying information, which Ad Astra has not provided.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Reconsideration of the Order Filed March 18, 2020, Denying Plaintiff's Motion for Authorization to Issue Subpoenas (ECF No. 161) is denied.

**IT IS SO ORDERED.**

Dated April 29, 2020, at Topeka, Kansas.

<u>s/ Angel D. Mitchell</u>
Angel D. Mitchell
U.S. Magistrate Judge