## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

AD ASTRA RECOVERY SERVICES, INC.,

      Plaintiff,

      v.

Case No. 18-1145-JWB-ADM

JOHN CIFFORD HEATH, *ET AL.*,

      Defendant,

## MEMORANDUM AND ORDER

On June 5, the court granted Defendants' Motion to Compel a Complete Response to Interrogatory No. 1.  (ECF No. 204.)  The court ordered Plaintiff Ad Astra Recovery Services, Inc. ("Ad Astra") to serve an amended response by June 12 that omits all argumentative and nonresponsive verbiage and provides the substantive detail sought by the interrogatory.  Ad Astra now requests that the court stay enforcement of that order because Ad Astra intends to file a motion for review.  The undersigned certainly appreciates that parties are entitled to lodge objections to a magistrate judge's discovery orders, and of course the assigned district judge has the prerogative and authority to rule on those objections.  In this case, however, none of the applicable criteria favor a discretionary stay of the court's discovery order.

To begin, Ad Astra's motion for a stay does not identify any portion of the discovery order that is clearly erroneous or contrary to law.  Its arguments generally amount to mischaracterizations of the court's rulings and new arguments not raised or considered by the magistrate judge.  To that end, Ad Astra is unlikely to prevail.  Ad Astra also raises the potential for harm if the court does not stay its order because compliance might require disclosure of

privileged information.  But the law could not be more clear that Ad Astra waived any privilege objection it may have had by not timely asserting it despite having had numerous opportunities to do so over the course of many months.  Meanwhile, Ad Astra's failure to serve the required interrogatory response is halting the orderly and efficient progress of this case.  It is holding up finalizing and entering the pretrial order, resetting the dispositive motion deadline, and setting a trial date.  The court will not indulge delay tactics by granting a stay of a discovery order that appears unlikely to be overturned—at least not based on the arguments Ad Astra advances in this motion.  For these reasons, Ad Astra's motion is denied.

I.     BACKGROUND

On April 19, 2019, the court ordered Defendant John C. Heath, Attorney at Law PLLC, d/b/a Lexington Law ("Lexington Law") to produce all communications from clients that resulted in the firm generating dispute letters sent to Ad Astra under the Lexington Law clients' signatures, including communications directing the firm to dispute a debt collected by Ad Astra. *See Ad Astra Recovery Services, Inc. v. Heath*, No. 18-1145, 2019 WL 1753958, at *4 (D. Kan. Apr. 19, 2019).  During a discovery conference on May 31, Lexington Law told the court and opposing counsel that full compliance would require production of communications with more than 14,000 clients.  Based on this representation, the parties agreed that Lexington Law could produce responsive documents from a sampling of clients, capped at one hundred, with Ad Astra selecting the clients in two increments of fifty.  (ECF No. 54.)  Ad Astra served a list of fifty names of Lexington Law clients and subsequently produced its own files corresponding to those names.  Defendants later became concerned that the list was not a representative sample of Lexington Law's client base, but that Ad Astra intended to argue that it was.  (ECF No. 192-2, at 4-5.)  Defense counsel emailed Ad Astra's counsel to ask about the manner of selection.  (*Id.*)

Ad Astra's counsel dismissed these inquiries by responding, "We are done responding to this fiction." (*Id.* at 2.)

On January 28, 2020, defendants served Interrogatory No. 1. It requires Ad Astra to: "Explain in detail the process used by Ad Astra to select the list of fifty consumers included on the list produced by Ad Astra titled 'Random Sampling of Lexington Law Consumers in accordance with May 31, 2019 Order.'" (ECF No. 192-3, at 7.) Ad Astra's initial response incorporated its general objections, asserted a relevance objection, and provided a non-responsive answer. (ECF No. 192-3, at 3-4.)

During a discovery conference with the court on March 24, defendants raised the issue of Ad Astra's deficient interrogatory response. Defendants explained that they were concerned that Ad Astra would attempt to present the documents as being from a random or representative sampling of Lexington Law's client base, but defendants had no way to test that assertion because they did not know how Ad Astra selected the names. The court asked Ad Astra what objection Ad Astra lodged to the interrogatory that it continued to maintain, to which Ad Astra responded that it asserted a relevance objection. (ECF No. 192-5, at 31-32.) The court did not issue any substantive ruling but told the parties that, based on their arguments, the interrogatory appeared to seek relevant information. (*Id.* at 34.) At that point, Ad Astra agreed to supplement its response to avoid motion practice. (*Id.* at 36.)

