IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AD ASTRA RECOVERY SERVICES, INC.,

    Plaintiff,

v.

JOHN CLIFFORD HEATH, *ET AL.*,

    Defendants.

Case No. 18-1145-JWB-ADM

## MEMORANDUM AND ORDER

This matter comes before the court on Defendants' Motion Seeking Attorneys' Fees. (ECF No. 212.) After multiple discovery conferences and deficient supplemental interrogatory responses, defendants filed a motion to compel a sufficient response to a single interrogatory, which the court granted in full. *See Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB-ADM, 2020 WL 3034810, at *1 (D. Kan. June 5, 2020). Defendants now seek an award attorneys' fees for time spent on the motion to compel and on this motion for fees.

For the reasons explained below, plaintiff's conduct on this discovery dispute was unreasonable and legally unsupported. Defendants conferred with plaintiff in good faith on multiple occasions to attempt to obtain the information without court involvement. Even after the court became involved through multiple discovery conferences, plaintiff refused to simply provide a responsive answer to the interrogatory, instead forcing the matter to motion practice and taking positions that were not substantially justified. Even in response to this motion for fees, plaintiff does not justify its positions on the motion to compel. Instead, plaintiff points a relevance objection that it lodged in response to the initial interrogatory but later removed and abandoned by the time the court ruled on the motion to compel. Plaintiff also argues the court should not award

fees in connection with this motion because plaintiff previously prevailed in large part on other discovery motions where the court did not award fees. This argument is frivolous. Plaintiff's conduct on this discovery motion is the exact conduct that the FED. R. CIV. P. 37(a)(5)'s fee-shifting provision was designed to curb. These tactics run up costs for litigants and waste time and resources. The court gave plaintiff every opportunity and incentive to provide a sufficient interrogatory response without triggering the costs associated with formal motion practice. For these reasons, explained in more detail below, the court grants defendants' motion insofar as the court will award attorneys' fees. However, the court denies the motion insofar as the court will reduce the award to account for prevailing market rates in this district.

## I.    BACKGROUND

Plaintiff Ad Astra Recovery Services, Inc. ("Ad Astra") is a debt collector and credit agency that alleges defendants "engaged in a fraudulent credit-repair scheme designed to bombard debt collectors with false credit dispute letters with the intention of deceiving debt collectors . . . and frustrating their efforts to collect legitimate debts." (Am. Compl. ¶ 3 (ECF No. 120).) Ad Astra asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1962(c) and (d), and a Kansas common law fraud claim.[1] Ad Astra has named as defendants: (1) the law firm, John C. Heath, Attorney at Law, PLLC d/b/a Lexington Law ("Lexington Law"); (2) certain attorneys with the firm: John Clifford Heath, Kevin Jones, Adam C. Fullman; (3) other related corporate entities that Ad Astra alleges directed and/or participated in the scheme: Progrexion Holdings, Inc.; Progrexion Teleservices, Inc.; PGX Holdings, Inc.;

---

[1] Ad Astra also pleaded a claim for tortious interference with contractual relationships, but Ad Astra informed the court during the pretrial conference that it intends to abandon that claim.

Progrexion ASG, Inc.; Progrexion Marketing, Inc.; Progrexion IP, Inc.; and (4) Jeffrey R. Johnson, CEO of the Progrexion entities (collectively "defendants").

Relatively early in discovery, the parties agreed to limit the scope of certain requests for production ("RFPs") seeking communications between the defendant law firm and its consumer clients because full compliance would require production of records from more than 14,000 of the firm's clients. The parties agreed that the firm could produce responsive documents from a sampling of clients, capped at 100, with Ad Astra selecting the clients in increments of 50. (ECF No. 54.) Defendants later became concerned that the list was not a representative sample of Lexington Law's client base but that Ad Astra intended to argue that it was. (ECF No. 192-2, at 4-5.) Defense counsel emailed Ad Astra's counsel to ask about the manner of selection. (*Id.*) Ad Astra's counsel dismissed these inquiries by responding, "We are done responding to this fiction." (*Id.* at 2.)

