IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AD ASTRA RECOVERY SERVICES, INC.,

        Plaintiff,

v.                                                                                   Case No.  18-1145-JWB

JOHN CLIFFORD HEATH, ESQ., et al.,

        Defendants.

**MEMORANDUM AND ORDER**

This matter comes before the court on Plaintiff's motion for review and objection to Magistrate Judge Mitchell's order.  (Doc. 250.)  The motion has been fully briefed and the court is prepared to rule. (Docs. 251, 255, 259.)  For the reasons stated herein, Plaintiff's objection to the order is OVERRULED.

**I.     Facts and Procedural History**

Plaintiff Ad Astra is a debt collector and credit agency.  Plaintiff alleges that Defendants, Lexington Law, certain attorneys with the law firm, and other related corporate entities, "engaged in a fraudulent credit-repair scheme designed to bombard debt collectors with false credit dispute letters with the intention of deceiving debt collectors."  (Doc. 120 at ¶ 3.)   Plaintiff brings claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1962(c) and (d), and a Kansas common law fraud claim.  (Doc. 257.)  Essentially, Plaintiff alleges that Defendants engaged in a fraudulent scheme by sending mass credit-dispute letters to creditors in the consumer-clients' names without disclosing that Lexington Law prepared the letters and transmitted them.  Plaintiff claims that this was designed to circumvent the Fair Credit Reporting Act and triggered Plaintiff to perform certain investigative requirements.  (Doc. 257 at 19-20.)

Plaintiff alleges that this violates RICO in that Defendants utilized the mails and interstate wires to engage in this fraudulent scheme. (*Id.* at 31.)

During discovery, the parties agreed to limit the scope pertaining to requests for production of documents that sought communications between Lexington Law and its clients due to the large number of clients (14,000). (Doc. 54 at 2.) The discovery order regarding the documents stated as follows:

> The parties agreed that Lexington Law could produce responsive documents from a random sampling of clients. The court ordered that, at this point, the random sampling would be capped at 100 clients, with Ad Astra selecting the clients. By June 14, 2019, Ad Astra shall provide Lexington Law with the names of 50 clients (with the names of the remaining 50 clients to be served at a later date). For the first 50 clients, Ad Astra shall produce responsive documents and a privilege log by June 28, 2019.

(*Id.* at 2.)

In accordance with that order, Plaintiff then served Defendants with a list of 50 consumers that was titled "Random Sampling of Lexington Law Consumers in accordance with May 31, 2019 Order." (Docs. 192-12, 192-13.) In December 2019, counsel exchanged emails in which Defendants sought information regarding how the 50 consumers were selected after concerns emerged that the consumers were largely affiliated with only one payday lender even though Plaintiff is affiliated with several entitles. (Doc. 192-2.) Defendants were concerned that Plaintiff was going to take the position that the 50 consumers were a representative sample of Lexington Law's client base at trial. Instead of responding to the question about how the 50 consumers were selected, e.g. was a random number generator used, Plaintiff's counsel stated that "[w]e are done responding to this fiction." (*Id.* at 1.)

On January 28, 2020, Defendants served Interrogatory No. 1 that asked Plaintiff to: "Explain in detail the process used by Ad Astra to select the list of fifty consumers included on the

2

list produced by Ad Astra titled 'Random Sampling of Lexington Law Consumers in accordance with May 31, 2019 Order.'" (Doc. 192-3 at 7.) Plaintiff's initial response incorporated its general objections, asserted a relevance objection, and stated as follows:

> Plaintiff states that on February 4, 2020, following the parties' meet and confer, Plaintiff agreed to Defendants' request that Defendants be permitted to select an additional 50 consumers whose files would be produced and whose names would be run as ESI search terms by Plaintiff. This agreement was a good faith effort to address Defendants' purported concerns regarding the methodology used by Plaintiff to select the original 50 consumers. To date, however, Defendants have declined to provide Plaintiff with a list of 50 additional consumers.