 Ad Astra served an amended response on April 3. The amended response removed the relevance objection and Ad Astra's incorporation of its general objections, and it did not assert any further objections. It stated only that Ad Astra attempted to select 50 consumers from a client list that Lexington Law had produced, but Ad Astra believed the client list was inaccurate

so "Ad Astra compiled a list of 50 consumers who Ad Astra had reason to believe had used Lexington Law's services at some point in time."  (ECF No. 192-6, at 3-4.)

During another discovery conference with the court on April 24, defendants again raised issues relating to deficiencies in Ad Astra's amended response.  The court agreed that the response did not provide the substantive information sought by the interrogatory (ECF No. 192-7, at 11) and provided a deadline for defendants to move to compel.  Counsel for Ad Astra stated they would consult with their client to see whether they could fashion another supplemental response that might obviate the need for motion practice.  (*Id.* at 18.)

On April 28, Ad Astra served another supplemental response—again, without asserting any further objections.  The second amended response spans over three pages (ECF No. 192-8, at 3-6) and, as explained in the court's underlying order, is largely non-responsive and evasive. Following this response, the parties exchanged follow-up emails.  (ECF No. 192-9, at 2-3.)  Ad Astra's counsel provided answers to several questions but refused to respond to certain questions on the grounds that they called for the disclosure of attorney-client privileged information.  (ECF No. 192-10, at 3; ECF No. 196-4, at 1-3; ECF No. 192-11, at 2.)

Defendants then moved to compel, asserting the second amended response did not provide a complete answer and that the selection of the fifty consumers is not attorney-client privileged.  The court held a hearing on the motion on May 29, in connection with the final pretrial conference.  The court explained that Ad Astra's response was largely nonresponsive and that the single paragraph that was responsive omitted key details about how Ad Astra narrowed its selection to 50 names.  Ad Astra's counsel said that Ad Astra had already provided the information known to Ad Astra and that the employee primarily involved with the selection had left the company and the attorney who worked with that employee had left the firm.  Counsel

4

stated, "I don't know what additional details can be provided," and "Any criteria used has been disclosed." Ad Astra did not object that a complete response would require disclosing privileged communication. Instead, counsel stated that they would go back to the former employee and former counsel to try to obtain more information.

Because defendants' motion to compel also argued that Ad Astra waived any privilege or work-product protection by putting the representativeness of its selection process at issue, the court asked counsel whether Ad Astra intended to preserve its rights to present evidence or argument (at trial or otherwise) characterizing the sample as being unbiased in the sense that it was "representative," "random," or the like. In response, Ad Astra declined to take a position at the hearing and instead asked to email its position to the court the following business day, which the court allowed. But, as explained in the underlying discovery order, the emailed response was not clear about Ad Astra's plans for the material. Ad Astra stated that it would not argue the files constitute "a random sampling or a statistically valid representative sample" but that Ad Astra still wanted to reserve the right to argue that the material "demonstrates a pattern of misconduct." This is little different than what Ad Astra had advocated previously and still left the door open for Ad Astra to argue that the sample is "'representative' in the colloquial sense," as Ad Astra had contended in its brief. Defense counsel responded, reiterating the concern that Ad Astra would argue representativeness in some fashion. Ad Astra again repeated its same position (*i.e.*, that it does not intend to argue that the material is a random sampling or a statistically valid sampling), but Ad Astra added that it was reserving the right to argue a "pattern of misconduct." The email further stated that Ad Astra does not intend to argue the evidence is a representative sample of the files and recordings that Lexington Law did *not* produce.

The court granted the motion to compel, finding Ad Astra's interrogatory response was insufficient both because it contained nonresponsive and argumentative language and because it omitted key details about its selection process.  Because Ad Astra did not timely assert any attorney-client privilege or work-product objection to the interrogatory,[1] the court also found that Ad Astra waived any objection it may have had and that there was not good cause to excuse the failure by allowing Ad Astra to belatedly assert objections that should have been apparent from the outset.  The court also found that Ad Astra's follow-up emails to the court were insufficient to retract Ad Astra's position of representativness because Ad Astra apparently still planned to argue the consumer files are representative in some fashion, whether "representative in the colloquial sense," as part of a "pattern of misconduct," or some variation thereof.  Therefore, Ad Astra waived any privilege by putting its file-selection process at issue.