On January 28, 2020, defendants served Interrogatory No. 1. It asked Ad Astra to: "Explain in detail the process used by Ad Astra to select the list of fifty consumers included on the list produced by Ad Astra titled 'Random Sampling of Lexington Law Consumers in accordance with May 31, 2019 Order.'" (ECF No. 192-3, at 7.) Ad Astra's initial response incorporated its general objections, asserted a relevance objection, and provided a non-responsive answer. (ECF No. 192-3, at 3-4.) During a discovery conference with the court on March 24, defendants raised the issue of Ad Astra's deficient interrogatory response. Defendants explained that they were concerned that Ad Astra would attempt to present the documents as being from a random or representative sampling of Lexington Law's client base, but defendants had no way to test that assertion because they did not know how Ad Astra selected the names. The court asked Ad Astra what objection Ad Astra lodged to the interrogatory that it continued to maintain, to which Ad Astra responded

3

that it asserted a relevance objection. (ECF No. 192-5, at 31-32.) The court did not issue any substantive ruling but told the parties that, based on their arguments, the interrogatory appeared to seek relevant information. (*Id.* at 34.) At that point, Ad Astra agreed to supplement its response. (*Id.* at 36.)

Ad Astra served an amended response on April 3. The amended response removed the relevance objection and Ad Astra's incorporation of its general objections, and the amended response did not assert any further objections. It stated only that Ad Astra attempted to select 50 consumers from a client list that Lexington Law had produced, but Ad Astra believed the client list was inaccurate so "Ad Astra compiled a list of 50 consumers who Ad Astra had reason to believe had used Lexington Law's services at some point in time." (ECF No. 192-6, at 3-4.)

During another discovery conference with the court on April 24, defendants again raised issues relating to deficiencies in Ad Astra's amended response. The court agreed that the response did not provide the substantive information sought by the interrogatory and included much non-responsive verbiage. On April 28, Ad Astra served another supplemental response—again, without asserting any further objections. The second amended response spans over 3 pages (ECF No. 192-8, at 3-6) and, as explained in the court's underlying order, is largely non-responsive and evasive. The supplemental response still contained the same problematic language the court had earlier noted during the discovery conference. Following this response, the parties exchanged follow-up emails. (ECF No. 192-9, at 2-3.) Ad Astra's counsel provided answers to several questions but refused to respond to certain questions on the grounds that they called for the disclosure of attorney-client privileged information. (ECF No. 192-10, at 3; ECF No. 196-4, at 1-3; ECF No. 192-11, at 2.)

Defendants then moved to compel, asserting the second amended response did not provide a complete answer and that the selection of the 50 consumers is not attorney-client privileged, and argued the motion at a hearing on May 29.  The court ultimately granted the motion to compel, finding Ad Astra's interrogatory response was insufficient—both because it contained nonresponsive and argumentative language and because it omitted key details about its selection process.  *See Ad Astra*, 2020 WL 3034810.  Because Ad Astra did not timely assert any attorney-client privilege or work-product objection to the interrogatory, the court also found that Ad Astra waived any objection it may have had and that there was not good cause to excuse the failure by allowing Ad Astra to belatedly assert objections that should have been apparent from the outset. *Id.* at *6-*7.  The court also found that Ad Astra's follow-up emails to the court were insufficient to retract Ad Astra's position of representativness because Ad Astra apparently still planned to argue the consumer files are representative in some fashion, whether "representative in the colloquial sense," as part of a "pattern of misconduct," or some variation thereof.  *Id.* at *7.  Therefore, Ad Astra waived any privilege by putting its file-selection process at issue.  *Id.*