(Doc. 192-4 at 3.)

Magistrate Judge Mitchell held a discovery conference on March 24 during which Defendants raised Plaintiff's deficient interrogatory response. (Doc. 223 at 3.) Defendants informed the court that they were concerned that Plaintiff was going to present the documents from the 50 consumers as being from a random or representative sample but that they could not test that assertion without being provided with the manner in which Plaintiff selected the names. The court asked Plaintiff what objection it would continue to maintain to the interrogatory. (*Id.*) Plaintiff stated that it asserted a relevance objection to which the court commented that the interrogatory appeared to seek relevant information. The court did not rule on the objection during the conference but informed Plaintiff that if the court was presented with a motion to compel, based on what was presented during the conference, the court would require a response to the interrogatory. (Doc. 255-3 at 44.) ("But certainly the idea was that Ad Astra was going to come up with, you know, 50 clients and select those, but that it was going to be somehow representative.") Plaintiff then agreed to supplement its response. (*Id.* at 45.)

The amended response was served on April 3. In it, Plaintiff removed the previously stated objections and did not assert any further objections. It stated that Plaintiff attempted to select 50

consumers from the client list produced by Defendants but determined the client list was inaccurate for various reasons. Plaintiff then "compiled a list of 50 individuals who Ad Astra had reason to believe had used Lexington Law's services at some point in time." (Doc. 192-6 at 4.) Another discovery conference was held and the deficiencies were raised with the court. Again, Plaintiff agreed to provide a supplemental response. (Doc. 223 at 4.) On April 28, Plaintiff served its second amended response ("SAR"). Although it spanned three pages, Magistrate Judge Mitchell determined that it was largely non-responsive and evasive. (*Id.*) In summary, the magistrate judge held that it was only a "high-level overview of the selection process" and omitted key information "used to winnow and adjust the list of consumers." (Doc. 204 at 1.) The SAR repeated the same statement regarding the inaccuracies from the client list. It then stated that it searched "its collection notes for 'Lexington' and compiled a list of approximately 100 consumers that had collection notes…that provided, in sum and substance, 'I told them not to dispute this.'" (Doc. 251-27 at 5.) The parties exchanged several emails following the SAR which included certain questions about the process used to select the names. In response to a question about the search criteria and how many records were searched, Plaintiff's counsel did not state how many total records were searched but stated that there were 5,650 "hits for 'Lexington'" and from this "universe" Plaintiff's "personnel compiled a list of 100 consumers." (Doc. 196-3 at 1.) Plaintiff's counsel refused to respond to certain questions on the grounds that they called for disclosure of attorney-client privileged information. (Doc. 223 at 4.) Plaintiff's counsel also refused to answer follow-up questions to the email responses, including "How many total records were searched, resulting in the 5,650 hits?" and "What criteria were used to select the final 100 from 'the universe of 5,650?'" (*See* Doc. 196 at 1; 196-4 at 1-2.) Plaintiff asserts that it did not answer the follow-

4

up questions "seeking minute details" because it was "clear" that "Defendants would continue to harass Plaintiff." (Doc. 196 at 2.)

Defendants moved to compel, arguing that the SAR was not a sufficient response, the interrogatory was relevant, and the selection of the names was not subject to the attorney-client privilege. (Docs. 192, 204, 223 at 5.) Plaintiff argued that it "more than adequately responded to Interrogatory 1" in the SAR and the answers to the follow-up questions. (Doc. 196 at 2.) Plaintiff stated that it "has never claimed that the 50 consumers it selected are statistically valid or representative of a population of 5 million, and Plaintiff has no intention of introducing expert testimony to this effect. Instead, Plaintiff's position is and always has been that the 50 consumers are 'representative' in a colloquial sense." (*Id.* at 3.) Plaintiff then quoted from its SAR as follows:

> The 50 consumers selected by Ad Astra retained Lexington Law at different times over a four year period (between March 2, 2014 and December 3, 2018) and resided in at least 11 different states.... [T]hese consumers were involved in at least 634 phone calls with Defendants between September 19, 2014 and September 11, 2019, and spoke with at least 502 different intake agents, "hotswap" agents, and/or paralegals of Defendants. Given these metrics, **Ad Astra is confident that the 50 consumers it selected are representative of Lexington Law's overall client base**, and that the audio recordings produced for these consumers accurately reflect the training Defendants' employees receive, as well as the improper tactics utilized by Defendants in connection with their fraudulent scheme. Nevertheless, if Defendants have concerns about the representativeness of these individuals and/or of the audio recordings, Defendants are again invited to provide Ad Astra with a list of an additional 50 consumers whose files should be produced. (Response, Ex. 1 at pp. 4-5).

(*Id.*) (emphasis supplied). On June 1, Plaintiff's counsel emailed Magistrate Judge Mitchell's chambers and stated that it will not argue to the jury that the "50 consumer files are a random sampling or a statistically valid representative sample of the millions of consumer files…that Defendants possess…However, Ad Astra reserves the right to argue that the 50 consumer files…are admissible….and…demonstrate a pattern of misconduct by Defendants." (Doc. 251-33 at 3.)

5

A few days later, in ruling on the motion to compel, Magistrate Judge Mitchell held that the SAR was insufficient because it contained nonresponsive and argumentative language and omitted key details about the actual selection process. (Doc. 223 at 5) (citing Doc. 204.) Magistrate Judge Mitchell further held that Plaintiff waived any attorney-client privilege or work-product objection to the interrogatory because it was not timely asserted and there was not good cause to excuse the failure to timely assertion. Also, Plaintiff's emails were not sufficient to retract its position of representativeness because Plaintiff "still planned to argue that the consumer files are representative in some fashion." (*Id.*)

On June 12, Plaintiff served its third amended response ("TAR") to the interrogatory.[1] The response spanned nine pages. It noted that Plaintiff selected two names, Timothy Wisted and Dale L. Household, because Plaintiff suspected they were clients of Lexington Law at some point. (Doc. 251-38 at 4.) Plaintiff then ran a keyword search in its 2,379,565 accounts using specific terms.[2] The search was capped at approximately 10,000 hits. Plaintiff then exported the results into an Excel file. It determined that there were only 2,005 unique account numbers in the files and that the phrase "Lexington Law" appeared 851 times in connection with 627 unique accounts. Plaintiff then "narrowed the universe to 100 line entries" by reading the collection notes. Essentially, Plaintiff was looking for notes that provided information that would suggest that the client told "them" -- Lexington Law -- not to dispute an item or that the client didn't know why "they" -- Lexington Law -- disputed something. (*Id.* at 5-6.) Plaintiff did not select consumers that had minimal detail in their notes, e.g. "wants fax to attn: Lexington Law." (*Id.* at 7.) Plaintiff then explained several more processes it used to select the final list of 50 consumers. This included

---

[1] Based on the record, it appears that Plaintiff contemplated filing an objection to the order on the motion to compel. (Docs. 205, 206.) Plaintiff, however, did not do so.
[2] The recount of the TAR included in this order is highly summarized.

6

going through its own records to confirm that Plaintiff was in possession of at least one dispute letter from that consumer. (*Id.* at 9.) In sum, the TAR has significantly more detail and explains how Plaintiff ultimately selected the 50 consumers from its files. (*See* Doc. 223 at 9.) Magistrate Judge Mitchell found that "the deficiencies in the second amended response are particularly glaring when compared to Ad Astra's *third* supplemental response after the court compelled Ad Astra to provide a substantive response to the interrogatory." (*Id.*) (emphasis in original). And, that the TAR was "comprehensive and straightforward. It is what Ad Astra should have served without the need for a motion to compel." (*Id.*)