During the final pretrial conference—as later memorialized in the discovery order—the undersigned observed that the parties' agreement to narrow the scope of an RFP had turned into an after-the-fact dispute that no party contemplated at the time they originally agreed in May of 2019 to reduce the number of consumer files Lexington Law would produce.  Many months later, the parties' positions emerged in that Ad Astra contended it had selected a representative sample whereas defendants contended Ad Astra had cherry-picked the list.  To protect the integrity of the discovery process and not lose the gains made through the parties' agreement to narrow the scope of the RFP to make it proportional, the undersigned informed the parties that the court would include a proposed jury instruction in the pretrial order.  The instruction would inform the jury how Ad Astra selected the consumers and would prohibit the parties from

---

[1] Ad Astra did not even assert an untimely objection, for that matter.  It asserted no specific objections in the supplemental response before the court.

characterizing the selection process otherwise, whether in pejorative or laudatory terms.  Any party could request that the district judge give the instruction.  The jury could then determine what weight to accord the material, if any.  The court envisioned that this would spare the district judge and the jury from having to endure the parties continuing to relitigate this discovery dispute.[2]  The undersigned asked whether the parties had any concerns or objections so that the magistrate judge could make changes to the proposed process, if necessary.  Ad Astra's counsel responded, "I have no concerns about Your Honor's process on the resolution of this issue." Because this procedure contemplated Ad Astra serving a supplemental response that would provide substantive detail about its selection process, the court continued the pretrial conference to June 24 and vacated the dispositive motion deadline.  Because of these delays, the magistrate judge has not yet requested a trial date from the district judge.

Instead of serving a supplemental response, as discussed during the final pretrial conference and hearing on the motion, Ad Astra filed this motion to stay while it seeks review of the discovery order.

## II.    LEGAL STANDARD

D. Kan. Rule 72.1.4(d) permits an application for a stay of a magistrate judge's order pending review of objections.  Although the Federal Rules of Civil Procedure and this district's local rules do not address the criteria the court should consider in determining whether to grant a stay, judges in this district commonly apply the criteria for evaluating discretionary stays in other contexts—essentially assessing the movant's chance of success on review and weighing the equities between the parties.  *See In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-

---

[2] Of course, the parties could object to this portion of the pretrial order and/or the district judge could decline to give the instruction.  But at least the undersigned would have resolved this lingering discovery issue and not passed it along unresolved to the district judge.

JWL, 2017 WL 11511527, at *1 (D. Kan. Mar. 28, 2017). In making that determination, the court considers:

> 1. Whether the movant is likely to prevail on review;
>
> 2. Whether the movant has established that absent a stay the movant will suffer irreparable harm;
>
> 3. Whether the issuance of a stay will cause substantial harm to the other parties to the proceeding; and
>
> 4. The public interests implicated by the stay.

*Id.* None of the above considerations weigh in favor of staying the discovery order.

## III.    AD ASTRA IS UNLIKLEY TO PREVAIL ON REVIEW

The district judge assigned to this case has previously set forth the legal standard for a motion to review or modify a magistrate judge's nondispositive order:

> Under Fed. R. Civ. P. 72(a), the district court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." The clearly erroneous standard requires this court to affirm any factual determination by the magistrate judge unless, on the entire evidence, it is left with the definite and firm conviction that a mistake has been made. *Hale v. Emporia State Univ.*, No. 16-4182-DDC, 2018 WL 1609552, *1 (D. Kan. Apr. 3, 2018) (citation omitted). A magistrate judge's order is "contrary to law" if it fails to apply or misapplies relevant statutes, case law, or rules of procedure.

*Holick v. Burkhart*, No. 16-1188-JWB-KGG, 2018 WL 4052154, at *2 (D. Kan. Aug. 24, 2018) (internal citation omitted). In reviewing a magistrate judge's nondispositive ruling, the district judge generally does not consider matters not placed before the magistrate judge. *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638, 641 (D. Kan. 2007) (collecting cases).