Because the court granted the motion in full, FED. R. CIV. P. 37(a)(5)(A) required consideration of whether to award defendants their fees incurred in bringing the motion. *Id.* at *9. The court directed the parties to confer to determine if they could reach agreement on the issue of fees but noted that the current record favored an award of fees.  The court specifically pointed to "Ad Astra's initially dismissive ('We are done responding to this fiction.') and hide-the-ball tactics; its intransigence in unnecessarily dragging out a substantive response for months in disregard of the court's repeated admonitions that it should simply answer the interrogatory; its largely non-responsive, evasive, and argumentative second amended interrogatory response; and its gamesmanship with privilege[.]"  *Id.*

5

During the parties' meet-and-confer efforts regarding fees, defendants initially sought $20,000, representing "a conservative and discounted portion of the attorneys' fees" defendants had incurred in the hopes that the offer would avoid motion practice. (ECF No. 213, at 3.) Ad Astra refused to pay any portion of the fees. So Defendants PGX Holdings, Inc., Progrexion ASG, Progrexion Marketing, Inc., Progrexion IP, Inc., and Jeffrey R. Johnson (collectively "Progrexion") filed this motion seeking an award of fees in the amount of $25,000. Progrexion explains that 6 attorneys spent 43 hours researching, drafting, and arguing the motion, including: (1) a senior partner billing at $1,110 per hour; (2) a junior partner billing at $895 per hour; (3) a senior associate billing at $775 per hour; and (4) three junior associates, each billing at $580 per hour. Altogether, the hours billed by these attorneys amounts to $30,703.50. (ECF No. 213-1, at 4.) Progrexion reduced this amount, seeking fees for time expended by only 2 of the 6 attorneys— the senior partner and one of the junior associates. (*Id.*) Progrexion also omitted time entries for internal communications regarding the motion, bringing the total hours expended from 43 to 29.5 and reducing fees to $20,582, which Progrexion rounded down to $20,000. (*Id.*) Progrexion states it requested a discounted amount to avoid formal briefing on another motion. (*Id.*) But because its conference efforts have not succeeded, Progrexion now seeks additional fees in the amount of $5,000 for bringing this motion. (*Id.*) It estimates that the actual fees incurred in researching and drafting this motion will amount to $18,870, based on a projected total of 28.5 hours. (*Id.*)

## II. AD ASTRA'S POSITION WAS NOT SUBSTANTIALLY JUSTIFIED, AND OTHER CIRCUMSTANCES DO NOT MAKE AN AWARD OF FEES UNJUST

The court considers the specifics of the individual case in determining whether to award fees under FED. R. CIV. P. 37. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314 (11th Cir. 2011). Rule 37(a)(5)(A) provides that if a motion to compel is granted, the court "must" award the movant its reasonable expenses incurred in making the motion, including

6

attorneys' fees unless: (1) the movant filed the motion before attempting to confer; (2) "the opposing party's nondisclosure, response, or objection was substantially justified;" or (3) "other circumstances make an award of expenses unjust." Generally, the party opposing the request for fees bears the burden of showing that special circumstances would not support the award. *Hyde & Drath v. Baker*, 24 F.3d 1162, 1172 (9th Cir. 1994); *see also* 8B Charles Alan Wright & Arthur R. Miller, *et al.*, FEDERAL PRACTICE AND PROCEDURE § 2288 (3d ed.) (stating that the burden is on the losing party to avoid the assessment of expenses and fees). Here, Ad Astra argues both that its position was substantially justified and that other circumstances make an award of fees unjust.

### A. Substantial Justification

"Substantially justified" within the meaning of Rule 37 means "a genuine dispute or if reasonable people could differ as the appropriateness of the contested action." *Lester v. City of Lafayette, Colo.*, 639 F. App'x 538, 542 (10th Cir. 2016) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Substantial justification does not require a high degree of justification, but rather the position must be "justified to a degree that could satisfy a reasonable person." *Id.* Ad Astra argues that its position was substantially justified, for two primary reasons: (1) according to Ad Astra, it made good-faith efforts to resolve the dispute by amending its response multiple times—including providing a paragraph explaining its methodology—and by answering follow-up questions, and (2) Ad Astra was justified in asserting its initial relevance objection because it had a reasonable basis to believe that its selection methodology bore no basis to the claims or defenses in this case.