Magistrate Judge Mitchell awarded attorney's fees to Defendants -- although not the entire amount sought by Defendants -- after determining that Plaintiff's position was not substantially justified and other circumstances did not make an award of fees unjust. (*Id.* at 15.) The court disagreed with Plaintiff's position that its supplementation and willingness to answer "certain" follow-up questions provided a basis to deny the fee award, finding that Plaintiff had "unnecessarily drug its heels and ran up discovery costs without having a legally supported basis to do so." (*Id.* at 9.) Magistrate Judge Mitchell characterized Plaintiff's conduct as a "moving-target opposition to the interrogatory and attempt to delay and obfuscate the issues rather than to simply provide a straightforward response, not a meaningful attempt to work with opposing counsel to resolve a genuine objection." (*Id.*) (internal quotation and citation omitted).

Plaintiff objects to the order awarding fees arguing that Magistrate Judge Mitchell erred in making certain factual findings, in failing to consider previous objections, in finding that reasonable minds could not differ regarding Plaintiff's SAR, and in failing to consider Defendants' conduct in discovery. In response, Defendants contend that Magistrate Judge Mitchell's order should be affirmed, and that additional attorney's fees should be awarded as a result of the instant

7

motion. In its reply brief, Plaintiff argues that the additional attorney's fees include duplicative entries.

## II. Standard

When a non-dispositive pretrial matter is ruled upon by a magistrate judge and a timely and specific objection to the ruling is made, the district judge is required to "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "Under this clearly erroneous standard, the district court does not conduct a de novo review of the factual findings; instead, it must affirm a magistrate judge's order unless a review of the entire evidence leaves it 'with the definite and firm conviction that a mistake has been committed.'" *United States v. Kaeckell*, No. 19-mc-209-DDC, 2019 WL 6486744, at * 1 (D. Kan. Dec. 3, 2019) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988)). The "contrary to law" standard, by contrast, permits the district court to independently review purely legal determinations made by the magistrate judge, and to modify or set them aside if the order "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* (quoting *Walker v. Bd. of Cty. Comm'rs of Sedgwick Cty.*, No. 09-1316-MLB, 2011 2790203, at *2 (D. Kan. July 14, 2011)).

## III. Analysis

### A. Certain Findings

Plaintiff initially takes issue with certain factual findings made by Magistrate Judge Mitchell. Plaintiff argues that the court erred in finding that Plaintiff "offered that defendants could select an additional 50 consumers' names for production of files and that defendants did not take [Plaintiff] up on this offer." (Doc. 251 at 11.) Plaintiff argues that this is incorrect because the evidence shows that the parties came to an **agreement** on this issue that resolved the discovery

dispute. Plaintiff further asserts that the court erred in finding that Plaintiff did not disavow any assertion that the 50 consumers are representative. (*Id.* at 12.)

"A factual finding is 'clearly erroneous' when 'it is without factual support in the record,'" or, after reviewing the evidence, the court "is left with the definite and firm conviction that a mistake has been made." *Souza v. Thurston*, 819 F. App'x 636, 640 (10th Cir. 2020) (quoting *In re Bryan*, 857 F.3d 1078, 1091 (10th Cir. 2017)). With respect to the first alleged error, Plaintiff argues that Defendants agreed to resolve the dispute as to the interrogatory by allowing Defendants to select an additional 50 consumers. Plaintiff cites to an email exchange. (Doc. 251-22.) This email exchange does not support Plaintiff's position that its proposal resolved the dispute. Although the proposal regarding an additional 50 consumers was discussed, Defendants clearly continued to maintain their position that the sample was not random. (Doc. 251-22 at 2.) Moreover, Defendants maintained that this proposal would not resolve the discovery dispute. (See Doc. 255 at 10-11.) Therefore, there is evidence in the record that supports the finding by the magistrate judge.