Ad Astra's motion to stay does not address the legal standard on a motion to review a discovery order and does not specify which portions of the discovery order are clearly erroneous or contrary to law. Rather, Ad Astra generally contends it is likely to prevail because: (1) the

specific details of Ad Astra's selection process are not relevant to the claims or defenses, noting that defendants had contended in one portion of their brief that they needed to obtain the information so that they could potentially exclude evidence; and (2) given that Ad Astra has agreed that it will not argue the files produced for the 50 consumers are representative of the universe of evidence of consumer accounts, "there is no need to reveal the privileged communications requested by the follow-up questions to Interrogatory No. 1." (ECF No. 206, at 3-4.)  Ad Astra further contends that the undersigned misconstrued Ad Astra's position about whether it planned to argue representativeness; therefore, because of this and because of the proposed jury instruction, the precise methodology does not bear on the weight of the evidence. These arguments do not show that the discovery order is clearly erroneous or contrary to law. Rather, they are simply more attempts to recast the record and make its objections a moving target to the ultimate delay of this case.

The undersigned construes Ad Astra's first point to be that the undersigned erred in finding that the interrogatory sought facially relevant information.  It is important to note that the discovery order did not rule on any relevance objection.  Ad Astra did not assert one.  Rather, the court considered relevance as a threshold matter in that all discovery must fit within the confines of FED. R. CIV. P. 26(b)(1).  (ECF No. 204, at 6.)  Although Ad Astra argues the interrogatory seeks irrelevant information insofar as defendants may seek to exclude the material, the court did not find relevance on this basis.  Rather, the court found that the interrogatory seeks the following relevant information: "Specifically, how Ad Astra compiled the list of names is relevant to a jury's determination of what weight to accord the documents produced in response to the parties' agreed narrowed scope of the production requests seeking Lexington Law client communications."  (ECF No. 204, at 8.)  Even Ad Astra's brief notes that "if anything, the

details of the process might relate to the *reliability*—not the *admissibility*—of the evidence introduced at trial." (ECF No. 205, at 3.) Since we all seem to agree that the information would be relevant for at least this purpose, the court finds it unlikely that the district judge would find the undersigned erred by concluding that the interrogatory sought facially relevant information— namely, the clarification necessary to spare the judge and jury from having to endure the parties continuously relitigating their discovery dispute over how to characterize Ad Astra's file-selection process.

Ad Astra's second point is an attempt to both confuse the record and raise new arguments that Ad Astra did not raise before the undersigned. Ad Astra suggests that, because it will not argue the fifty consumers are representative, "there is no need to reveal the privileged communication requested by Defendants' follow-up questions." (ECF No. 206, at 4.) First, this is a new argument not raised in the briefs, at the hearing, or in Ad Astra's email correspondence with the undersigned's chambers. At the hearing on the motion to compel, the undersigned gave Ad Astra an opportunity to clarify whether it still contended the sample was representative—a position it took earlier in the case. This had nothing to do with the court's threshold relevance determination. The court sought this clarification because Ad Astra's position would bear on *defendants' argument of at-issue privilege waiver*. The court needed to determine whether, despite the court's intended resolution of the issue in the pretrial order, the court still needed to address defendants' at-issue waiver argument. Defense counsel stated that if Ad Astra no longer pursued its position of representativeness, defendants would withdraw their arguments regarding at-issue waiver. So even if the district judge were to conclude that the undersigned misunderstood Ad Astra's position about what it intends to argue, that position bears on the court's finding of at-issue waiver, not relevance. Ad Astra never asserted that its email

"clarification" somehow rendered the information sought by the interrogatory irrelevant. Because the undersigned never considered or decided Ad Astra's position of representativeness as it bears on relevance, the court believes it is unlikely the district judge would find this to be error.[3]

The remainder of Ad Astra's arguments in this vein are an attempt to confuse the record. Ad Astra contends its "clarification" along with the magistrate judge's proposed jury instruction are such that its selection methodology does not bear on the weight of the evidence. Crucially, the proposed jury instruction would detail how Ad Astra made the selection and leave it to the jury to decide what weight to accord the evidence. In other words, the undersigned needs to know how Ad Astra compiled the list in order to craft an appropriately neutral jury instruction and prohibit either side form unfairly characterizing the discovery record. So the court requires the interrogatory response. At the final pretrial conference, Ad Astra had "no concerns about Your Honor's process," but it now twists the intended purpose of the jury instruction to make a conflated relevance argument that was never raised to the undersigned. Again, because the undersigned never considered or decided this issue, the court believes it is unlikely the district judge would find this to be error.