These arguments miss the mark in that they do not go to whether the position Ad Astra took *in response to the motion to compel* was substantially justified. The fact that Ad Astra served multiple deficient supplemental responses and answered follow-up questions because the

supplemental responses were deficient in no way shows that the position Ad Astra took in response to the motion to compel was substantially justified. The same is true of Ad Astra's relevance objection, which Ad Astra asserted initially but had withdrawn by the time the second amended interrogatory response was before the court. Just because a party may have asserted a substantially justified objection on a prior discovery response at an earlier point in time does not make its position in response to a motion to compel substantially justified when that objection was never before the court.[2] The advisory committee's notes make clear that the issue is whether "the losing party is substantially justified in carrying the matter to court." *See* FED. R. CIV. P. 37(a)(4) advisory committee's note to the 1970 amendment. In short, it was neither Ad Astra's efforts at supplementation, nor answers to follow-up questions, nor its relevance objection that carried the matter to the court.

Rather, most of the court's ruling on the motion to compel concerned the sufficiency of Ad Astra's second amended interrogatory response. The court found that the bulk of this response consisted of nonresponsive and argumentative verbiage. *Ad Astra*, 2020 WL 3034810, at *5. The court offered the same opinion of this language at the discovery conference preceding the motion, but Ad Astra nevertheless pressed forward with serving a second amended response that contained the same problematic language but added a single paragraph of responsive information. And

---

[2] The court considered the relevance of the interrogatory but did so as a threshold matter in that all discovery must be relevant to the claims or defenses in the case. *Ad Astra*, 2020 WL 3034810, at *3 ("Once relevance is established, the court considers the discovery objections and the sufficiency of the response."). The court also noted that Ad Astra had removed its relevance objection. *Id.* Ad Astra relies on *Kannaday v. Ball* for its finding that a relevance objection, although overruled, was substantially justified given the nature of the documents at issue and the claims in the case. 292 F.R.D. 640, 642 (D. Kan. 2013). But *Kannaday* is distinguishable because *Kannaday* opines on the justification for an objection asserted in response to the motion to compel, not on an objection asserted in a prior incarnation of a discovery response not preserved or relied upon in the briefing before the court. *See id.* at 650 (addressing a relevance objection the responding party preserved and asserted in response to the motion to compel).

although the lone responsive paragraph included some of the steps Ad Astra took to identify consumers, the court found that it nevertheless omitted key details and steps Ad Astra took to winnow the list of names to 50. *See id.* ("At best, the response is partially responsive but wholly evasive in substance[.]"). The deficiencies in the second amended response are particularly glaring when compared to Ad Astra's *third* supplemental response after the court compelled Ad Astra to provide a substantive response to the interrogatory. That third supplemental response is comprehensive and straightforward. It is what Ad Astra should have served without the need for a motion to compel. Thus, Ad Astra has not shown that it was substantially justified in standing by its second amended response on the motion to compel.

Although Ad Astra seems to characterize its supplementations and willingness to answer certain follow-up questions as grounds for relief from fees, the court disagrees. Ad Astra unnecessarily drug its heels and ran up discovery costs without having a legally supported basis to do so. The court already characterized these actions as amounting to a "moving-target opposition to the interrogatory and attempt to delay and obfuscate the issues rather than to simply provide a straightforward response," not a meaningful attempt to work with opposing counsel to resolve a genuine objection. *See Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB-ADM, 2020 WL 3163199, at *6 (D. Kan. June 12, 2020) (denying Ad Astra's motion to stay the discovery order pending review).