With respect to Plaintiff's argument regarding representativeness, the court finds that the findings are supported by the record as discussed herein. Plaintiff argues that it disavowed its argument that the list of 50 consumers were "representative" of Lexington Law's client base and the magistrate judge's finding that it did not was erroneous. (Doc. 251 at 12.) Plaintiff maintains that it has "explicitly stated" that it will not argue that the files are a random sampling or statistically valid representative sample. (*Id.*) Plaintiff, however, continued to play word games as Plaintiff informed the court that it would argue that "the substance of those files and recordings demonstrate a pattern of misconduct by Defendants." (*Id.*) Magistrate Judge Mitchell correctly determined that this statement was no different than arguing that the files and recordings were

9

representative; it is merely semantics. In its motion, Plaintiff contends that Magistrate Judge Mitchell erred by not finding that there is a difference between "pattern" evidence and "representative" evidence. (*Id.* at 13.) As pointed out by Defendants, however, Plaintiff did not raise this argument to Magistrate Judge Mitchell in opposition to the motion for fees. (*See* Doc. 216.) Plaintiff should have raised this argument if Plaintiff believed that there was any merit to it as Magistrate Judge Mitchell previously discussed and rejected Plaintiff's position that it would not argue that the evidence is representative in her order granting Defendants' motion to compel. (Doc. 204 at 17-18.) Therefore, Plaintiff's allegation of error on this finding has been waived. *See McCoy v. Miller*, No. 12-03050-JAR-KGS, 2014 WL 1977207, at *1 (D. Kan. May 15, 2014) (citing *Marshall v. Charter*, 75 F.3d 1421, 1426 (10th Cir. 1996). In any event, the court finds that Plaintiff's argument lacks merit.

Plaintiff's objections to Magistrate Judge Mitchell's factual determinations are overruled.

### B.  Rule 37(a)(5)(A)

Next, Plaintiff argues that the magistrate erred in applying the law. Pursuant to Fed. R. Civ. P. 37(a)(5)(A), when a motion to compel is granted in full, the court must award fees and expenses unless: "(i) the movant filed the motion before attempting in good faith to obtain disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Magistrate Judge Mitchell determined that Plaintiff's position with respect to the motion to compel was not substantially justified and that no other circumstances made an award of fees unjust.

First, Plaintiff argues that the magistrate judge misapplied the law by failing to consider Plaintiff's position taken prior to the filing of the motion to compel. (Doc. 251 at 13.) In Plaintiff's

opposition to the award of fees, Plaintiff argued that it provided several responses to the interrogatory and follow-up questions and that it was justified in its initial relevance objection. The court rejected those arguments, stating that they "miss the mark" because they don't address the position taken in response to Defendants' motion to compel. (Doc. 223 at 7.) Plaintiff asserts that this statement is contrary to law because the rule requires consideration of the response and objections. (Doc. 251 at 13-14.) Plaintiff, however, fails to cite any authority that requires the court to consider objections that have been waived or abandoned. When ruling on a motion to compel, the court considers objections that are timely asserted and relied upon in response to the motion to compel. *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999). "Objections initially raised but not relied upon in response to the motion to compel will be deemed abandoned." *Cardenas v. Dorel Juvenile Grp., Inc.*, 232 F.R.D. 377, 380, n. 15 (D. Kan. 2005) (citation omitted). Plaintiff may have initially raised a relevance objection, but that objection was not raised in response to the motion to compel; therefore, it was abandoned and it was not error for the magistrate judge to not consider it.

Moreover, with respect to the numerous deficient responses and contrary to Plaintiff's argument, the magistrate did consider Plaintiff's deficient responses and the email exchanges. (Doc. 223 at 9.) ("Although Ad Astra seems to characterize its supplementations and willingness to answer certain follow-up questions as grounds for relief from fees, the court disagrees.") In any event, the prior responses and email exchanges did not provide a sufficient response to the interrogatory as discussed herein.