Ad Astra erroneously argues that the underlying discovery order requires Ad Astra to "reveal the privileged communication requested by Defendants' follow-up questions." (ECF No. 206, at 4.) For one, the discovery order does not compel Ad Astra to respond to opposing

---

[3] Even if Ad Astra were to unequivocally disavow any intention to argue some variation of representativeness, its selection method would still be relevant because defendants maintain the position that the selected consumer files are *not* representative but instead were cherry-picked, the list was curated by counsel, or the like. Defendants have already signaled their intention to present evidence and argument to this effect, which Ad Astra will inevitably want to rebut. Simply put, Ad Astra cannot unilaterally moot the relevance of this issue because the characterization of the selected files is also relevant from defendants' perspective.

counsel's questions posed by email.   The court compelled a complete response to the interrogatory itself.   During the hearing in connection with the pretrial conference, the court even explained that the interrogatory, by its plain terms, does not even require Ad Astra to distinguish between Ad Astra's personnel versus its counsel's role in the process.   Second, Ad Astra's belated and informal invocation of privilege is another example of its moving-target opposition to the interrogatory and attempt to delay and obfuscate the issues rather than to simply provide a straightforward response.   In Ad Astra's first response to the interrogatory, it asserted a lone relevance objection, which it maintained during the March 24 discovery conference.   But after the undersigned stated that the interrogatory appeared to seek relevant information, Ad Astra removed its relevance objection in its first amended response served on April 3.   In fact, Ad Astra did not assert *any* specific objections but instead provided an entirely nonresponsive response.   During the discovery conference on April 24, Ad Astra still did not assert any objections and, again, Ad Astra asserted no specific objections in its most recent supplemental response.   When the undersigned took up the matter at the hearing in connection with the pretrial conference, Ad Astra's primary concern was its ability to contact former counsel and a former employee who directed the selection process, not that full disclosure might reveal privileged information.   Again, Ad Astra did not raise a privilege objection.

Ad Astra's conclusory assertion of privilege now amounts to an objection that was never properly raised much less proven and which is now waived, as the court concluded in the discovery order.   Indeed, Ad Astra's delay in raising any privilege objection was egregious given the numerous opportunities Ad Astra had to assert privilege but failed to do so—in its initial interrogatory response served on February 27, at the discovery conference with the court on March 24, in its amended interrogatory response served on April 3, at another discovery

conference with the court on April 24, and in its second amended response served on April 28. *See* FED. R. CIV. P. 33(b)(4) (untimely objections are waived unless the court excuses the failure to object for good cause); *In re 650 Fifth Ave. & Related Properties*, 830 F.3d 66, 99 n.30 (2d Cir. 2016) (noting the rule); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection."); *Linnebur v. United Tel. Ass'n*, No. 10-1379-RDR, 2012 WL 1183073, at *6 (D. Kan. Apr. 9, 2012) ("If a responding party fails to lodge timely objections to discovery requests, those objections are deemed waived unless the court excuses the failure for good cause.  The showing of good cause in this context typically requires *at least as much* as would be required to show excusable neglect." (internal quotations omitted)); *Fifth Third Bank v. KC II Insure Servs., LLC*, No. 11-CV-2101 CM/DJW, 2011 WL 5920949, at *2 (D. Kan. Nov. 28, 2011) (defendants waived their objections to interrogatories by not asserting them within the 30-day deadline set forth in Rule 33); *Meridith v. Great Wolf Lodge of Kansas City, LLC*, No. CIV A 07-2529-DJW, 2008 WL 4305110, at *1 (D. Kan. Sept. 18, 2008) ("Because Plaintiffs have failed to serve any timely objections to the interrogatories or requests for production, all objections are deemed waived."); *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 665 (D. Kan. 2004) (failure to assert a relevance objection an initial response to an interrogatory waived the objection because it was untimely).