Considering the award of fees in light of the entire record of this dispute only reinforces the conclusion that fees are warranted to reimburse Progrexion for a mere fraction of the time their counsel spent attempting to obtain responsive information and to dissuade Ad Astra from engaging in these tactics in the future. Specifically, the court held discovery conferences on Ad Astra's response and supplemental response on March 24, and April 24, respectively. It took up the matter

9

again on defendants' motion to compel and at a hearing on the motion on May 29. And the court took up the matter again when Ad Astra moved to stay the order so it could seek review by the district judge. Although the court acknowledged that parties are certainly entitled to object to discovery orders, the court declined to stay the discovery order in large part because Ad Astra had not even identified the applicable legal standard for review, much less set forth grounds that would meet that standard. It is certainly Ad Astra's prerogative to aggressively litigate discovery disputes, but it must have a supportable basis to do so. Here, Ad Astra has not demonstrated that reasonable minds could differ about the position it took in response to the motion to compel—largely because Ad Astra has not addressed the position it took in response to the motion to compel. The remainder of the circumstances Ad Astra has set forth amount to unnecessary delay in this case and do not represent that any legal position Ad Astra took in response to the motion was substantially justified.

### B. Other Circumstances

Ad Astra also argues that defendants' own conduct during discovery makes an award of fees unjust, noting that the court has ruled in Ad Astra's favor on a number of discovery issues raised in motions to compel and on its motion for spoliation sanctions. Ad Astra argues that even though it has filed six motions to compel, the court has never granted fees in connection with those motions. Ad Astra also notes that in a portion of its interrogatory response (that the court found was nonresponsive), it offered that defendants could select an additional 50 consumers' names for production of files and that defendants did not take Ad Astra up on this offer.

These arguments are frivolous. The court has and will continue to evaluate the propriety of fee awards or other sanctions on a motion-by-motion basis. And the fact that Ad Astra offered up another discovery mechanism does not give Ad Astra carte blanche to take unreasonable

10

positions on this discovery dispute. These circumstances do not make an award of fees unjust as to the motion to compel that was before the court.

### III. PROGREXION'S COUNSEL'S REQUESTED HOURS ARE REASONABLE, BUT ITS RATES DO NOT REFLECT THE PREVAILING MARKET RATE FOR THE RELEVANT COMMUNITY

Because the court has not found that defendants filed the motion to compel before attempting to confer in good faith; that Ad Astra's position was substantially justified; or that other circumstances make an award unjust, Rule 37 mandates an award of fees. *See* FED. R. CIV. P. 37(a)(5)(A); *see also Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1182 (10th Cir. 2015) (fees must "ordinarily be imposed to compensate the opposing party for its expense"); *Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*, 273 F.R.D. 372, 378–79 (S.D.N.Y. 2011) (fee-shifting is mandatory under Rule 37(a)(5) when none of the three enumerated exceptions are present and noting that the mildest sanction available to is order reimbursement of the opposing party for expenses caused by the failure to cooperate).

The court must independently analyze the reasonableness of the requested attorneys' fees. *See King v. Fleming*, 899 F.3d 1140, 1155 (10th Cir. 2018) (reviewing an award of fees as a Rule 11 sanction). "The proper procedure for determining a reasonable attorneys' fee is to arrive at a lodestar figure by multiplying the hours [] counsel reasonably spent . . . by a reasonable hourly rate." *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005); *see, e.g.*, *King*, 899 F.3d at 1155; *accord Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998); *see also, e.g.*, *Kayhill v. Unified Gov't of Wyandotte Cty.*, 197 F.R.D. 454, 459 (D. Kan. 2000) (using the lodestar method to calculate an award of attorneys' fees as a Rule 37 sanction).

### A. Reasonable Time Expended

To demonstrate reasonable time expended, the party seeking fees must submit time records reflecting all hours for which it requests compensation and how the attorneys allocated those hours to specific tasks. *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000). The fee applicant should exercise billing judgment with respect to the number of hours worked and billed. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Billing judgment consists of winnowing hours actually expended down to hours reasonably expended. *Praseuth*, 406 F.3d at 1257.