Next, Plaintiff argues that the court erred in finding that reasonable minds could not differ concerning whether the SAR was adequate. Plaintiff urges the court to find that its SAR, along with its answers to the follow-up questions, were adequate under the circumstances. (Doc. 251 at

11

15.) Plaintiff suggests that a high level of detail should not have been required to respond to the interrogatory. The interrogatory was in actuality quite straight forward. It asked Plaintiff the process that it used to generate the random list of 50 customers. Instead of answering the interrogatory, Plaintiff continued to play "hide-the-ball" at the substantial expense of Defendants and, presumably, Plaintiff. (Doc. 223 at 5.) Plaintiff's SAR did not sufficiently respond to the interrogatory. Rather, it explained that a search was performed, without detailing the search parameters, such as the database used for the search, and then simply stated that a list of 100 consumers was compiled. (Doc. 251-27 at 5.) Then it stated that counsel "selected 50 names from this list."[3] (*Id.*) In a follow-up email, Plaintiff provided additional information that there were 5,650 "hits for 'Lexington'" and from this "universe" Plaintiff's "personnel compiled a list of 100 consumers." (Doc. 196-3 at 1.) Again, there was no information as to how the list was compiled from these hits, e.g. criteria used, and there was no information as to the number of files initially searched.

The court finds that Magistrate Judge Mitchell did not err in finding that Plaintiff's position was not substantially justified.

Plaintiff also argues that the magistrate judge erred in not considering that the court previously ruled in Plaintiff's favor on prior motions to compel. Plaintiff, however, has never been awarded fees in connection with those motions. The magistrate judge reasoned that each sanction award is considered on a motion-by-motion basis. In arguing that the decision was contrary to law, Plaintiff cites to two out-of-district decisions in which fees were not awarded due to conduct of all parties involved. (Doc. 251 at 16.) These decisions do not stand for the proposition that a fee award is unjust when the opposing party was successful on a previously litigated motion to

---

[3] Those 50 names did not comprise the final list as 13 of those consumers were determined to not be affiliated with Lexington Law and Plaintiff replaced those names with other consumers. (Doc. 251-27 at 5.)

compel. In *Burton v. Zwicker & Assocs.*, 2011 WL 13157063, at *3 (E.D. Ky. Dec. 29, 2011), the parties had filed competing motions to compel. In *Smith v. Ergo Solutions, LLC*, 2018 WL 5810836, at *5 (D.D.C. Nov. 6, 2018), the court found that some of the positions were substantially justified along with finding that there was a breakdown in the discovery process. Plaintiff has not shown that the magistrate judge's decision was contrary to law.

### C. Attorney's Fees

While Plaintiff did not object to the amount of fees awarded by the magistrate judge, Plaintiff does object to the additional fees Defendants request to respond to the instant objection on the basis that they are duplicative. When the court sustains an objection to an order awarding fees, it is also appropriate for the court to award fees for responding to the objection. *See Catapult Commc'ns Corp. v. Foster*, No. 06-C-6112, 2009 WL 2707040, at *2 (N.D. Ill. Aug. 25, 2009) ("If only the original motion to compel were compensable, the fee-shifting provision of Rule 37 would have little effect. A motion for reconsideration that attacks the original motion to compel could cost as much or more as the original motion itself....")  The court finds that Defendants should be awarded fees for having to respond to the instant motion. However, the court finds that the number of hours billed by Defendants is not reasonable. This was not a complex issue, but four different attorneys billed 59.9 hours to respond to the objection. Defendants have reduced their hours to 46.1, including reducing one attorney's hours completely, which is still an unreasonable amount. (Doc. 255-8 at 8.) Based on the billing entries, all of the attorneys spent time revising and editing the draft opposition; however, Carolyn Wesnousky did the bulk of the work on the brief. The court has calculated the time Ms. Wesnousky worked on the brief to be 33 hours. This is reasonable given the number of exhibits and documents that the opposition brief includes and references. The court will not award fees for the hours spent by other attorneys revising the draft. *Godinet v. Mgmt.*

*& Training Corp.*, 182 F. Supp.2d 1108, 1111 (D. Kan. 2002), *aff'd*, 56 F. App'x 865 (10th Cir. 2003) ("Duplication of effort due to multiple attorneys may be considered by the court in setting the number of reasonable hours billed.")