## IV.  AD ASTRA WILL NOT SUFFER IRREPERABLE HARM

Ad Astra argues it will suffer prejudice and irreparable harm because the discovery order requires Ad Astra to reveal attorney-client communications when there is a possibility that the district judge would not require Ad Astra to provide a more detailed response.  First, for the reasons stated above, Ad Astra has not presented any grounds upon which it is likely to prevail

on a motion for review and, thus, Ad Astra is unlikely to suffer irreparable harm if the court does not stay the discovery order.  Second, as detailed in the discovery order, Ad Astra never asserted an attorney-client privilege objection to the interrogatory.  Indeed, the discovery order concludes that Ad Astra waived the objection (if it even applied) but, because Ad Astra never asserted it, it is unknown to what extent, if any, privilege would attach in the first instance.

To that end, this case stands in contrast to the circumstances before the court in the case Ad Astra cites, *In re Motor Fuels Temperature Sales Practices Litigation*.  No. 07-MD-1840-KHV, 2010 WL 3724665, at *2 (D. Kan. Sept. 16, 2010).  There, the magistrate judge was considering an express attorney-client privilege objection that was presented to the court.  The party moving for a stay argued the magistrate judge applied an incorrect legal standard when ordering documents to be submitted for an *in camera* review.  *Id.*  Unlike that case, here, the undersigned never ruled on the merits of an attorney-client privilege objection because Ad Astra never properly asserted one.  Rather, the court found waiver because Ad Astra did not timely assert an objection.  And Ad Astra does not set forth any argument suggesting how that finding is in error.  But even if the district judge were to disagree with the undersigned's conclusion regarding waiver, that would not mean that he would sustain an attorney-client privilege objection that Ad Astra still has not formally asserted or in any way supported.  The amorphous possibility that responding in full to the interrogatory might call for the disclosure of privileged information when Ad Astra clearly waived any such privilege objection does not demonstrate irreparable harm.  It demonstrates the position Ad Astra put itself in.

V.     **A STAY WOULD CAUSE SUBSTANTIAL HARM TO THE OPPPOSING PARTIES AND TO THE COURT BECAUSE IT DELAYS THE ENTIRE PROCEEDING & PUBLIC INTERESTS DO NOT FAVOR A STAY**

Ad Astra argues that granting a stay would not cause harm to any party or to the court because it would not delay either party's preparation for trial.  This is inaccurate.  As explained above, the undersigned contemplates including a proposed jury instruction in the pretrial order based on Ad Astra's forthcoming supplemental response.  Because of this, the court cannot yet finalize the pretrial order, and the court has temporarily suspended the dispositive motion deadline and has not yet asked the district judge to assign a trial date.   Ad Astra has unnecessarily dragged out this dispute—beginning with its dismissive tone ("We are done responding to this fiction.") when defendants first tried to resolve this issue between counsel months ago and continuing through a months-long exercise of three deficient interrogatory responses, two discovery conferences, a motion, a hearing, this motion, and now a forthcoming motion for review.  Ad Astra's further attempt to delay providing a substantive interrogatory response is halting the orderly and efficient progress of this case for no apparent reason because, as explained above, Ad Astra has not presented any grounds upon which it is likely to prevail on review.

Ad Astra also argues the public has an interest in ensuring that attorney-client communications remain protected.  Although this is true, Ad Astra did not preserve any privilege claim.  Ad Astra's gamesmanship through unsupported rotating objections and repeated refusals to simply provide a substantive interrogatory response have delayed this case and unnecessarily run up costs.  The litigants, the court, and the public interest all favor the just, speedy, and inexpensive determination of this action.  FED. R. CIV. P. 1; *see Spears v. Mid-Am. Waffles, Inc.*, No. 11-2273-CM, 2012 WL 12837278, at *3 (D. Kan. Mar. 8, 2012) ("[T]he public has a general interest in prompt resolution of claims.").

In sum, none of the above criteria favor a discretionary stay of the discovery order.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Stay the Magistrate Judge's Order granting Defendants' Motion to compel a Complete Response to Interrogatory No. 1 (ECF No. 205) is denied.

**IT IS SO ORDERED.**

Dated June 12, 2020, at Topeka, Kansas.

<u>s/ Angel D. Mitchell</u>
Angel D. Mitchell
U.S. Magistrate Judge

16