Progrexion has submitted its counsel's declaration and a line-item accounting of time spent on the motion to compel. (ECF No. 213-1.) The statement reflects the time spent by 6 attorneys working on the motion for a combined total of 43 hours, including time spent conferring with each other regarding the motion, as well as researching, drafting, proofreading, and cite-checking the briefs. (*Id.* at 12-13.) Not included in the 43 hours is otherwise compensable time spent attempting to confer with Ad Astra, preparing for or attending two discovery conferences involving the interrogatory, or the time spent arguing the motion at the May 29 hearing. *See Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 507 (7th Cir. 2016) ("Rule 37(a) sanctions should encompass all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly." (internal quotations omitted)).

Ad Astra argues the billing statement contains duplicative entries, noting that 6 attorneys worked on the same motion. Ad Astra wholly ignores that Progrexion eliminated entries for 4 of those 6 attorneys. Moreover, Ad Astra does not point to any specific entries where attorneys' efforts overlapped. Ad Astra also makes the conclusory assertion that 29.3 hours spent on a motion to compel is excessive. The court disagrees and find that the 29.3 hours billed on this particular motion are wildly understated. The court bases this conclusion on the briefing on the motion to

compel itself, the fact that the motion to compel involved an important discovery dispute in a somewhat complex RICO case with wide-ranging potential implications to defendants' business practices (as evidenced by Ad Astra's months-long intransigence in providing a substantive interrogatory response), the line-item descriptions of the activities performed, Progrexion's exercise of billing judgment in eliminating multiple entries appearing quite reasonable and otherwise compensable, and not including any entries for time spent at multiple discovery conferences regarding the interrogatory, the hearing on the motion, or the parties' meet-and-confer efforts. If anything, Progrexion's 29.3 hours represents its initial attempts to compromise with Ad Astra to avoid this motion. For whatever reason, Progrexion chose to stick with the same discounted time on its motion seeking fees.

Progrexion also seeks an additional $5,000 for fees incurred in filing this motion, hours which are generally compensable. *See id.*; *see also Case v. Unified Sch. Dist. No. 233, Johnson Cty.*, 157 F.3d 1243, 1254 (10th Cir. 1998) (award of fees to the prevailing party in a civil rights case could include work performed in preparing the application). Progrexion's counsel's billing statement reflects a total of 21.5 hours expended on the motion and a projected 7 hours spent on the reply brief. Ad Astra does not specifically address the billing statement as to these entries or Progrexion's request for an additional $5,000 (which would reflect billing at a rate of only $175.44 per hour). Nevertheless, the undersigned finds the entries to be reasonable and the lesser-requested amount to be a more-than-reasonable exercise of billing judgment.

### B. Reasonable Hourly Rate

"To determine what constitutes a reasonable rate, the district court considers the prevailing market rate of the relevant community." *Lippoldt v. Cole*, 468 F.3d 1204, 1224 (10th Cir. 2006) (internal quotations omitted); *see also Perdue v. Kenney*, 559 U.S. 542 (2010) (same). The Tenth

Circuit has described the relevant community as "the area in which the litigation occurs" or "the area in which the court sits." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983); *Case*, 157 F.3d at 1256. Unless the case "is so unusual or requires such special skills that only an out-of-state attorney possesses, the fee rates of the local area should be applied even when the lawyers seeking fees are from another area." *Lippoldt*, 468 F.3d at 1225.

Progrexion's billing statement reflects six attorneys working on the motion to compel billing at rates ranging from $1,110 per hour to $580 per hour. According to Mr. Bennett's declaration, these rates "are within market for a complex civil ligation matter handled by a national law firm located in Washington, D.C. and are appropriate for each attorney's level of experience." (ECF No. 213-1, at 5.) But, as Ad Astra notes, the relevant community in this case is the District of Kansas, where the litigation occurs. Progrexion has not suggested or shown a lack of skilled attorneys practicing in this district capable of handling this type of case. Indeed, a number of local practitioners do. But Ad Astra does not suggest or provide evidence of what it contends is the relevant market rate. Rather, Ad Astra seems to suggest that the court should not award fees at all because Progrexion has not presented evidence establishing the relevant market rate.

However, as explained above, Rule 37(a)(5) mandates an award of fees under the circumstances. *See also Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 678-80 (10th Cir. 2012) (stating that Rule 37(a)'s fee provisions are meant to deter a party from bring to the court "frivolous requests for discovery or objections" and noting that the rule often requires the imposition of fees under certain circumstances). Moreover, although the court must consider the parties' evidence of the prevailing market rates, in the absence of adequate evidence the court may "in its discretion, use other relevant factors, including its own knowledge, to establish the rate." *Lippoldt*, 468 F.3d at 1225; *see also Los Alamos Nat'l Bank, N.A. v. Fid. Bank*, No. 1:18-

14

CV-00613-KG-JHR, 2019 WL 4816692, at *4 (D.N.M. Oct. 1, 2019) (awarding fees to a prevailing party on a motion to compel and relying on the court's own knowledge and other factors where the application for fees did not include a discussion of reasonable market rates). Here, the record reveals a lack of evidence establishing the relevant market rate. Therefore, the court will rely on its own knowledge to set counsel's rates.[3]

The undersigned has reviewed the credentials of the attorneys working on the motion to compel, as listed on their law firm's website.[4] Based on this limited information and the court's own knowledge of local market rates, the court finds that a blended hourly rate of $500 represents a reasonable local market rate for a team lawyers of reasonable comparable skill, experience, and reputations, performing similar work within the District of Kansas.[5] The blended hourly rate also reflects that attorneys billing only 29.3 hours of time on the underlying discovery motion would represent efficient and skilled litigators who would merit a rate on the higher end of reasonable. Therefore, the court awards a blended hourly rate of $500 for the 29.3 hours of time billed for the briefing on the motion to compel. The court also approves Progrexion's request of $5,000 for the briefing on this motion, which represents a projected 28.5 hours expended on the briefing of this motion at a rate of $175.44 per hour.

---

[3] Prior to taking the bench in March 2019, the undersigned was a partner at a large Kansas City law firm with a national practice representing mostly Fortune 100 clients in complex, high-value cases.

[4] WILLIAMS & CONNOLLY LLP, https://www.wc.com/Attorneys (last visited July 22, 2020).

[5] Because of the limited information provided in the briefing and publicly available on the firm website about the individual attorneys working on the motion on compel, the undersigned finds that a blended hourly rate (as opposed to assigning projected market rates for each attorney based on scant information) provides a more accurate and fair way to establish the prevailing market rate under these circumstances. *See League of Women Voters of Pennsylvania v. Commonwealth of Pennsylvania*, 921 F.3d 378, 387 (3d Cir. 2019) (finding no error in the district court's use of a blended hourly rate in a case where the court reduced rates billed by Washington, D.C. lawyers to reflect the prevailing local rate in Philadelphia).

## IV.  CONCLUSION

Because none of the enumerated exceptions set out in Rule 37(a)(5) are present, the rule mandates an award of attorney fees.  To that end, the court awards Progrexion fees in the amount of $19,650, which represents $ 14,650 for briefing on the motion to compel (29.3 hours billed at a rate of $500 per hour) plus $5,000 for the present motion (28.5 projected hours at a rate of $175.44).  Ad Astra shall tender payment to Progrexion by **August 12, 2020**, and shall file a notice of compliance upon making the payment.

**IT IS THEREFORE ORDERED** that Defendants' Motion Seeking Attorneys' Fees (ECF No. 212) is granted in part and denied in part.  The court awards Progrexion its reasonable attorneys' fees in the amount of $19,650.

**IT IS SO ORDERED.**

Dated July 29, 2020, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