Finally, the court must determine whether the requested rate of $500 is reasonable. Ms. Wesnousky is a junior associate and her billable rate is $580. (Doc. 255-8.) Defendants seek the rate of $500 per hour based on the finding by the magistrate judge. That determination, however, was a blended rate and, with respect to the present motion to review the magistrate judge's decision, the court is only awarding fees for the work performed by Ms. Wesnousky.[4] "To determine what constitutes a reasonable rate, the district court considers the prevailing market rate of the relevant community." *Lippoldt v. Cole*, 468 F.3d 1204, 1224 (10th Cir. 2006) (internal quotations omitted). The relevant community is "the area in which the litigation occurs" or "the area in which the court sits." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983). The party seeking fees "must provide evidence of the prevailing market rate for similar services by 'lawyers of reasonably comparable skill, experience, and reputation' in the relevant community." *Lippoldt*, 468 F.3d at 1224-25 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). The hourly rate should be based on the attorney's skill and experience in similar litigation. *Id.* Defendants have not provided evidence of market rates but instead rely on the finding by the magistrate judge that determined a blended rate. (Doc. 255-8 at 5.) When there is no evidence of market rates, the court may rely on its own experience and knowledge of the rates in the market. *See Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM-ADM, 2020 WL 6343292, at *17 (D. Kan. Oct. 29, 2020) (approving rates ranging from $625 to $225 for attorneys resulting in a blended rate of $327 per

---

[4] The court notes that Plaintiff has not objected to the finding by the magistrate judge that $500 is a reasonable blended hourly rate for the attorneys that billed for the work on the motion to compel. (*See* Doc. 251.) Therefore, that issue is not before the court on this objection.

hour). In this district, the court has found that rates of $400 and $600 were reasonable in light of the significant experience of the attorneys and the complexity of the issues. *See Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, at *7 (D. Kan. Jan. 3, 2017). Other judges in this district have approved amounts varying from $200 to $400. *See King v. Fleming*, No. 16-2108-JAR-GLR, 2017 WL 1135579, at *2 (D. Kan. Mar. 27, 2017) (approving requested $200 hourly rate as "exceedingly reasonable"); *Schoonover v. Colvin*, No. 12-1469-JAR, 2016 WL 7242512, at *2 (D. Kan. Dec. 15, 2016) (approving reduced hourly rate of $400); *Rogers v. Bank of Am., N.A.*, No. 13-1333-CM, 2014 WL 6632944, at *2 (D. Kan. Nov. 21, 2014) (finding $300 partner and $225 associate hourly rates were reasonable).

Based on these prior decisions regarding reasonable market rates and the undersigned's experience practicing at a Kansas law firm providing representation to national clients on complex issues, the court finds that $350 per hour is a reasonable rate in this case for an associate. Although the briefing on this issue is relatively straightforward, this case is complex and involves significant discovery. The court will therefore award fees in the amount of $11,550.

**IV.   Conclusion**

Plaintiff's objection to Magistrate Judge Mitchell's order (Doc. 250) is OVERRULED. The court awards fees to Defendants in the amount of $11,550, which represents 33 hours for briefing on the opposition to Plaintiff's objection at a rate of $350 per hour. Plaintiff is directed to tender payment to Defendants by December 4, 2020, and shall file a notice of compliance upon making the payment.

IT IS SO ORDERED. Dated this 25th day of November 2020.

　　　　　　　　　　　　　　　　　　__s/ John W. Broomes_____
　　　　　　　　　　　　　　　　　　JOHN W. BROOMES
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE